1  Kelly M. Dermody (SBN 171716)
   Yaman Salahi (SBN 288752)
2  Jallé Dafa (SBN 290637)
   LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
3  275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
4  Telephone:  415.956.1000
   Facsimile:  415.956.1008
5  kdermody@lchb.com
   ysalahi@lchb.com
6  jdafa@lchb.com

7  Eva Paterson (SBN 67081)
   Mona Tawatao (SBN 128779)
8  Christina Alvernaz (SBN 329768)
   EQUAL JUSTICE SOCIETY
9  1939 Harrison St., Suite 818
   Oakland, CA  94612
10 Telephone: 415-288-8703
   Facsimile:  510-338-3030
11 epaterson@equaljusticesociety.org
   mtawatao@equaljusticesociety.org
12 calvernaz@equaljusticesociety.org

13 [Additional counsel listed on signature page]

14 *Attorneys for Plaintiffs and the Proposed Class*
   _____

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17

18
   COLIN SCHOLL and LISA STRAWN, on          Case No.  3:20-cv-5309
19 behalf of themselves and all others
   similarly situated.                        **CLASS ACTION COMPLAINT**
20
                       Plaintiffs,
21
   v.
22
   STEVEN MNUCHIN, in his official
23 capacity as the Secretary of the U.S.
   Department of Treasury; CHARLES
24 RETTIG, in his official capacity as U.S.
   Commissioner of Internal Revenue; U.S.
25 DEPARTMENT OF THE TREASURY;
   the U.S. INTERNAL REVENUE
26 SERVICE; and, the UNITED STATES OF
   AMERICA.
27
                       Defendants.
28

1.    This case is brought on behalf of persons who have been incarcerated in the United States at any time from March 27, 2020 to the present ("incarcerated persons" or "incarcerated people") to challenge Defendants' unauthorized and unlawful refusal to issue Economic Impact Payments ("EIP") to which these persons are entitled under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  *See* 26 U.S.C. § 6428.  On behalf of themselves and all others similarly situated, Plaintiffs seek a declaratory judgment that Defendants lack statutory authority to withhold EIP benefits from them and other incarcerated persons based solely on their status as such, and injunctive relief ordering Defendants (a) to automatically issue EIP benefits to those who are entitled to an automatic payment based on the IRS's records but for their incarcerated status; (b) to re-consider any filed claim for an EIP that has been denied based solely on the claimant's incarcerated status and, moving forward, to prohibit Defendants from considering incarcerated status in reviewing claims for EIP benefits under the CARES Act; and (c) to issue EIP benefits to all incarcerated persons otherwise eligible for those benefits.

## JURISDICTION AND VENUE

2.    Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1346(a) (Little Tucker Act).

3.    Venue is proper in this district pursuant to 28 U.S.C. 1391(e)(1) because Defendants are officers, employees, or agencies of the United States and Plaintiffs reside in this district.

## PARTIES

4.    Plaintiff Colin Scholl currently resides at Salinas Valley State Prison, where he is incarcerated.  He is a citizen of the United States and is not claimed as a dependent on anyone else's tax return.  Mr. Scholl filed a tax return for 2019 but did not receive an automatic EIP benefit.  Mr. Scholl subsequently filed a claim for an EIP through the IRS's online non-filer portal.  He later received a letter from the IRS confirming receipt of the claim and stating that it had been approved.  However, Mr. Scholl never received a payment.  When he called the IRS to determine the status of his payment, he was informed that he was ineligible to receive an EIP benefit because he is incarcerated.  If he received an EIP benefit, Mr. Scholl would use it to

2016261.1

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-5309

1   continue his rehabilitative programs inside to prepare for his anticipated release in November

2   2021.

3        5.     Plaintiff Lisa Strawn was incarcerated at San Quentin State Prison in Marin

4   County, California from February 5, 2018 to July 14, 2020.  Ms. Strawn currently resides in San

5   Francisco.  She is a citizen of the United States and is not claimed as a dependent on anyone

6   else's tax return.  Ms. Strawn has not filed a return for 2018 or 2019 and does not have a filing

7   obligation for those years.  Although Ms. Strawn was exposed to COVID-19 prior to her release

8   from San Quentin, Ms. Strawn has not received the COVID-related relief that Congress passed

9   because of her incarceration status at the time the CARES Act funds were released. Ms. Strawn

10  has not filed a claim for an EIP benefit because doing so would be futile pursuant to the IRS's

11  stated position on the ineligibility of incarcerated persons, and because she fears that making the

12  request now could subject her to additional prosecution or other administrative penal remedies for

13  making a false claim.  If she received an EIP, Ms. Strawn would use it to help cover the cost of

14  food, transportation, housing and other necessities in her transition from prison to the San

15  Francisco community.

16       6.     Defendant Steven T. Mnuchin is the Secretary of the Treasury.  Secretary Mnuchin

17  exercises full authority to administer and enforce the internal revenue laws and has the power to

18  create an agency to enforce these laws.  He is responsible for distributing the EIPs under the

19  CARES Act and, in his official capacity, has unlawfully withheld EIP benefits from incarcerated

20  individuals.

21       7.     Defendant Charles Rettig is the United States Commissioner of Internal Revenue

22  Service.  In that capacity, he administers the application of the internal revenue laws.  Defendant

23  Rettig reports to Defendant Mnuchin and, as part of his duties, oversees the issuance of EIP

24  benefits under the CARES Act.  In his official capacity, he has unlawfully withheld EIP benefits

25  from incarcerated individuals.

26       8.     Defendant U.S. Department of the Treasury is an agency of the United States

27  government.  The Department of the Treasury is responsible for, among other things, the

28

disbursement of payments to the American public, including under the CARES Act.  The U.S. Department of the Treasury has unlawfully withheld EIP benefits from incarcerated individuals.

9.      Defendant U.S. Internal Revenue Service is a bureau of the U.S. Department of the Treasury organized to carry out the responsibilities of the Secretary of the Treasury under 26 U.S.C. § 7801.  It was created based on the legislative grant of authority to the Secretary of the Treasury to enforce the internal revenue laws.  The IRS calculates and sends recovery payments to eligible persons under the CARES Act.

10.     Defendant United States of America is sued through its agencies, the U.S. Department of the Treasury and U.S. Internal Revenue Service.

**BACKGROUND**

**I.    The CARES Act**

11.     Beginning in early 2020, the novel coronavirus pandemic created a severe economic hardship on millions of Americans.  To address this economic crisis, Congress passed and President Trump signed into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act. Coronavirus Aid, Relief, and Economic Security Act" or the "CARES Act".  *See* Pub. L. 116-136, 134 Stat. 281 (Mar. 27, 2020).

12.     Under the CARES Act, eligible individuals may receive a payment of up to $1,200 (or $2,400 in the case of eligible individuals filing a joint return), plus $500 for each qualifying child.  26 U.S.C. § 6428(a).  The amount of the credit may be adjusted based on an individual's adjusted gross income.  *Id.* § 6428(c).

13.     The CARES Act defines eligibility for an EIP broadly.  The statute defines "eligible individual" to include "any individual other than—(1) any non-resident alien individual, (2) any individual with respect to whom a deduction under section 151 is allowable to another taxpayer . . ., and (3) an estate or trust."  26 U.S.C. § 6428(d).  Congress did not impose any status-based limitations on the definition of "eligible individual" under 26 U.S.C. § 6428(d).

14.     Pursuant to the CARES Act, Defendants are required to issue EIP benefits "as rapidly as possible."  26 U.S.C. § 6428(f)(3)(A).  Pursuant to the IRS's implementation of the CARES Act, eligible persons who already filed a tax return for 2018 have automatically received

2016261.1
- 4 -
CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-5309

1    their EIP benefits without taking any additional action.  *See* IRS, *Economic Impact Payment*

2    *Information Center*, Q4. Do I need to take action?, https://www.irs.gov/coronavirus/economic-

3    impact-payment-information-center.  All eligible persons who were not entitled to an EIP based

4    on their 2018 return and have filed a 2019 return that entitles them to payment have or will

5    receive an EIP without taking additional action.  Persons who were not required to file a tax

6    return in either year must file a claim through the IRS's online portal for "non-filers."  *See*

7    https://www.irs.gov/coronavirus/non-filers-enter-payment-info-here.  Once filed, the IRS has no

8    discretion to refuse to disburse an EIP to anyone who satisfies the CARES Act's statutory

9    requirements.

10          15.    Although the CARES Act does not exclude incarcerated individuals from

11   eligibility for an EIP, the IRS announced on its website on May 6, 2020, more than five weeks

12   after the passage of the CARES Act, that incarcerated individuals were ineligible for the EIP.

13   The IRS's website states:

14              Q15.    Does someone who is incarcerated qualify for the Payment?

15              A15.    No.  A Payment made to someone who is incarcerated
                should be returned to the IRS by following the instructions about
16              repayments.  A person is incarcerated if he or she is described in
                one or more of clauses (i) through (v) of Section 202(x)(1)(A) of
17              the Social Security Act (42 U.S.C. § 402(x)(1)(A)(i) through (v)).
                For a Payment made with respect to a joint return where only one
18              spouse is incarcerated, you only need to return the portion of the
                Payment made on account of the incarcerated spouse.  This amount
19              will be $1,200 unless adjusted gross income exceeded $150,000.

20          16.    In addition to requesting that incarcerated individuals return their EIP benefits

21   without providing any explanation of the legal basis for doing so, the IRS has affirmatively taken

22   action to withhold or retrieve the EIP from incarcerated individuals as described in a Government

23   Accountability Office (GAO) report dated June 25, 2020 entitled "COVID 19 Opportunities to

24   Improve Federal Response and Recovery Efforts."  On page 222 of that report, the GAO states:

25   "According to IRS officials, IRS also worked with federal and state prison officials to assist in the

26   return of payments made to incarcerated individuals."  GAO-20-625,

27   https://www.gao.gov/reports/GAO-20-625/.

28

2016261.1

1    17.    On June 24, 2020, the Associated Press reported that although "checks of up to

2    $1,200 were automatically sent in most cases to people who filed income tax returns for 2018 or

3    2019, including some who are incarcerated," "[a] couple of weeks later, the IRS directed state

4    correction departments to intercept payments to prisoners and return them."  Rebecca Boone,

5    *Inmates Got Virus Relief Checks, and IRS Wants Them Back*, Associated Press, June 24, 2020,

6    https://apnews.com/0810bb67199c9cef34d4d39ada645a92.  Pursuant to the IRS's directive,

7    "[t]he Kansas Department of Correction alone intercepted more than $200,000 in checks by early

8    June.  Idaho and Montana combined had seized over $90,000."  *Id.*  Other states, including

9    Washington, Vermont, Mississippi, Pennsylvania, Arizona, California, Oregon, and Utah have

10   intercepted stimulus payments to incarcerated persons at the IRS's behest.

11   18.    The IRS has no legal basis for withholding, retracting, or asking others to intercept

12   stimulus payments to incarcerated persons.  When asked, IRS spokesman Eric Smith stated "I

13   can't give you the legal basis.  All I can tell you is this is the language the Treasury and ourselves

14   have been using." *Id.*

15   19.    Indeed, a Department of Treasury Inspector General report analyzed only the

16   initial set of 81.4 million EIP payments to eligible Americans and legal permanent residents

17   issued on April 10, 2020.  When the Inspector General inquired about the inclusion of

18   incarcerated persons in this disbursement, "IRS management noted that payments to these

19   populations of individuals were allowed because the CARES Act does not prohibit them from

20   receiving a payment.  However, the IRS subsequently changed its position, noting that individuals

21   who are prisoners . . . are not entitled to an EIP."  *See* Treasury Inspector General for Tax

22   Administration, *Interim Results of the 2020 Filing Season: Effect of COVID-19 Shutdown on Tax*

23   *Processing and Customer Service Operations and Assessment of Efforts to Implement Legislative*

24   *Provisions*, Ref No. 2020-46-041, at 4-5 (June 30, 2020),

25   https://www.treasury.gov/tigta/auditreports/2020reports/202046041fr.pdf.  Thereafter, the IRS

26   took action to exclude incarcerated persons from subsequent EIP disbursements, and notified the

27   Inspector General on May 13, 2020, that "programming was implemented to discontinue

28   calculating and sending EIPs to prisoners . . . ."  *Id.* at 5.  Specifically, "the IRS provided the

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-5309

[U.S. Department of the Treasury's Bureau of the Fiscal Service (BFS)] with a file that contained the Taxpayer Identification Numbers of prisoners . . . and requested that the BFS remove these individuals from payment files.  This approach was applied to the May 1, 2020 and May 8, 2020, payment files."  *Id.*  According to the report, as of May 21, 2020, the IRS had issued 84,861 payments to incarcerated people totaling $100 million, and had begun taking steps to advise those individuals (or their spouses) of the steps they should take to return those payments, as reflected in the online FAQ discussed above.  *Id.* at 6.  (It is unclear whether these 84,861 payments include *only* incarcerated people who received payments pursuant to the April 10, 2020 disbursement before the IRS reversed course, or whether these payments also include checks inadvertently sent in subsequent disbursements.)

20.     The IRS's refusal to distribute the EIP to incarcerated individuals, and its attempt to intercept, retrieve, and request the return of EIPs to incarcerated individuals who already received them, violate the CARES Act, which does not condition eligibility for EIP benefits on incarcerated status.  If Congress had intended to exclude incarcerated individuals, it would have done so expressly.

21.     Although Plaintiffs and other incarcerated individuals fall squarely within the group of individuals determined by Congress to be eligible for EIPs, Defendants (a) have acted *ultra vires* to classify them as ineligible based on their incarcerated status alone; (b) have withheld automatic payments to Plaintiffs and similarly situated individuals; and, (c) have taken action to intercept and retrieve (and to demand the return of) checks that were previously mailed to such persons.  Upon information and belief, Defendants have also refused to distribute EIP benefits to incarcerated persons who filed a claim through the IRS's online portal on the basis of their incarcerated status alone.

22.     Because of the IRS's policy, Plaintiffs and other similarly situated persons who did not receive automatic EIP benefits are unsure whether they are authorized to utilize the non-filer portal to obtain an EIP, and whether doing so will result in an accusation of filing a fraudulent claim with the potential to result in enhanced sentences, revocation of parole, new criminal charges, or other adverse consequences for currently or formerly incarcerated people.  Further,

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-5309

given Defendants' clear position regarding the ineligibility of incarcerated persons for an EIP

benefit, filing a claim through the non-filer portal would be futile.

## II.     The Incarcerated Population

23.     Congress did not exclude incarcerated individuals from the EIP program, and the

IRS has not cited any legal authority to do so.  Even assuming the IRS had the power to establish

its own non-statutory eligibility criteria under the CARES Act, it lacks a reasonable basis to

exclude incarcerated people from the EIP benefit program.

24.     Incarcerated individuals, as defined by 42 U.S.C. § 402(x)(1)(A)(i)-(v), have tax

obligations and can obtain tax benefits just like other individuals subject to the taxes imposed by

Title 26 of the United States Code.  Incarcerated individuals do not lose their status (or

responsibilities) as taxpayers by virtue of their incarceration.

25.     Incarcerated individuals, like other members of society, have personal, financial,

and other relationships that put them in need of economic assistance just like other members of

society.  For example, hundreds of thousands of incarcerated individuals will be released from

custody in the near future, returning to the same bleak economy that necessitated passage of the

CARES Act; EIP funds will assist them with re-entry and help mitigate recidivism.  According to

a Bureau of Justice Statistics report, the total number of incarcerated people released from either

state or federal jurisdiction in 2016 was 626,019, and 622,377 in 2017.  *See* U.S. Department of

Justice Bureau of Justice Statistics, Prisoners in 2017, Table 7 (Apr. 2019),

https://www.bjs.gov/content/pub/pdf/p17.pdf.  Similarly, according to the Federal Bureau of

Prisons, 17,281 people have already been released from federal custody in 2020 to date, 45,075

were released in 2019, and 37,820 were released in 2018 (federal institutions house

approximately 10% of the United States' incarcerated population).  *See*

https://www.bop.gov/about/statistics/statistics_inmate_releases.jsp.

26.     Indeed, the average incarcerated person spends a relatively short period of time

behind bars, even if sentences are longer.  According to one study, approximately 28% of

convicted criminal defendants in state courts who are given jail sentences receive sentences

averaging 7 months, and the average amount of time served for all persons subject to state

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-5309

incarceration is 27 months.  *See* Matthew R. Durose & Patrick A. Langan, Ph.D., *State Court Sentencing of Convicted Felons, 2002 Statistical Tables*, Bureau of Justice Statistics, Tables 1.2, 1.3, and 1.5 (May 2005) https://www.bjs.gov/content/pub/pdf/scscf02.pdf.  In the federal prison system, the median prison sentence nationally is 18 months and 12 months in the Ninth Circuit.  *See* United States Sentencing Commission, *Statistical Information Packet Fiscal Year 2019 Ninth Circuit*, Table 7, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2019/9c19.pdf.  EIP benefits will assist those who will soon re-enter society with overcoming the various economic, housing, and social obstacles to achieving stability and avoiding recidivism.

27.  Additionally, most incarcerated individuals come from low income families where assistance is needed most, and thus can use the EIP funds to support family members who are not in confinement.  A 2015 study by the Prison Policy Initiative found that incarcerated people have a median annual income of $19,185 prior to their incarceration, compared to a median income of $41,250 for non-incarcerated people.  *See* Bernadette Rabuy & Daniel Kopf, *Prisons of Poverty: Uncovering the Pre-incarceration Incomes of the Imprisoned* (July 9, 2015), Prison Policy Initiative, https://www.prisonpolicy.org/reports/income.html.

28.  Further, the racial disproportionality among those who are incarcerated mirrors the racial disproportionality among those most harmed by COVID-19.  Black people are incarcerated at six times the rate and Latinx people are imprisoned at three times the rate of white people in the United States.  *Racial Disparities in Incarceration and Coronavirus*, FWD.us, (Apr. 14, 2020), https://www.fwd.us/news/coronavirus-disparity/.  Native Americans are incarcerated  "at over four times the rate for whites."  *Race & Justice News: Native Americans in the Justice System*, The Sentencing Project, (Mar. 28, 2016), https://www.sentencingproject.org/news/race-justice-news-native-americans-in-the-justice-system/.  Not only is COVID-19 disproportionately fatal for Black, Indigenous, and Latinx people, but Black, Indigenous, and Latinx communities are disproportionately bearing the economic devastation wrought by the pandemic.  "Workers of color are overrepresented in the lowest-paid agricultural, domestic, and service vocations," which limits their ability to maintain economic stability in the midst of a pandemic and a recession.

Connor Maxwell & Danyelle Solomon, *The Economic Fallout of the Coronavirus for People of Color,* CENTER FOR AMERICAN PROGRESS (Apr. 14, 2020), https://www.americanprogress.org/issues/race/news/2020/04/14/483125/economic-fallout-coronavirus-people-color/.   And with an average net worth roughly one-tenth the size of white households, Black and Latinx households have less liquidity and fewer assets to weather lay-offs and furloughs.  *Id.*

29.     The government's failure to provide incarcerated individuals the EIP benefits not only affects those in confinement but also their families.   According to the U.S. Department of Justice, 50 percent to 75 percent of incarcerated individuals report having a minor child.   Eric Martin, *Hidden Consequences: The Impact of Incarceration on Dependent Children*, National Institute of Justice, (May 2017), https://www.ncjrs.gov/pdffiles1/nij/250349.pdf.  More than 2.7 million children have an incarcerated parent.  Daniel M. Leeds, Juliana Pearson, Simone Robers, and Leslie Scott, *Incarcerated adults with dependent children* (February 2020), https://static1.squarespace.com/static/51bb74b8e4b0139570ddf020/t/5e41932d16c3c736370cd9c2/1581355822385/2020_CNA_Incarcerated_Adults_Dependent_Children.pdf.   Nearly half of Americans have an immediate family member who is formerly or currently incarcerated.  Equal Justice Initiative, *Half of Americans Have Family Members who Have Been Incarcerated* (December 11, 2018), https://eji.org/news/half-of-americans-have-family-members-who-have-been-incarcerated/.  Incarceration is concentrated in economically disadvantaged communities: the proportion of people who have an incarcerated family member increases as income declines. *See id.*  Further, as with the disproportionate harm inflicted by COVID-19, Black adults are 50% more likely to have had a family member incarcerated than white people; Latinx people are nearly twice as likely to have a family member in jail or prison for more than one year; and Native Americans have high rates of family incarceration.  *Racial Disparities in Incarceration and Coronavirus*, FWD (Apr. 14, 2020), https://www.fwd.us/news/coronavirus-disparity/.  These families need the EIP funds the most.  Nearly two in three families are unable to meet basic needs such as food, housing, and medical care while their family member is incarcerated.  *See id.*

30.    The EIP also provides important funds to incarcerated persons when other sources may have evaporated due to the economic pressures related to COVID-19.  Prisons and jails have shifted more and more costs onto incarcerated people—costs for things like hygiene supplies, medical copayments, and communication with loved ones—and this is unlikely to diminish given the predicted government budget shortfalls caused by a COVID-affected tax base.  Indeed, incarcerated people are also consumers in a sizeable retail market.  A 2016 report concluded that approximately one-third of state prison systems privatize their commissaries in some respect, with sales by commissaries operated by private corporations accounting for more than half of the $1.6 billion in annual prison commissary revenues.  *See* Stephen Raher, *Paging Anti-trust Lawyers: Prison Commissary Giants Prepare to Merge*, Prison Policy Initiative (July 5, 2016), https://www.prisonpolicy.org/blog/2016/07/05/commissary-merger/.  The spending of people under confinement is largely focused on life essentials like food and hygiene, and often is reliant on support from people on the outside as prison incomes are too low to cover average costs.  A recent study, for example, determined that annual commissary sales to incarcerated people in Illinois, Massachusetts, and Washington were $48.4 million, $11.7 million, and $8.6 million, respectively, with an overall average of $947 in annual spending per confined person, "well over the typical amount incarcerated people earn working regular prison jobs in these states ($180 to $660 per year)."  Stephen Raher, *The Company Store: A Deeper Look at Prison Commissaries*, Prison Policy Initiative (May 2018), https://www.prisonpolicy.org/reports/commissary.html.  The study found that the vast majority of these sales related to food products: in Illinois, $34.3 million out of $48.4 million of prison population spending went to food products, while in Massachusetts the ratio was $9.1 million out of $11.7 million, and in Washington it was $6.6 million out of $8.6 million.  *Id.*  The next highest amounts were for hygiene products, clothing, household goods and supplies, and mail and stationary.  *Id.*  EIP benefits will thus go in large part towards providing for these life essentials which are often sold to incarcerated people by private corporations.

31.    Because incarcerated people have little ability to earn incomes, they tend to rely on money transfers from friends and family to pay for basic necessities.  This is very expensive for family members, because any deposits they make may be automatically garnished by the prison

- 11 -

1    system to pay for an incarcerated person's outstanding financial obligations, such as restitution,

2    child support, and so on.  For example, in California, the California Department of Corrections

3    and Rehabilitation automatically garnishes 50% of any deposit into an incarcerated person's

4    account to satisfy that person's outstanding restitution obligations.  *See* Cal. Dep't of Corrections

5    & Rehabilitation, *How does a Victim Collect on the Restitution Order from an Inmate or a*

6    *Parolee?*, https://www.cdcr.ca.gov/victim-services/restitution-collections/, (last accessed July 27,

7    2020).  That means that if an incarcerated person who owes restitution needs $100 to cover their

8    prison spending, the family on the outside must deposit $200 to cover those expenses.  As family

9    members on the outside (who are often low-income to begin with) lose their jobs in the

10   pandemic-induced economic collapse, families will be increasingly less able to send money to

11   loved ones inside.  The EIP checks help protect the health and well-being of those in

12   confinement, facilitating their rehabilitation and suitability for return to society upon release,

13   while reducing the burden on and providing relief to their loved ones at home.

14       32.    Finally, many incarcerated people have outstanding financial obligations and

15   debts, including child support, mortgages, and restitution obligations.  The EIP checks will go

16   toward satisfying those obligations, as well.

17                          **CLASS ALLEGATIONS**

18       33.    Plaintiffs bring this action on behalf of themselves and all others similarly situated

19   (the "Class"), pursuant to Federal Rule of Civil Procedure 23.  The Class is defined as follows:

20           All United States citizens and legal permanent residents who:

21               (a) are or were incarcerated (*i.e.*, confined in a jail, prison, or
             other penal institution or correctional facility pursuant to their
22           conviction of a criminal offense) in the United States, or have been
             held to have violated a condition of parole or probation imposed
23           under federal or state law, at any time from March 27, 2020 to the
             present;
24
25               (b) filed a tax return in 2018 or 2019, or were exempt from a
             filing obligation because they earned an income below $12,000 (or
26           $24,400 if filing jointly) in the respective tax year;

27               (c) were not claimed as a dependent on another person's tax
             return; and,
28
                 (d) filed their taxes with a valid Social Security Number, and,

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-5309

if they claimed qualifying children or filed jointly with another person, those individuals also held a valid Social Security Number.

Excluded from the Class are estates and trusts; Defendants; the officers, directors, or employees of any Defendant; and, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff.

34.     The exact size of the class is unknown.  However, according to the U.S. Department of Justice's Bureau of Justice Statistics, in 2018, there were approximately 1,465,158 people imprisoned in state or federal facilities, over 90% of whom were U.S. citizens.  Thus, the class size is over 1.5 million individuals.  Joinder of that many people is impractical.

35.     There are multiple questions of law and fact common to the class including but not limited to:

a.     Whether Defendants have unlawfully withheld or unreasonably delayed delivery of EIP benefits to Plaintiffs and the Class;

b.     Whether Defendants' policy treating incarcerated people as ineligible for EIP benefits based on their incarcerated status is contrary to law, in excess of statutory authority, and/or arbitrary and capricious;

c.     Whether Defendants violated the CARES Act by withholding EIP checks from Plaintiffs and the Class based on their status as incarcerated people alone;

d.     Whether Defendants are liable to Plaintiffs and the Class for the sum of the EIP benefits to which they are entitled under the CARES Act; and,

e.     The remedies to which Plaintiffs and the Class are entitled.

36.     These and other questions of law and fact are common to the Class, and predominate over any questions affecting only individual members of the Class.

37.     Plaintiffs' claims are typical of the Class, as all Class Members challenge Defendants' authority to withhold EIP checks from them on the sole basis of their status as incarcerated people.  The answer to this question is the same for all members of the Class.  There are no defenses of a unique nature that may be asserted against Plaintiffs individually, as distinguished from other members of the Class, and the relief sought is common to the Class.

1    38.    Plaintiffs will fairly and adequately protect the interests of the members of the

2    Class.  Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of

3    the Class, and Plaintiffs have retained counsel competent and experienced in the prosecution of

4    class action litigation to represent themselves and the Class.

5    39.    Certification of the class for injunctive relief is appropriate under Rule 23(b)(1)

6    because the prosecution of separate actions by individual class members would create a risk of

7    inconsistent or varying adjudications that would establish incompatible standards of conduct for

8    Defendants or would, as a practical matter, be dispositive of the interests of other class members

9    not parties to the individual adjudications or otherwise substantially impair or impede their ability

10   to protect their interests.  Certification for injunctive and declaratory relief is also appropriate

11   under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the whole

12   class.  Additionally, certification of a class for monetary relief under Rule 23(b)(3) is appropriate

13   because the common questions of fact and law predominate over questions specific to individual

14   class members.  The common questions of law will determine Defendants' liability to every

15   member of the class.  Class-wide treatment of these common issues in a single forum is a superior

16   means of determining Defendants' liability to each Class Member than potentially thousands of

17   other lawsuits.  As a result, class-wide adjudication of Defendants liability is the most efficient

18   means of adjudication.

19   ### CLAIMS FOR RELIEF

20
21   ### COUNT ONE
     ### Defendants' Unlawful Withholding of EIP Benefits to Plaintiffs and the Class

22   ### (5 U.S.C. § 706(1))

23   40.    The foregoing allegations are re-alleged and incorporated herein.

24   41.    Defendants have a duty to issue EIP benefits to all eligible individuals in a timely

25   manner.  26 U.S.C. § 6428.  Plaintiffs and the Class have a clear right to such benefits, and

26   Defendants have no lawful basis to refuse them.  The issuance of such benefits constitutes

27   discrete agency action.

28

42.     Defendants have unlawfully withheld and/or unreasonably delayed the issuance of EIP benefits to Plaintiffs and the Class despite their clear entitlement to those benefits.

43.     Based on the foregoing allegations, Plaintiffs seek an order compelling Defendants to issue EIP benefits to them and the Class.

**COUNT TWO**
**Defendants' Policy Denying EIP Benefits to Plaintiffs and the Class Is Contrary to Law, In Excess of Statutory Authority, and Arbitrary and Capricious**
**(Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706(2))**

44.     The foregoing allegations are re-alleged and incorporated herein.

45.     Defendants' policy of withholding EIP benefits from incarcerated persons based solely on their status as incarcerated people exceeds Defendants' statutory authority under the CARES Act, 26 U.S.C. § 6428, is contrary to law, and is arbitrary and capricious, or otherwise unlawful within the meaning of the APA, 5 U.S.C. § 706(2).

46.     Plaintiffs and members of the Class have been aggrieved by Defendants' policy of withholding EIP benefits from incarcerated persons based solely on their incarcerated status because they have been denied a statutory benefit to which they are otherwise entitled.

47.     Defendants' refusal to issue EIP benefits to incarcerated persons reflects Defendants' final, considered position, as evidenced by, among other things, the announcement of that position on the IRS's website, directives issued to state officials to intercept and return such checks from correctional facilities, and advice to the public that incarcerated persons and their spouses "should" return any checks that may have been mailed inadvertently to them.  This policy thus constitutes final administrative action under 5 U.S.C. § 704.

48.     Based on the foregoing violations, Plaintiffs and the Class request a declaratory judgment that Defendants lack statutory authority to withhold EIP checks from them based solely on their status as incarcerated persons.

49.     Based on the foregoing violations, Plaintiffs and the Class also request injunctive relief ordering Defendants to (a) automatically issue EIP checks to Class Members who, having filed a tax return in 2018 or 2019, are entitled to an automatic payment based on the IRS's records but for their incarcerated status; (b) review and approve any claim submitted through the IRS's

1   "non-filer portal" which has been denied based solely on the claimant's status as an incarcerated

2   person and, moving forward, prohibiting Defendants from considering incarcerated status in

3   reviewing claims made under the CARES Act; (c) withdraw the statements which express that

4   incarcerated individuals are not entitled to CARES Act funds, thus removing the deterrent to

5   eligible potential claimants who reasonably fear penalty for seeking benefits to which Defendants

6   have wrongfully claimed they are not entitled; and (d) issue EIP benefits to all Class Members.

### COUNT THREE
### CARES Act and Little Tucker Act
### (26 U.S.C. § 6824 and 28 U.S.C. § 1346(a)(2))

50.     The foregoing allegations are re-alleged and incorporated herein.

51.     Plaintiffs and the Class are eligible for EIP benefits pursuant to the CARES Act,

26 U.S.C. § 6428, because they are (1) U.S. citizens or "resident aliens"; (2) filed tax returns in

2018 or 2019, or were exempt from doing so; (3) are not claimed as dependents of another tax

filer; (4) are not estates or trusts; and (5) if they filed tax returns jointly with another person or

claimed qualifying children, those persons had a valid Social Security Number.

52.     Defendants have refused to issue EIP benefits to Plaintiffs and the Class based

solely on their status as incarcerated persons, despite lacking any statutory authority to do so.

53.     Plaintiffs and each Class Member therefore have a civil claim against the United

States, not exceeding $10,000 in amount, founded upon the CARES Act.  28 U.S.C. § 1346(a)(2).

54.     Based on the foregoing allegations, Plaintiffs and the Class seek monetary relief in

an amount equal to each Class Member's benefit under the CARES Act.

### RELIEF REQUESTED

Wherefore, Plaintiffs respectfully requests that this Court:

A.  Enter an order certifying this case for class treatment pursuant to Federal Rule of
    Civil Procedure 23, appointing Plaintiffs as Representatives of the Class, and
    appointing the undersigned attorneys as Class Counsel;

B.  Enter declaratory judgment that Defendants lack statutory authority to withhold
    economic impact payments from Plaintiffs and the Class based solely on their

2016261.1

CLASS ACTION COMPLAINT
CASE NO. 3:20-CV-5309

1   status as incarcerated persons;

2   C.   Enjoin Defendants from refusing to distribute economic impact payments under

3   the CARES Act for the benefit of Plaintiffs and the Class based solely on their

4   status as incarcerated persons;

5   D.   Order Defendants to determine (or re-determine) the eligibility of Plaintiffs and

6   each Class Member for a CARES Act benefit without taking into consideration

7   their status as incarcerated persons, and to issue benefits to all those who meet the

8   statutory eligibility criteria;

9   E.   Order Defendants to review and approve any claims filed through the "non-filer

10   portal" and denied based solely on the claimant's status as an incarcerated person,

11   and to issue benefits to those that otherwise meet the eligibility criteria for an

12   economic impact payment;

13   F.   Award damages to Plaintiffs and the Class in the amount of each individual's

14   entitlement under the CARES Act;

15   C.   Award Plaintiffs their reasonable fees, costs, and expenses, including attorneys'

16   fees, pursuant to 28 U.S.C. 2412; and

17   D.   Award such additional relief as the interests of justice may require.

1  Dated: August 1, 2020                    Respectfully submitted,

2

3                                           By:  /s/ Kelly M. Dermody
                                                 Kelly M. Dermody
4
                                            Kelly M. Dermody (SBN 171716)
5                                           Yaman Salahi (SBN 288752)
                                            Jallé Dafa (SBN 290637)
6                                           LIEFF CABRASER HEIMANN
                                                 & BERNSTEIN, LLP
7                                           275 Battery Street, 29th Floor
                                            San Francisco, CA  94111-3339
8                                           Telephone:  415.956.1000
                                            Facsimile:  415.956.1008
9                                           kdermody@lchb.com
                                            ysalahi@lchb.com
10                                          jdafa@lchb.com

11                                          Eva Paterson (SBN 67081)
                                            Mona Tawatao (SBN 128779)
12                                          Christina Alvernaz (SBN 329768)
                                            EQUAL JUSTICE SOCIETY
13                                          1939 Harrison St., Suite 818
                                            Oakland, CA  94612
14                                          Telephone: 415-288-8703
                                            Facsimile:  510-338-3030
15                                          epaterson@equaljusticesociety.org
                                            mtawatao@equaljusticesociety.org
16                                          calvernaz@equaljusticesociety.org

17                                          Lisa Holder (SBN 212628)
                                            EQUAL JUSTICE SOCIETY
18                                          P.O. Box 65694
                                            Los Angeles, CA 90065
19                                          Telephone: 323-683-6610
                                            lisaholder@yahoo.com
20
                                            Attorneys for Plaintiffs and the Proposed Class
21

22

23

24

25

26

27

28