UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COLIN SCHOLL and LISA STRAWN, on behalf of themselves and all others similarly situated.<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN MNUCHIN, in his official capacity as the Secretary of the U.S. Department of Treasury; CHARLES RETTIG, in his official capacity as U.S. Commissioner of Internal Revenue; U.S. DEPARTMENT OF THE TREASURY; the U.S. INTERNAL REVENUE SERVICE; and, the UNITED STATES OF AMERICA.<br><br>Defendants. | Case No. 3:20-cv-5309-CRB<br><br>**DECLARATION OF CHESA BOUDIN IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) PRELIMINARY INJUNCTION; (2) CLASS CERTIFICATION; AND (3) APPOINTMENT OF CO-LEAD CLASS COUNSEL** |

I, Chesa Boudin, declare as follows:

1. I am the District Attorney of the City and County of San Francisco. I am a United States citizen and over the age of 18. I am informed and believe as follows.

2. As District Attorney, it is my responsibility—and that of my office—to hold individuals accountable and to protect victims. We are gatekeepers of the criminal justice system with a legal and ethical duty to ensure the system operates effectively to protect public safety and is free of bias. We pursue innovative measures to break the cycle of crime. Among our core goals is promoting safer communities by reducing recidivism and promoting inclusive, community-based crime prevention and healing. Rather than delay economic relief for our communities in most need during this pandemic, we must lead a deep structural change toward a justice system that better values healing over retribution and devotes resources toward the tools we know are essential to public safety. I make this declaration based on my experiences and those of my office interacting with people who are, have been, and may be incarcerated.

3. Reentry is a critical transition period in the life of an incarcerated person. The return to community can prove to be challenging after family ties have weakened, housing is lost, and job prospects seem unattainable with a felony charge. Having the resources and financial supports in place to make that transition successful is often a critical difference in whether someone re-offends and is re-arrested. We know that the first 72 hours after release are critical to setting the course for successful reentry.

4. The State of California provides only $200 to persons who are leaving prison. That amount is woefully inadequate to cover even basic transportation costs. In addition, a portion of that money may be deducted for clothing issued by the California Department of Corrections and Rehabilitation. The lack of financial support for people re-entering society poses difficulties not only for the individual who is being released, but also the household they will join, which now faces the expense of supporting an additional person.

5. Three basic, yet critical needs of people leaving prison to lead stable and healthy lives are healthcare, employment, and housing. Financial resources are necessary for all three of them. Those resources are not readily available for most incarcerated people upon release.

1  Further, many formerly incarcerated people need to stay temporarily in hotel rooms while they
2  attempt to secure housing; this process also consumes limited financial resources.

3        6.      Upon release, the lack of financial resources often results in undesirable behavior
4  such as substance use or unlawful activity, which may have serious consequences for the
5  individual and society at large, up to and including re-incarceration.

6        7.      For the thousands of incarcerated people that will be released in California alone
7  over the next several months, receipt of CARES Act economic assistance at a later time will be
8  inadequate to provide them the critical and immediate support they need to re-adjust to life
9  outside of prison, particularly during a time of economic crisis.  Sufficient financial support for
10 incarcerated people who are released is a critical means to reduce recidivism and promote public
11 safety. The CARES Act economic assistance builds on the strengths and abilities of people
12 returning home from prison and ensures that they, their families, and their communities are given
13 the greatest opportunity to grow and thrive.  It is unquestionably in the public interest to provide
14 those resources.

15       8.      Incarceration also places severe burdens on families and the maintenance of
16 healthy family relationships.  That burden falls unevenly on people with limited economic means
17 and who do not live close to where their incarcerated family members live.  Maintenance of
18 parent-child and other family relationships notwithstanding incarceration is critical to the
19 emotional well-being of both the parent and the child, enhanced community safety by reducing
20 the trauma on children and loved ones separated from those inside, and the successful re-entry of
21 the parent or child upon release.  The availability of financial support helps strengthen those
22 relationships and has significant residual benefits.  CARES Act stimulus payments thus would
23 help not only the incarcerated individual, but also benefit the larger family structure.

24       I declare under penalty of perjury under the laws of the United States that the foregoing is
25 true and correct.

26       Executed on the 4th of August, 2020, in San Francisco, California.



DocuSigned by:
CHESA BOUDIN

2016657.2

2

DECL. OF CHESA BOUDIN ISO PLFS' MTN. FOR
PRELIMINARY INJUNCTION
CASE NO. 3:20-CV-5309-CRB