Kelly M. Dermody (SBN 171716)
Yaman Salahi (SBN 288752)
Jallé Dafa (SBN 290637)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008
kdermody@lchb.com
ysalahi@lchb.com
jdafa@lchb.com

Eva Paterson (SBN 67081)
Mona Tawatao (SBN 128779)
Christina Alvernaz (SBN 329768)
EQUAL JUSTICE SOCIETY
1939 Harrison St., Suite 818
Oakland, CA  94612
Telephone: 415-288-8703
Facsimile:  510-338-3030
epaterson@equaljusticesociety.org
mtawatao@equaljusticesociety.org
calvernaz@equaljusticesociety.org

[Additional counsel listed on signature page]

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COLIN SCHOLL and LISA STRAWN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN MNUCHIN, in his official capacity as the Secretary of the U.S. Department of Treasury; CHARLES RETTIG, in his official capacity as U.S. Commissioner of Internal Revenue; U.S. DEPARTMENT OF THE TREASURY; the U.S. INTERNAL REVENUE SERVICE; and, the UNITED STATES OF AMERICA.<br><br>Defendants. | Case No.  4:20-cv-5309-PJH<br><br>**PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE AND TO TRANSFER THIS ACTION** |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................. 1
II. ARGUMENT ......................................................................................................................... 2
    A. Plaintiffs Acknowledge the Court's Broad Discretion on Permissive Intervention ................................................................................................................ 2
    B. The Motion to Transfer Should Be Denied............................................................... 3
        1. Intervenors Fail to Make the Requisite Showing That This Action Could Have Been Filed in Illinois................................................................. 3
        2. The First-Filed Rule Does Not Support Transfer........................................ 4
            a. The *Galvan* Case Was Not "First" In Any Meaningful Sense........ 5
            b. The *Scholl* Action Is More Procedurally Advanced ...................... 5
            c. More Class Members Are in California and the Community Has Coalesced Around This Lawsuit—Not the *Galvan* Case ........ 7
            d. The First-Filed Rule Does Not Apply to Anticipatory Cases ......... 8
        3. Coordination and Efficiency Can Be Achieved by Other Means ............. 10
III. CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

Page

**Cases**

*Adoma v. Univ. of Pac., Inc.*,
  711 F. Supp. 2d 1142 (E.D. Cal. 2010) .................................................................................. 6

*Alltrade, Inc. v. Uniweld Prods, Inc.*,
  946 F.2d 622 (9th Cir. 1991) ............................................................................................. 4, 8

*Aurora Corp. of Am. v. Fellowes, Inc.*,
  No. CV 07-8306-GHK (AJWx), 2008 WL 709198 (C.D. Cal. Feb. 27, 2008) ...................... 5

*Church of Scientology of Cal. v. U.S. Dept. of Army*,
  611 F.2d 738 (9th Cir. 1979), *overruled on other grounds by*
  *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
  836 F.3d 987 (9th Cir. 2016) ................................................................................................ 4

*Cluck v. IKON Off. Sols., Inc.*,
  No. C 11-05027 JSW, 2012 WL 1610789 (N.D. Cal. 2012) ................................................. 3

*Cobarruviaz v. Maplebear, Inc.*,
  No. 15-cv-00697, 2016 WL 5725076 (N.D. Cal. Sept. 30, 2016) ........................................ 11

*Com. Lighting Prods., Inc. v. U.S. Dist. Ct.*,
  537 F.2d 1078 (9th Cir. 1976) .............................................................................................. 4

*Commodity Futures Trading Comm'n v. Savage*,
  611 F.2d 270 (9th Cir. 1979) ................................................................................................ 3

*Duke v. Flying J, Inc.*,
  178 F. Supp. 3d 918 (N.D. Cal. 2016) .................................................................................. 3

*E. Bay Sanctuary Covenant v. Trump*,
  --- F.3d ----, No. 18-17274, 2018 WL 8807133 (9th Cir. Dec. 7, 2018) ................................ 6

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*,
  179 F.R.D. 264 (C.D. Cal. 1998) ...................................................................................... 4, 5

*Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*,
  614 F. Supp. 2d 1080 (C.D. Cal. 2009) ............................................................................. 1, 6

*Hatch v. Reliance Ins. Co.*,
  758 F.2d 409 (9th Cir. 1985) ................................................................................................ 3

*Inherent.com v. Martindale-Hubbell*,
  420 F. Supp. 2d 1093 (N.D. Cal. 2006) ................................................................................ 9

*Intersearch Worldwide Ltd. v. Intersearch Group, Inc.*,
  544 F. Supp. 2d 949 (N.D. Cal. 2008) .................................................................................. 5

*Limo Hosting v. Fiks*,
  No. C 08-2474 BZ, 2008 WL 5118789 (N.D. Cal. Dec. 4, 2008) ..................................... 1, 6

*Nat. Resources Def. Council, Inc. v. Winter*,
  645 F. Supp. 2d 841 (C.D. Cal. 2007) .................................................................................. 6

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*,
  No. CV 11-5887-GW(JEMX), 2014 WL 12597071 (C.D. Cal. June 10, 2014) .................. 11

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Payless Shoesource, Inc.*,
  No. C-11-1892 EMC, 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012) ..................................... 5

# TABLE OF AUTHORITIES
### (continued)

Page

*Ontel Prods., Inc. v. Project Strategies Corp.*,
   899 F. Supp. 1144 (S.D.N.Y. 1995) .................................................................................... 5

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) ................................................................................................... 4

*Rsch. Auto., Inc. v. Schrader-Bridgeport Int'l, Inc.*,
   626 F.3d 973 (7th Cir. 2010) ................................................................................................. 8

*S.A. v. Trump*,
   No. 18-cv-03539, 2019 WL 990680 (N.D. Cal. Mar. 1, 2019) ............................................. 6

*Saravia v. Sessions*,
   280 F. Supp. 3d 1168 (N.D. Cal. 2017) ................................................................................ 4

*Xoxide, Inc. v. Ford Motor Co.*,
   448 F. Supp. 2d 1188 (C.D. Cal. 2006) ................................................................................ 8

*Z-Line Designs Inc. v. BellO Int'l LLC*,
   218 F.R.D. 663 (N.D. Cal. 2003) .......................................................................................... 5

**Statutes**

28 U.S.C. § 1391(e)(1)(A) ............................................................................................................ 4

28 U.S.C. § 1391(e)(1)(B) ............................................................................................................ 4

28 U.S.C. § 1391(e)(1)(C) ............................................................................................................ 4

**Treatises**

8 Bus. & Com. Litig. Fed. Cts.
   § 83:10 (4th ed.) ..................................................................................................................... 5

Fed. Jud. Ctr., Manual for Complex Litigation
   § 20.14 (4th ed. 2004) .......................................................................................................... 10

## I. INTRODUCTION

Plaintiffs Colin Scholl and Lisa Strawn are the first in the country to request certification of a class of incarcerated people challenging unlawful withholding of CARES Act economic assistance, seeking such certification on August 4, 2020. Dkt. 8. The government has appeared in this case and will submit its fully briefed opposition to that motion, in addition to Plaintiffs' time-sensitive request for preliminary relief, on September 1, 2020. Dkts. 28, 29. The issues will be ripe for adjudication no later than September 8, 2020, when Plaintiffs submit their reply brief, Dkt. 29—and perhaps even sooner if the Court is ready to adjudicate in Plaintiffs' favor once the government has filed an opposition brief. *See Limo Hosting v. Fiks*, No. C 08-2474 BZ, 2008 WL 5118789, at *2 (N.D. Cal. Dec. 4, 2008) (granting motion after opposition filed and relieving plaintiff of need to file reply brief); *Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1080, 1082 (C.D. Cal. 2009) (granting plaintiff's motion after finding "there is no need for plaintiff to file a reply memorandum").

Time is of the essence, as explained in the preliminary injunction motion. Dkt. 8 at 5-10, 16-18. Plaintiffs, members of the proposed Class, their families and broader communities are hurting. The pandemic has touched us all, and the economic and health crisis has been particularly acute in communities of color, who are also disproportionately affected by the criminal justice system and the costs of incarceration. Congress intended to provide them rapid economic assistance, too, to help weather the crisis.

It is unfortunate—and unbecoming—that despite this urgency, another group of attorneys with fewer connections to the incarcerated community and broader criminal justice reform movement have complicated the litigation landscape by moving, nearly two weeks later, to certify a duplicative class in Chicago, without advising that court of the pending motion here. *See Galvan v. Munchin, et al.*, No. 1:20-cv-04511 (N.D. Ill. August 14, 2020), Dkt. 16 (filed on this docket at Dkt. 33-2) ("*Galvan* action"). Moreover, they filed their case after learning information they should not have known by participating in closed strategy calls under false pretenses, and after being advised that the class would be harmed by any delays caused by procedural issues associated with overlapping cases proceeding in different forums. Dkt. 31-1; Olson Decl. ¶¶ 16-

1  20; Salahi Decl. ¶¶ 4-5.

2  Now, those attorneys have moved to intervene in this Court and to seek to transfer this litigation to their forum, prioritizing their private interests over those of the class. Indeed, even this move has created an unnecessary burden on the Court, and is designed to preempt a motion to stay that the undersigned Plaintiffs already informed this Court and the Illinois court they intended to file in the *Galvan* action in short order. Dkt. 31.

As explained below, Plaintiffs believe that this Court has broad discretion to permit intervention by the *Galvan* plaintiffs for the limited purpose of requesting transfer of venue. Because the intervenors have not made the requisite threshold showing that this case could have been filed in Illinois, the motion to transfer should be denied on the merits. Indeed, this case could not have been filed there because Plaintiffs Scholl and Shawn do not reside there, and neither do the Defendants.

Further, the first-filed rule does not apply here because (1) the cases were filed essentially simultaneously, so there is no meaningful reason to apply the rule; (2) this case is more procedurally advanced than the *Galvan* action, and there is a possibility that the class will receive urgently-needed relief here more quickly than in the *Galvan* action; (3) the locus of community interest and support is in this action and for Plaintiffs' efforts on behalf of the proposed class here, not the *Galvan* action, and there are three times more class members located in California than Illinois; (4) the first-filed rule does not apply in situations where a lawsuit is filed for no other reason but to get to court before another party, or through a so-called "anticipatory" suit; and (5) other equitable considerations weigh against application of the rule given the behavior of the *Galvan* attorneys.

## II. ARGUMENT

### A. Plaintiffs Acknowledge the Court's Broad Discretion on Permissive Intervention

Plaintiffs defer to the Court's substantial discretion to permit intervention here. However, Plaintiffs oppose the request for intervention if it may cause any delay in this matter. Plaintiffs' motion for preliminary injunction explains why further delay before they receive relief will cause

irreparable harm. Dkt. 8 at 5-10, 16-18. It is indisputable that intervention here risks delaying proceedings on the merits and thus exacerbating that harm. It is unlikely the *Galvan* case would provide relief sooner, as no briefing schedule has been set in that case on the plaintiffs' class certification or partial summary judgment motions because the government has not yet appeared, and there is likely to be a significant dispute that will result in additional delay related to filing of a certified administrative record, which is usually required before summary judgment can be entertained in Administrative Procedure Act litigation.

Nevertheless, Plaintiffs believe that, for purposes of sound case management, it is in all parties' interests for the Court to be aware of overlapping litigation and to determine, on the merits, what case management protocols are most appropriate and will further the interests of judicial economy. If the Court permits intervention for the purpose of resolving the transfer motion on the merits, the transfer motion should be denied for the reasons stated below.

### B. The Motion to Transfer Should Be Denied

#### 1. Intervenors Fail to Make the Requisite Showing That This Action Could Have Been Filed in Illinois

The proposed intervenors entirely ignore that a *sine qua non* of granting a motion to transfer venue is that the transferee court must be one in which this action could have been filed originally. *Cluck v. IKON Off. Sols., Inc.*, No. C 11-05027 JSW, 2012 WL 1610789, at *1 (N.D. Cal. 2012) ("In order for a district court to transfer an action under Section 1404, the court must find that the transferee court is one where the action 'might have been brought.'") (quoting *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985)); *see also Duke v. Flying J, Inc.*, 178 F. Supp. 3d 918, 921 (N.D. Cal. 2016) (Hamilton, J.) (denying motion to transfer where party "has not established that the case 'might have been brought' in the" other forum). This analysis requires courts to "look[] to whether the action initially could have been commenced in [the transferee] district." *Hatch*, 758 F.2d at 414. The proposed intervenors make no attempt to demonstrate that Mr. Scholl and Ms. Strawn could have filed this case in the Northern District of Illinois, though that is their burden. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Their motion to transfer should be denied for that reason alone.

In any case, this action could *not* have been brought in Illinois. A civil action like this one brought against the United States, its agencies, and its officers may be brought where "the plaintiff resides if no real property is involved." 28 U.S.C. § 1391(e)(1)(C). Plaintiffs reside in this district, not in the Northern District of Illinois. Compl. ¶¶ 4-5. Likewise, Plaintiffs could not sue in Chicago because no Defendants reside in that district. 28 U.S.C. § 1391(e)(1)(A). Finally, none of the relevant agency decisions challenged here were made in the Northern District of Illinois, so it cannot be said that "*significant* events or omissions material to the plaintiff's claim . . . occurred in [the Northern District of Illinois]." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1190 (N.D. Cal. 2017) (citation omitted); *see also* 28 U.S.C. § 1391(e)(1)(B). Simply put, Mr. Scholl and Ms. Strawn could not have filed this lawsuit in Illinois, so transfer to that district is improper. *See*, *e.g.*, *Com. Lighting Prods., Inc. v. U.S. Dist. Ct.*, 537 F.2d 1078 (9th Cir. 1976) (transfer order vacated where action could not have been filed originally in transferee court). The motion to transfer must be denied on those grounds alone.

### 2.     The First-Filed Rule Does Not Support Transfer

For the reasons above, the Court need not consider whether or how the first-filed rule applies. But if it does, contrary to the intervenors' suggestion, the "first-to-file rule is not to be mechanically applied, but 'rather is to be applied with a view to the dictates of sound judicial administration.'" *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)); *Church of Scientology of Cal. v. U.S. Dept. of Army*, 611 F.2d 738, 749 (9th Cir. 1979) (in applying rule, "courts are not bound by technicalities"), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). The "underlying purpose" of the rule is "to promote efficiency." *Guthy-Renker*, 179 F.R.D. at 269. The district court is afforded broad discretion in deciding whether, in applying the first-to-file rule, a subsequently filed case should be transferred, and concerns about fairness and equitable concerns can bar the rule's application. *Alltrade, Inc. v. Uniweld Prods, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). Notably, there are important exceptions to the rule, including when a first-filed case is "anticipatory," that is, filed "on receipt of specific, concrete indications" another suit was

1  imminent, *Intersearch Worldwide Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 960 (N.D.
2  Cal. 2008) (citation omitted), and when judicial discretion counsels "dispens[ing] with the rule for
3  equitable reasons," or "if 'the balance of convenience weighs in favor of the later-filed action.'"
4  *Guthy-Renker*, 179 F.R.D. at 270 (citation omitted).  These exceptions apply here.

### a.   The *Galvan* Case Was Not "First" In Any Meaningful Sense

For all intents and purposes, the *Galvan* and *Scholl* cases were filed simultaneously.  The *Galvan* case was filed after business hours on a Friday evening.  The *Scholl* case was filed less than 24 hours later on a Saturday afternoon.  There is no meaningful distinction between these two filing times as neither court was able to take any action on either case until the following Monday.  These circumstances mean that, in analyzing the propriety of transfer, little significance should be afforded to which case was technically filed first.  *See*, *e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Payless Shoesource, Inc.*, No. C-11-1892 EMC, 2012 WL 3277222, at *3 (N.D. Cal. Aug. 9, 2012) (noting that the rule "requires that one action be filed meaningfully prior to the other" and that "[c]ourts have declined to apply the rule where the time between the actions is relatively short because the two actions will not necessarily have progressed to different stages"); *Z-Line Designs Inc. v. BellO Int'l LLC*, 218 F.R.D. 663, 667 (N.D. Cal. 2003) (giving priority to second-filed suit because cases were filed two days apart so "the importance of the earlier filing date is diminished"); *Aurora Corp. of Am. v. Fellowes, Inc.*, No. CV 07-8306-GHK (AJWx), 2008 WL 709198, at *1 (C.D. Cal. Feb. 27, 2008) (noting that courts "have concluded that the first-filed rule is of no utility where competing cases are filed within a short interval of one another"); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995) (first-filed "rule is usually disregarded where the competing suits were filed merely days apart"); *see also* 8 Bus. & Com. Litig. Fed. Cts. § 83:10 (4th ed.) ("[S]ometimes less deference is given to the first-filed case if it was filed only days (or hours) before the other case . . . ."). Thus, the "first-filed" rule is inapt in these circumstances, and does not support affording a preference to one case over the other.

### b.   The *Scholl* Action Is More Procedurally Advanced

Regardless of which suit is technically deemed first filed, courts recognize that there may

2032536.3                                            - 5 -                          PLFS.' OPP TO MOT. TO INTERVENE/TRANSFER
                                                                                    CASE NO. 4:20-CV-5309-PJH

1  be good reasons for giving preference to a subsequently filed lawsuit, such as when the latter
2  lawsuit is procedurally more advanced. *E.g.*, *Adoma v. Univ. of Pac., Inc.*, 711 F. Supp. 2d 1142,
3  1150 (E.D. Cal. 2010) (declining to apply first filed rule where, *inter alia*, first case was not as far
4  along). That is the case here. The *Scholl* plaintiffs filed a motion for preliminary injunction and
5  class certification on August 4, 2020, the same date they served summons on the Defendants. By
6  the time the *Galvan* plaintiffs filed their motion for class certification nearly two weeks later
7  (August 14, 2020), Defendants were already in the process of negotiating with the *Scholl*
8  plaintiffs for an extension of the briefing schedule in this Court. Dermody Decl. ¶ 2. That
9  stipulation was entered and adopted by this Court on August 17, 2020, with the government's
10 opposition due September 1, 2020, reply briefs due on September 8, 2020, and a hearing on
11 September 16, 2020. Dkts. 28-29. The following day, this Court entered a minute order vacating
12 the hearing and indicating the matter was suitable for decision without oral argument. Dkt. 30.
13 Thus, those issues will be fully briefed and ready for disposition by this Court as soon as
14 September 8, 2020, and possibly September 1 if the Court deems a reply is unnecessary. *See*
15 *Limo Hosting*, 2008 WL 5118789, at *2; *Hamilton Beach Brands*, 614 F. Supp. 2d at 1082.

16       In contrast, when the *Galvan* plaintiffs filed their motion for class certification and partial
17 summary judgment, the *Galvan* plaintiffs had not yet field a proof of summons, the Defendants
18 had not appeared, no responsive pleadings had been filed, and—of significance to any request for
19 final judgment under the APA—no administrative record had yet been prepared or filed with that
20 court.[1] *See Galvan* Dkt. 22. The *Galvan* plaintiffs have now filed a proof of summons indicating
21 service on August 11—a week after plaintiffs in this case served summons. *See Galvan* Dkts. 25-
22 29. That means the case schedule here is presumptively also ahead of the *Galvan* case, as
23 summons were served here a week earlier, on August 4. Dkts. 23-27.

24

---

25 [1] A certified record is not required to adjudicate a preliminary injunction under the APA,
   however, and courts regularly order interim relief in such cases. *See*, *e.g.*, *E. Bay Sanctuary*
26 *Covenant v. Trump*, --- F.3d ----, No. 18-17274, 2018 WL 8807133 (9th Cir. Dec. 7, 2018)
   (declining to stay preliminary injunction under APA pending appeal); *S.A. v. Trump*, No. 18-cv-
27 03539, 2019 WL 990680, at *10-11 (N.D. Cal. Mar. 1, 2019) (granting preliminary injunction
   based on APA claim); *Nat. Resources Def. Council, Inc. v. Winter*, 645 F. Supp. 2d 841, 853
28 (C.D. Cal. 2007) (same).

### c. More Class Members Are in California and the Community Has Coalesced Around This Lawsuit—Not the *Galvan* Case

Other equitable considerations also weigh in favor of staying this litigation and deferring to the more developed *Scholl* action. First, the *Scholl* Plaintiffs successfully collaborated with members from and agencies serving the affected and relevant communities. The San Francisco District Attorney, Chesa Boudin, submitted a declaration supporting the request for preliminary injunctive relief. Dkt. 17. Two community organizations that work directly with incarcerated people, Root & Rebound and Bonafide, also submitted declarations in support of the motion. Dkts. 15-16. Counsel have interviewed many incarcerated people in California alone who have expressed interest in supporting the litigation and highlighting their urgent need for assistance, and others around the country have also reached out. Dermody Decl. ¶ 3. These efforts reflect the fact that the *Scholl* plaintiffs and their counsel are embedded in and working with the prospective class members and the civil rights and criminal justice reform community, and also demonstrates their ability to conduct effective advocacy on behalf of the class. Dermody Decl. ¶¶ 4.

Second, there are nearly three times as many class members in the State of California than in Illinois, including many thousands in this District alone. Dermody Decl. Exs. A and B (147,000 people confined in prisons post-conviction in California, compared to 50,000 in Illinois).

Third, Plaintiffs here retained the necessary counsel to lead this particular case. In fact, not only have Plaintiffs retained Lieff, Cabraser, Heimann & Bernstein, LLP, a private firm with the resources and knowledge to litigate this case effectively and the mission to center the clients' interests here, but also the prominent civil rights organization, Equal Justice Society, and its leader, Eva Jefferson Paterson, a civil rights advocate with an incomparable depth and breadth of experience and credibility across social justice and systems-impacted communities. Dkts. 9 (Dermody Declaration), 10 (Tawatao Declaration). Proposed class counsel have proven their ability to build trust and work effectively in coalitions to advance the interests of the proposed class.

### d. **The First-Filed Rule Does Not Apply to Anticipatory Cases**

Furthermore, regardless of which case is deemed "first-filed," courts recognize "[t]he circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping . . . ." *Alltrade*, 946 F.2d at 628 (citations omitted). These exceptions exist in "recogni[tion] that wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution[s]." *Id.* at 627-28 (citations and alterations omitted); *see also Rsch. Auto., Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010) (explaining that first-filed rule may not apply with respect to anticipatory suits because "[t]his type of behavior only exacerbates the risk of wasteful litigation"); *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192 (C.D. Cal. 2006) (anticipatory suits "are viewed with disfavor as examples of . . . gamesmanship").

The circumstances here indicate that the *Galvan* plaintiffs filed their lawsuit in anticipation of the instant action, using information they should not have known, and with complete disregard for the harm that competing suits could create by delaying urgently-needed relief for the class. Specifically, counsel for the *Galvan* plaintiffs, Mr. Patrick Thomas, a clinical professor without complex litigation experience, participated in a closed, confidential litigation strategy group calls discussing this litigation between June 25-July 30, 2020. Olson Decl. ¶¶ 8-20. This group mapped out the filing of this lawsuit, shared research on causes of action, circulated a draft complaint, and discussed litigation strategy and remedies. Olson Decl. ¶¶ 7-17; Salahi Decl. ¶¶ 3-5. Mr. Thomas did not disclose that he was contemplating his own suit during these discussions. *Id.*

In addition, on a conference call on July 23, 2020 with Lieff Cabraser and other tax specialists, Mr. Thomas asked Lieff Cabraser if multiple class actions would be harmful, and Lieff Cabraser explained that, among other things, it would risk procedural delays regarding venue and/or consolidation that could postpone provision of sorely needed relief to putative class members without any benefit whatsoever to them, risk inconsistent adjudications, and result in unnecessary and costly inefficiencies. Olson Decl. ¶ 17; Salahi Decl. ¶ 5. Mr. Thomas

1  participated in this discussion, which also resulted in a group consensus that the class's interests
2  would be best served by a single case being filed, and enlisting the assistance of Lieff Cabraser.
3  *Id.* Mr. Thomas did not disagree or state he was planning to file a different case. *Id.*

4  After Mr. Thomas participated in this confidential working group for over a month,
5  including receiving a draft complaint and listening in on discussions about causes of action and
6  litigation strategy, and without expressing any views against the group consensus that class
7  members would be best served by avoiding litigation in multiple forums, Mr. Thomas
8  nevertheless used the information he learned to pursue separate litigation. As he has now
9  admitted in a declaration filed in the Northern District of Illinois, as of July 23, 2020, Mr. Thomas
10 had not yet made concrete plans to file a lawsuit. Dermody Decl., Ex. C ¶ 19 ("I did not provide
11 information regarding the contemplating filing of this action—which, at the time, had not been
12 agreed to by other counsel."). After the call with Lieff Cabraser, he spoke to Jeannie Evans of
13 Hagens Berman. *Id.* ¶ 20. Mr. Thomas admits that his "expertise does not lie in class action
14 litigation" so he relayed the concerns he had heard about harming the class to Ms. Evans, and
15 then relied on her representations, which "convinced [him] to nonetheless move forward with
16 working . . . to initiate [a competing] action." *Id.* ¶ 20.[2] After learning that Lieff Cabraser was
17 about to file a case, Mr. Thomas *started drafting a complaint* on July 27. *Id.* ¶ 23. Then, on
18 Thursday, July 30, Mr. Thomas learned on a confidential group call that Lieff Cabraser was about
19 to file the lawsuit the following week, Olson Decl. ¶ 18, and he and his co-counsel rushed to file
20 suit late the night of July 31, 2020.

21 This chronology suggests that the *Galvan* plaintiffs rushed to court for the sole purpose of
22 claiming to be the first-filed suit. They had "specific, concrete indications" that the instant
23 lawsuit was imminent. *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D.
24 Cal. 2006) (citation omitted). Indeed, they did not take action to serve the summons in their case
25 until August 11, and then made no substantive filings for over two weeks, when they filed their

---

[2] The irony is not lost on Plaintiffs that, despite encouraging Mr. Thomas to proceed with filing a competing case notwithstanding the warnings he received that it would risk delay in relief to class members and unnecessary costs and inefficiencies, the Hagens Berman firm now argues before this Court that the existence of two cases in different fora *is* in fact problematic. Dkt. 33.

1 motion for class certification on August 14, already aware of the pending motion here.

2 In contrast, Plaintiffs here filed their complaint on August 1, after completing a thorough
3 investigation (including vetting of numerous prospective class representatives) and many contacts
4 with community groups and experts. Thereafter, they promptly served the summons on the
5 Defendants on August 4, and promptly moved for preliminary injunctive relief and class
6 certification on the same date—well in advance of the *Galvan* plaintiffs.

7 In these circumstances, even if the *Galvan* case is theoretically "first-filed" solely on the
8 basis of an after-hours complaint filed just hours before *this* action, sound judicial policy counsels
9 against encouraging the type of behavior exhibited here—particularly where it works to the
10 detriment of the proposed class rather than to its benefit.

11 **3.   Coordination and Efficiency Can Be Achieved by Other Means**

12 Further, transfer is not necessary to preserve judicial economy or reduce the burden on the
13 parties. In particular, the *Scholl* plaintiffs will file a formal motion to intervene and to request a
14 stay of the *Galvan* litigation in the Northern District of Illinois in short order, as the *Scholl*
15 plaintiffs have already advised both courts. Dkt. 31. Judge Gottschall has issued an order
16 suggesting that a formal motion, rather than advisory notice, is required before the Court can
17 entertain any requests. *Galvan* Dkt. 36.

18 In the interim, Plaintiffs respectfully observe that federal courts are exceptionally well
19 equipped to coordinate to ensure judicial efficiency is achieved. If it would please this Court,
20 Plaintiffs submit that one possible means of coordination might be for this Court to speak directly
21 with Judge Gottschall in Chicago to discuss the Courts' respective case management preferences
22 or plans.[3] *See* Fed. Jud. Ctr., Manual for Complex Litigation § 20.14 (4th ed. 2004) ("Even when
23 related cases pending in different districts cannot be transferred to a single district, judges can
24 coordinate proceedings in their respective courts to avoid or minimize duplicative activity and
25 conflicts."). Such coordination between chambers may take the form of "telephone calls or other
26 communication to minimize conflicts . . . ." *Id.* § 21.1. Coordination of this sort is not
27 uncommon. *See*, *e.g.*, *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, No. CV 11-5887-

---

28 [3] Plaintiffs note that the telephone number listed on Judge Gottschall's website is (312) 435-5640.

GW(JEMX), 2014 WL 12597071, at *1 (C.D. Cal. June 10, 2014) (noting four judges had "conferred regarding possible coordination . . . to avoid duplicative litigation and/or inconsistent pre-trial rulings"). Indeed, it is promoted by Local Civil Rule 3-13. *Cobarruviaz v. Maplebear, Inc.*, No. 15-cv-00697, 2016 WL 5725076, at *2 (N.D. Cal. Sept. 30, 2016) ("[C]oordination between overlapping class actions is important" and the local rule "facilitates coordination among courts where there is multiple parallel litigation.").

### III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny the proposed intervenors' motion to intervene if it will cause delay in the underlying action, but if granted, Plaintiffs request that the intervention be limited to a consideration of the motion to transfer and that such motion be denied.

Dated: August 19, 2020               Respectfully submitted,

By: */s/ Kelly M. Dermody*
    Kelly M. Dermody

    Kelly M. Dermody (SBN 171716)
    Yaman Salahi (SBN 288752)
    Jallé Dafa (SBN 290637)
    LIEFF CABRASER HEIMANN
       & BERNSTEIN, LLP
    275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
    Telephone: 415.956.1000
    Facsimile: 415.956.1008
    kdermody@lchb.com
    ysalahi@lchb.com
    jdafa@lchb.com

Eva Paterson (SBN 67081)
Mona Tawatao (SBN 128779)
Christina Alvernaz (SBN 329768)
EQUAL JUSTICE SOCIETY
1939 Harrison St., Suite 818
Oakland, CA  94612
Telephone: 415-288-8703
Facsimile:  510-338-3030
epaterson@equaljusticesociety.org
mtawatao@equaljusticesociety.org
calvernaz@equaljusticesociety.org

Lisa Holder (SBN 212628)
EQUAL JUSTICE SOCIETY
P.O. Box 65694
Los Angeles, CA 90065
Telephone: 323-683-6610
lisaholder@yahoo.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2020, I caused the foregoing to be electronically filed and served with the Clerk of the Court using the CM/ECF system to all parties of record.

*/s/ Kelly M. Dermody*
Kelly M. Dermody