RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

LANDON M. YOST (CABN 267847)
Trial Attorney
United States Department of Justice, Tax Division
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Telephone:     (202) 307-2144
Fax:             (202) 307-0054
E-mail: Landon.M.Yost@usdoj.gov
          Western.Taxcivil@usdoj.gov

DAVID L. ANDERSON (CABN 149604)
United States Attorney

Attorneys for United States of America

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| COLIN SCHOLL and LISA STRAWN, on behalf of themselves and all others similarly situated, | Case No. 4:20-cv-05309-PJH |
| Plaintiffs, | **UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| STEVEN MNUCHIN, et al., | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ...................................................................................................2

    A.   The enactment and structure of 26 U.S.C. § 6428 ...................................2

        1.   Advance payments of the CARES Act tax credit ...............................3

        2.   Non-filers' ability to receive advance payments of CARES Act credits ....................4

    B.   The IRS's implementation of the CARES Act credit program: ...................................5

    C.   The advance payment of CARES Act credits to incarcerated individuals ...................6

III.  ARGUMENT ........................................................................................................8

    A.   Plaintiffs are not likely to succeed on the merits .....................................9

        1.   Plaintiffs' claims are not ripe, and should be dismissed for lack of jurisdiction ....................9

        2.   Plaintiffs have no Article III injury that gives rise to standing .................................11

        3.   The Little Tucker Act does not apply ...............................................12

        4.   There is no waiver of sovereign immunity under the APA ...........................14

            a.   The IRS's answer to FAQ 14 is not final agency action for which there is no adequate remedy because Plaintiffs have an adequate remedy, provided by Section 6428 itself ...............................14

    B.   Plaintiffs have not suffered irreparable harm .......................................15

    C.   The balance of equities and public interest do not support a preliminary injunction ....................................17

IV.  CONCLUSION ..................................................................................................19

**<u>TABLE OF AUTHORITIES</u>**

<u>FEDERAL CASES</u>

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) .......................................................... 10

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................... 8

*Amador v. Mnuchin*, No. CV ELH-20-1102, 2020 WL 4547950 (D. Md. Aug. 5, 2020) ........................................................................................................................... 9

*Bentz v. Ghosh*, 718 F. App'x 413 (7th Cir. 2017) ................................................................ 16

*Bowen v. Mass.*, 487 U.S. 879 (1988) ................................................................................... 15

*Briggs v. Sullivan*, 886 F.2d 1132 (9th Cir. 1989) ................................................................ 16

*Brock v. Pierce Cty.*, 476 U.S. 253 (1986) ........................................................................... 18

*Cal. Dep't of Educ. v. Bennett*, 833 F.2d 827 (9th Cir. 1987) .............................................. 14

*Clinton v. Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996) .......................................................... 11

*Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846 (9th Cir. 1985) ........................................................................................................................... 16

*Coon v. Wood*, 160 F. Supp. 3d 246 (D.D.C. 2016) ............................................................ 12

*Doe v. Trump*, 8:20-cv-00858-SVW-JEM (C.D. Cal.) ........................................................... 9

*Dunn & Black, P.S. v. United States*, 492 F.3d 1084 (9th Cir. 2007) ..................................... 9

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ................................................................. 15

*Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194 (9th Cir. 1998) .............................. 14

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ..................................................... 17, 18

*Hughes v. United States*, 953 F.2d 531 (9th Cir. 1992) ........................................................ 16

*Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638 (9th Cir. 2005) ............................................................................................................ 14

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ................................................................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 11, 12

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) ............................................... 10

*Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308 (2020) ................................. 13

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ......................................................................... 8

*Munaf v. Geren*, 553 U.S. 674 (2008) .............................................................................. 2, 11

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ............................................ 10

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................................ 8

*Normandy Apartments, Ltd. v. HUD*, 554 F.3d 1290 (10th Cir. 2009) ....................................... 9

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998) ............................................... 11

*R.V. v. Mnuchin*, Case 8:20-cv-01148-PWG (D. Md.) .............................................................. 9

*Richardson v. Morris*, 409 U.S. 464 (1973) ............................................................................ 12

*Sampson v. Murray*, 415 U.S. 61 (1974) ................................................................................ 16

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ........................... 12

*State of Washington v. Betsy DeVos*, 2020 WL 4922256 (W.D. Wash. Aug. 21, 2020) ............................................................................................................ 17

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ............................................................... 12

*U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807 (2016) ................................... 15

*United States v. Bormes*, 568 U.S. 6 (2012) .......................................................................... 13

*United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2008) .......................... 14, 15, 18

*United States v. Mitchell*, 463 U.S. 206 (1983) ...................................................................... 13

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .......................................................................... 12

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .............................................. 8, 15

## FEDERAL STATUTES

26 U.S.C. § 6428 ..................................................................................................................... 1

26 U.S.C. § 7422 ............................................................................................................ 2, 14, 15

28 U.S.C. § 1331 ..................................................................................................................... 9

28 U.S.C. § 1346 ............................................................................................................. passim

42 § U.S.C. 410 ..................................................................................................................... 16

42 U.S.C. § 402 .................................................................................................................. 1, 16

42 U.S.C. § 418 ..................................................................................................................... 16

42 U.S.C. § 423 ..................................................................................................................... 16

5 U.S.C. § 702 ....................................................................................................................... 9

5 U.S.C. § 704 ...................................................................................................................... 15

Pub. L. 110–185, 122 Stat. 613 ............................................................................... 18

Pub. L. No. 116-136, 134 Stat. 281 (2020) ........................................................... 2, 9

<u>OTHER AUTHORITIES</u>

H.R. REP. 103-826 ..................................................................................................... 16

H.R. REP. 112-239 ....................................................................................................... 8

Rev. Proc. 2020-28, 2020-19 I.R.B. 792 ............................................................... 4, 6

U.S. Const., Art. III § 2 .............................................................................................. 11

## I.  INTRODUCTION

In response to the COVID-19 pandemic, Congress passed, and on March 27, 2020, the President signed, the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act, the Act), to stabilize the economy by helping business, workers, families, and consumers who participate in it.  Part of the CARES Act involves the creation of a tax credit for eligible taxpayers' 2020 tax return, and it also provides for advance refunds of these credits directly to taxpayers (also commonly referred to as an Economic Impact Payment or EIP).  The IRS was tasked with administering this massive CARES Act credit, and with implementing the payments of the advance refunds of this credit as rapidly as possible.

Although the CARES Act contemplates the advance refund payment of these 2020 tax credits, the statute also clearly provides that the ultimate eligibility of an individual for the credit, and the amount of that credit, are to be determined on an individual's 2020 federal income tax return, to be filed in 2021.  The statute also provides that the IRS "shall prescribe such regulations or other guidance as may be necessary to carry out the purposes of this section, including any such measures as are deemed appropriate to avoid allowing multiple credits or rebates to a taxpayer." 26 U.S.C. § 6428(h).

On May 6, 2020, the IRS posted a response to a FAQ regarding the eligibility of incarcerated individuals for the advance payment of the CARES Act credit on a website that the IRS created and maintains to carry out its task of administering the CARES Act credit.  This FAQ stated that incarcerated individuals, as defined by Section 202(x)(1)(A) of the Social Security Act (42 U.S.C. § 402(x)(1)(A)(i) through (v)), do not qualify for the "Economic Impact Payment" contemplated by the CARES Act.

The threat of COVID-19 has presented unique dangers for incarcerated individuals.  However, as a general matter, prisoners are also more insulated from the economic effects of the pandemic than many others because their basic needs such as food, shelter, and health care are already being provided for by the state and paid for by taxpayers.

Plaintiffs filed this class action suit and motion for preliminary injunction to seek a nationwide injunction that would force the IRS to issue advance refund payments of CARES Act credits, within 14 days, to prisoners across the country.  The government opposes the "extraordinary and drastic" remedy

of a preliminary injunction, and requests that Plaintiffs' motion be denied.[1]  *Munaf v. Geren*, 553 U.S. 674, 689 (2008).  Plaintiffs have not met their burden to show that they will likely succeed on the merits, that they are likely to suffer irreparable harm, or that the balance of equities tips in their favor.  In particular, Plaintiffs lack standing and their claims are unripe.  The statute that provides for CARES Act credits does not create a right for *anyone* to receive an immediate advance payment of these credits.  Rather, Congress specifically contemplated that the ultimate amount, or even eligibility, for these credits would not be ultimately determined until after taxpayers have filed their 2020 returns in 2021.  Until that has occurred, it would be premature for a court to find that advance payments of CARES Act credits have been wrongfully withheld from prisoners, particularly when Section 6428 provides an adequate remedy for those taxpayers who seek to challenge the amount of the credit, or to contest a determination of eligibility for the credit, through a tax refund claim and action.

## II.  BACKGROUND

### A.  The enactment and structure of 26 U.S.C. § 6428

In order to provide economic and other support during the COVID-19 pandemic,[2] Congress passed the bipartisan CARES Act, which the President signed into law on March 27, 2020.  Pub. L. No. 116-136, 134 Stat. 281 (2020).  The Act provides a fiscal stimulus to the economy, including $2 trillion in economic relief for individuals, loans for small businesses, support for hospitals and other medical

---

1 The United States does not address Plaintiffs' motion for class certification, but requests that, should Plaintiffs' motion for preliminary injunction not be summarily denied, the parties be allowed further briefing on this and other issues before a class is certified and/or a nationwide injunction imposed.

2 That the purpose of the CARES Act was to provide economic assistance to counter the economic harm caused by the COVID-19 pandemic is supported by numerous statements.  At the signing, the President remarked that "this will deliver urgently needed relief to our nation's families, workers, and businesses."  Similarly, in a Floor Speech (https://perma.cc/4MH3-4G8S) in Support of H.R. 748 on March 27, 2020, House Speaker Nancy Pelosi stated "[We] successfully achieve[d] full direct payment for workers...."  Finally, in floor speeches in support of this legislation (https://perma.cc/EKM7-U4R2), numerous Senators emphasized that the purpose of the legislation was to stabilize the economy by helping workers and putting money into the hands of consumers: (1) "the first job of this program: Get money into the pockets of people who are losing their jobs through no fault of their own... a second purpose[:] allow companies to furlough workers so that they can stay on as employees…" (Senator Charles Schumer); (2) "We are trying to make sure that we preserve our economy; that we preserve workers and their families and their abilities to pay their bills." (Senator Ben Cardin); and (3) "… these are hard-working people who, with an additional $1,000, may finally be able to buy that refrigerator, may finally be able to get that car fixed, and may finally be able to get some dental work done." (Senator Richard Durbin).

providers, and various types of aid for impacted businesses and industries.

The Act creates a refundable tax credit through the addition of a new section, Section 6428, to the Internal Revenue Code (Code, Tax Code), entitled "2020 Recovery Rebates for Individuals."  26 U.S.C. § 6428.  At issue here, the Act includes a mechanism for advancing the credit to provide immediate economic relief.  26 U.S.C. § 6428(f).  Importantly, for purposes of this case, the statute provides that these recovery rebates or refundable tax credits will ultimately be claimed or reconciled on an individual's 2020 income tax return.

The statute accomplishes this by providing that each eligible individual receives a fully refundable tax credit against their federal income tax liability (as imposed by subtitle A (Income Taxes) of the Code) for the individual's first taxable year beginning in 2020.  26 U.S.C. § 6428(a).  In general, the amount of that credit equals the sum of (1) $1,200 per eligible individual ($2,400 in the case of eligible individuals filing a joint return) plus (2) the product of $500 multiplied by the number of qualifying children (within the meaning of Section 24(c) of the Code) of the eligible individual.  *Id.*  The total credit amount is then reduced based on the eligible individual's adjusted gross income.  26 U.S.C. § 6428(c).  Section 6428 describes the term "eligible individual" as any individual other than: (1) any nonresident alien individual; (2) any individual who is allowed as a dependent deduction on another taxpayer's return; or (3) an estate or trust.  26 U.S.C. § 6428(d).  There are other provisions that affect an individual's ability to receive the credit that are not directly relevant here.

### 1.    Advance payments of the CARES Act tax credit

In order that individuals, in general, need not wait until filing their 2020 tax returns to receive the tax credit, the CARES Act provides for an advance refund of the credit, instructing that the IRS[3] "shall, subject to the provisions of this title, refund or credit any overpayment attributable to this section as rapidly as possible," but that no *advance* refund should be issued any "later than December 31, 2020."  26 U.S.C § 6428(f).  Thus, each individual who was an eligible individual for taxable year 2019 is treated as having made a payment against the individual's federal income tax liability for taxable year 2019 in an amount equal to the CARES Act credit.  *Id.*  For the most part, the IRS's advance refund of

---

3 For convenience, IRS and Treasury are used interchangeably throughout.

such payment is made automatically, without recipients having to make any filing or request. *Id.*; *see also* Rev. Proc. 2020-28, 2020-19 I.R.B. 792.

But the advanced refunds received under subsection (f) are not the only means by which the statute contemplates that the credits provided for by subsection (a) would be claimed or received by individuals, and subsection (e) provides a coordinating mechanism to reconcile the advance amounts received under subsection (f) with the credit amounts available to an eligible individual under subsection (a). 26 U.S.C. § 6428(e). Ultimately then, the eligibility of an individual taxpayer for the refundable credit, and the amount of that credit, are determined on that taxpayer's 2020 federal income tax return.

Accordingly, an eligible individual who will qualify for a 2020 tax credit under section 6428 will receive it in one of three ways: (1) as an advance refund payment made on or before December 31, 2020; (2) as a CARES Act credit upon filing her 2020 tax return; or (3) partially as an advance refund and partially as a CARES Act credit. Thus, for example, some individuals received a smaller advance refund than they expected or no advance refund at all. These individuals, however, will have to wait until the 2021 filing season to claim and receive the full amount of the CARES Act credit on their 2020 tax return. *See* FAQ 7, *Economic Impact Payment Information Center: Calculating My Economic Impact Payment* (https://perma.cc/NG7T-VY4X ) ("If you did not receive the full amount to which you believe you are entitled, you will be able to claim the additional amount when you file your 2020 tax return.").

### 2.     Non-filers' ability to receive advance payments of CARES Act credits

The CARES Act instructs the IRS to issue advance payments to eligible individuals as "rapidly as possible." 26 U.S.C. § 6428(f)(3)(A). Accordingly, it instructs the IRS to look first to 2019 tax information to determine an individual's eligibility, but that if the individual had not filed a 2019 return, it permits the IRS to look to 2018 tax information. 26 U.S.C. § 6428(f)(1), (3), (5). If the "individual has not filed a tax return" for either year, the IRS is permitted to use information for "calendar year 2019 provided in – (i) Form SSA-1099, Social Security Benefit Statement, or (ii) Form RRB-1099, Social

Security Equivalent Benefit Statement." *Id.*

Thus, if the IRS lacks information on an individual from any of these sources,[4] the CARES Act does not provide the individual is automatically eligible to receive an advance payment. Instead, such individuals must wait to claim the refundable tax credit on their 2020 income tax returns.

**B.      The IRS's implementation of the CARES Act credit program:**

The Treasury Inspector General for Tax Administration (TIGTA) has found that despite the fact that the IRS faced challenges in performing "many of its essential functions as a result of the pandemic," "[i]mpressively, the IRS began issuing CARES Act credits on April 10, 2020, just 14 days after the passage of the CARES Act, which was enacted at the same time the IRS was closing its facilities in response to COVID-19."[5]  Efforts included establishing a dedicated webpage (https://perma.cc/EKM7-U4R2) with continually updated information, coordinating with other agencies to obtain program data in order to automatically send CARES Act credits to those who do not regularly interact with the IRS (by filing annual tax returns, for example) , and "[c]ompleting extensive computer programming and testing necessary to issue the CARES Act credits." *Id.*  "As a result of its efforts, the IRS issued more than 81.4 million payments totaling more than $147.6 billion on April 10, 2020, [and by] May 21, 2020, the IRS [had] issued more than 157 million payments totaling more than $264 billion."[6]

To address the situation of non-filers who do not receive federal benefits, the IRS provided a simple method to file a 2019 federal income tax return electronically or on a simple paper return to receive allowed advance refunds of the CARES Act credit.  *See* Rev. Proc. 2020-28.  In order to issue

---

4 In addition, the IRS worked extensively with partner government agencies to ensure that $1,200 payments would be automatically issued to those receiving Supplemental Security Income ("SSI") and VA Compensation and Pension ("C&P") benefits who did not file a tax return for the last two taxable years. *See* IR-2020-76 (Apr. 20, 2020); *see also* IR-2020-81 (Apr. 24, 2020).  Neither Form SSA–1099 nor Form RRB–1099 is filed with the IRS for these beneficiaries.

5 Treasury Inspector General for Tax Administration (TIGTA) report (https://perma.cc/XUU9-L7NG) entitled "Interim Results of the 2020 Filing Season: Effect of COVID-19 Shutdown on Tax Processing and Customer Service Operations and Assessment of Efforts to Implement Legislative Provisions," dated June 30, 2020, attached as Exhibit 6 to the Declaration of Yaman Salahi, Dkt. 11.

6 The Congressional Research Service has provided an updated review (https://perma.cc/A4FU-6KZN) of the IRS's implementation of this program. (Updated August 27, 2020, and noting factors that have "affected the timing and accuracy of the IRS's distribution" of the advance payments, including the "size of IRS's workforce").

advance refunds by the end of 2020, as required by the CARES Act, *see* 26 U.S.C. § 6428(f)(3)(A), the IRS set a filing deadline of October 15, 2020 to file a 2019 income tax return under the simplified procedures.  Rev. Proc. 2020-28 at 3.03.  An individual who has been determined to be ineligible for the advance refund will not receive an advance refund by later utilizing the simplified procedures, including a non-filers web portal on IRS.gov.  In such cases, the individuals who believe they are eligible for the credit may claim the credit on their 2020 tax return.

The IRS's implementation of the CARES Act credit program was not without some hiccups, however.  Some duplicate payments were issued, some payments were issued to nonresidents and decedents, and some eligible individuals still had not received their CARES Act credits as of the date of the TIGTA report, June 30, 2020.  TIGTA Report, Exhibit 6 to the Declaration of Yaman Salahi, Dkt. 11, at pp. 6-8.

### C.     The advance payment of CARES Act credits to incarcerated individuals

The CARES Act grants specific authority to the IRS to prescribe "regulations or other guidance as may be necessary to carry out the purposes" of Section 6428.  26 U.S.C. § 6428(h).

After initially sending out early payments that were not screened for incarcerated individuals, on May 6, 2020, the IRS issued a response to FAQ 14 (https://perma.cc/VDN6-6QY8) on its website[7] stating that incarcerated individuals do not qualify for these advance refunds.  On May 13, 2020, "programming was implemented to discontinue calculating and sending CARES Act credits to prisoners." TIGTA report cited *supra*, "Interim Results of the 2020 Filing Season," pp. 4-6.  FAQ 14 was addressed to the question of whether incarcerated individuals may receive an advance payment of the CARES Act tax credit, and did not address the separate question of whether such individuals are eligible to claim these credits on their 2020 tax returns.  Declaration of Michael J. Desmond (Desmond Decl.), ¶ 8.

---

[7] This FAQ was originally FAQ 12.  The IRS has continued to update this website, and following a recent reorganization, the FAQs are grouped by category, and numbered within that category.

In issuing this FAQ, the IRS was concerned about possible fraud and the possibility that Congress intended to exclude prisoners. *Id.* ¶ 5. "The IRS regularly receives information about possible fraudulent tax refunds and/or what is considered "frivolous" tax activity involving prisoners, as well as information about incarcerated individuals using possible "stolen" identities to obtain false refunds. For example, the IRS receives information from an intelligence unit of the federal Bureau of Prisons that directly monitors suspicious federal prisoner activity. The information is then shared with appropriate parts of the IRS for further analysis. Fraudulent activity involving tax refunds is prevalent among the prison population. For example, in calendar year 2018, the IRS found 6,799 returns filed under the Social Security numbers (SSNs) of prisoners under Federal, state or District of Columbia custody to be false and fraudulent returns. Those returns, all suspended or rejected, claimed tax refunds totaling $118.60 million. These 6,799 returns included returns filed by prisoners as well as returns filed by unknown individuals using prisoners' SSNs. The IRS findings for 2018 are not an isolated case and, in fact, reflect progress from earlier years in reducing fraudulent tax activities involving prisoners. Because of the continued prevalence of fraudulent tax activities among the prisoner population, the IRS applies fraud filters to screen all tax returns filed under prisoners' SSNs that claim refunds and otherwise scrutinizes prisoners' tax filings and refund claims." *Id.* ¶ 6.

Additionally, various TIGTA reports indicate that "[t]ax refund fraud associated with prisoners remains a significant problem for tax administration." 2014 TIGTA Report: Prisoner Tax Refund Fraud ( https://perma.cc/24RS-9PQ7); 2017 TIGTA Report: Actions Need to Be Taken to Ensure Compliance With Prisoner Reporting Requirements (https://perma.cc/FV5U-2G7D) (identifying "recent examples in which prisoners were the victims of identity theft or committed identity theft while incarcerated for another crime"). *See also*, *e.g.*, DOJ Press Release (https://perma.cc/RC5Y-E5H4) from the U.S. Attorney's Office for the Western District of Pennsylvania dated August 25, 2020 (discussing fraud from prisoners with respect to unemployment benefits during the pandemic); *see also* IRS Blue Bag Program (https://perma.cc/APN7-72DD) (describing a program where "the IRS and cooperating prisons monitor inmates' tax-related communications to deter inmate tax fraud").

Pursuant to 26 U.S.C. § 6116, "the Federal Bureau of Prisons and the head of any State agency

charged with the responsibility for administration of prisons" must provide the IRS with a variety of information regarding "all the inmates incarcerated within the prison system."  The legislative history for this statute explains that its purpose was to "assist in detecting and deterring fraudulent tax return filings from inmates."  H.R. REP. 112-239, 21.  This information includes, among other information, the name, birthdate, date of incarceration, date of release or anticipated release, last known address, and taxpayer identification number of prisoners.  26 U.S.C. § 6116(b).

The IRS used this and other information to determine which individuals were not eligible for the advance payments of the CARES Act tax credits.  Desmond Decl. ¶ 7.  Specifically, individuals who were deemed by the IRS to be incarcerated as of April 30, 2020, based on the dates of release or anticipated release reported to the IRS, were deemed to not qualify for the advance payments, and were directed to return to the IRS any such payments received.  *Id.*

**III. ARGUMENT**

Plaintiffs seek a preliminary injunction, and therefore must demonstrate: (1) that they are "likely to succeed on the merits" of their complaint; (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in [their] favor"; and (4) that the preliminary injunction "is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The last two "factors merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  If a plaintiff raises "serious questions going to the merits," a court may grant interim relief if the balance of hardships "tips sharply in the plaintiff's favor," the plaintiff is likely to suffer irreparable harm, and the interim relief is in the public interest.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22; *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion") (*quoting Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original)).

### A.    Plaintiffs are not likely to succeed on the merits

Plaintiffs are not likely to succeed on the merits because they lack standing and cannot identify a waiver of the United States' sovereign immunity.  Plaintiffs first lack standing under the ripeness doctrine because there has not been a final determination made with respect to their eligibility for the CARES Act credit.  The ripeness doctrine counsels that the Court should not intervene in the administrative process by ordering a nationwide injunction applying to all prisoners until Plaintiffs' final eligibility has been determined through this process.  Plaintiffs also lack standing because they lack any injury-in-fact.  Plaintiffs were not deprived of any previously existing financial means, and Section 6428 did not create a right to the advance refund payment of the CARES Act credit, so Plaintiffs have suffered no injury by not yet having received the advance refund payment.

Nor can Plaintiffs establish a waiver of sovereign immunity.  The CARES Act does not contain any waiver, *see* Pub. L. No. 116-136, and Plaintiffs have not identified one.  They allege jurisdiction only under 28 U.S.C. §§ 1331 and 1346(a).  (Complaint, ¶ 2).  But Section 1331 is a "grant[] of general jurisdiction and cannot be construed as authorizing suits of this character against the United States, else the exemption of sovereign immunity would become meaningless."  *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 n.3 (9th Cir. 2007); *Normandy Apartments, Ltd. v. HUD*, 554 F.3d 1290, 1295 (10th Cir. 2009) ("28 U.S.C. § 1331 [does] not waive the Government's sovereign immunity").  And 28 U.S.C. § 1346(a)(2) (Little Tucker Act) does not apply in this case, for reasons discussed below. Finally, although 5 U.S.C. § 702 can serve generally as a waiver for APA claims in some cases, it does not in this case, for reasons discussed below.[8]

### 1.    Plaintiffs' claims are not ripe, and should be dismissed for lack of jurisdiction

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has

---

8 *But see Amador v. Mnuchin*, No. CV ELH-20-1102, 2020 WL 4547950 (D. Md. Aug. 5, 2020); *Doe v. Trump*, 8:20-cv-00858-SVW-JEM (C.D. Cal.); *R.V. v. Mnuchin*, Case 8:20-cv-01148-PWG (D. Md.) (non-prisoner CARES Act credit cases under Section 6428 rejecting similar arguments).

1   been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp.*

2   *Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (*quoting Abbott Laboratories v. Gardner*, 387

3   U.S. 136, 148-149 (1967)).  "Absent [a statutory provision providing for immediate judicial review], a

4   regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the

5   [Administrative Procedure Act (APA)] until the scope of the controversy has been reduced to more

6   manageable proportions, and its factual components fleshed out, by some concrete action applying the

7   regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Id.* at 808

8   (*quoting Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990)).

9          Here, the IRS's response to FAQ 14 regarding the eligibility of prisoners for the CARES Act

10   credit is not "the type of agency action 'ripe' for judicial review under the" APA, for multiple reasons.

11   *Id.*  First, and most importantly, the plain language and structure of Section 6428 indicate that it is

12   unripe for this type of challenge.  Congress designed the CARES Act credit as a "credit against the tax

13   imposed by subtitle A for the first taxable year beginning in 2020."  26 U.S.C. § 6428(a).  Although

14   many CARES Act credits have been sent out as advance refund payments for the 2020 taxable year,

15   many have not, and the ultimate amount of these credits will be determined on taxpayers' 2020 returns,

16   taking into account factors that Congress identified such as the number of "qualifying children," the

17   amount of the "taxpayer's adjusted gross income," and the taxpayer's filing status, factors that could all

18   change by the time 2020 tax returns are filed.  26 U.S.C. § 6428(a) and (c).  Thus, Congress specifically

19   contemplated that the ultimate amount, or even eligibility, for these credits would not be ultimately

20   determined until those returns are filed.  This fact alone counsels that the Court should avoid judicial

21   review of FAQ 14 under the ripeness doctrine.  Moreover, even with respect to the advance refund

22   payments of the CARES Act credit, which no individual has a right to under Section 6428, although

23   Congress directed the government to send out the advance refund payments of these credits "as rapidly

24   as possible" to those eligible, even such advance payments may be sent out as late as "December 31,

25   2020."  26 U.S.C. § 6428(f)(3).  Until that date has passed, it is premature for the Court to find that

26   advance payments of these CARES Act credits have been wrongfully withheld from prisoners.

27          Finally, FAQ 14 is not "an administrative decision [that] has been formalized." *Nat'l Park*

28

*Hosp.*, 538 U.S. at 807.  No regulation has been issued, nor has FAQ 14 undergone the formal or

informal rulemaking process.  FAQ 14 also does not address many aspects of Plaintiffs' claims, such as

whether they will ultimately qualify for the credit if they claim it on their 2020 tax returns – it only

addresses whether Plaintiffs' qualify for the *advance* refund payment of this credit.  Moreover, it does

not address whether individuals who are only incarcerated for a portion of 2020 will be able to claim the

CARES Act credit on their 2020 tax returns, which they will be able to do if they otherwise qualify.

Desmond Decl. ¶ 8.  In sum, the eligibility of Plaintiffs for the CARES Act credit will not be known

until the end of the year when they attempt to claim the credit on their 2020 tax returns.

     Plaintiffs seek the "extraordinary and drastic" remedy of a nationwide preliminary injunction,

*Munaf*, 553 U.S. at 689, but ripeness, as noted, "is peculiarly a question of timing, and a federal court

normally ought not resolve issues involving contingent future events that may not occur as anticipated,

or indeed may not occur at all."  *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996) (internal

quotation marks, brackets, and citations omitted).  "The ripeness doctrine reflects a judgment that the

disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the

additional costs of – even repetitive – postimplementation litigation."  *Ohio Forestry Ass'n, Inc. v.*

*Sierra Club*, 523 U.S. 726, 735 (1998).  The eligibility of any individual for the CARES Act credit will

not be known until the end of this tax year, and determinations with respect to claims of eligibility will

not be made until after the individual files a 2020 tax return.  Moreover, as discussed in more detail

below, the CARES Act, through the Tax Code, already provides for a litigating remedy if an individual

disagrees with a final determination of eligibility for a CARES Act credit, providing more support for

the position that plaintiffs' challenge is unripe.

## 2. Plaintiffs have no Article III injury that gives rise to standing

    Article III of the Constitution limits the jurisdiction of federal courts to "cases" and

"controversies."  U.S. Const., Art. III § 2.  To bring a case or controversy before the Court, Plaintiffs

must have suffered an "injury in fact" which has a "causal connection" with the injury it complains of

and which is likely to be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560-61 (1992) (internal citations and quotes omitted).  An "injury in fact" must rise to the level of

an "invasion of a legally protected interest." *Id.*  The injury must also be "concrete and particularized" and "actual or imminent," as opposed to "conjectural or hypothetical." *Id.*  The injury-in-fact requirement is not met where a plaintiff "allege[s] a bare procedural violation, divorced from any concrete harm…."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.").

There is no violation of Plaintiffs' "legally protected interest" in this case.  *Lujan*, 504 U.S. at 560.  The CARES Act did not take anything from Plaintiffs.  Nor did the CARES Act give Plaintiffs any type of legally protected interest in anything that is being wrongfully withheld, because the CARES Act does not mandate that Plaintiffs receive an advance refund payment of a CARES Act credit, let alone that they receive it before the December 31, 2020, deadline established by Congress for such advance payments.  Instead, it creates a refundable credit against eligible individuals' 2020 income taxes.  *See* 26 U.S.C. § 6428(a).  Plaintiffs could only sustain a cognizable injury then, if they attempted to claim the CARES Act credit on their 2020 tax returns, after the tax year is complete, and the IRS were to then improperly deny it.  But it is well-settled that such allegations of future possible injury do not satisfy the requirements of Article III.  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).  In other circumstances, courts have consistently held that "the mere possibility of future tax liability, or any associated penalties imposed by the IRS, is insufficient to establish standing to sue in federal court." *Coon v. Wood*, 160 F. Supp. 3d 246, 251 (D.D.C. 2016) (collecting cases).

### 3.    The Little Tucker Act does not apply

Plaintiffs allege jurisdiction under the Little Tucker Act (28 U.S.C. § 1346(a)(2)), but they appear to rightly acknowledge that it can only potentially serve as a jurisdictional basis for their Count III claim that prisoners should be paid the advance refund of the CARES Act credit, and not for their claims for injunctive and declaratory relief.  (Complaint, p. 16); *Richardson v. Morris*, 409 U.S. 464, 465 (1973) ("[T]he Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States").

As Plaintiffs recognize, the Little Tucker Act "does not create substantive rights," and so they must look to 26 U.S.C. § 6428 as the statutory source undergirding their claim. *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1327 (2020). However, "[n]ot every claim invoking … a federal statute … is cognizable under the Tucker Act." *Id.* (*quoting United States v. Mitchell*, 463 U.S. 206, 216 (1983)). "Nor will every 'failure to perform an obligation ... creat[e] a right to monetary relief' against the Government." *Id.* (quoting *United States v. Bormes*, 568 U.S. 6, 16 (2012)). To determine whether Section 6428 falls within the Little Tucker Act, the Court should "employ a fair interpretation test," under which Section 6428 qualifies "if, but only if, it can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* (internal quotation omitted).

Section 6428 fails this fair interpretation test because it is not a "money-mandating provision" to compensate for damages sustained. *Id.* at 1327 and 1331 (noting that such provisions are "uncommon" and "rare"). Rather, the language of this statute could not be any clearer: the CARES Act credit is a tax credit, not a mandated compensation for damages. 26 U.S.C. § 6428(a) ("there shall be *allowed as a credit against the tax imposed* by subtitle A for the first taxable year beginning in 2020…") (emphasis added). If a taxpayer takes issue with the amount or non-allowance of the tax credit, there is a provision that allows taxpayers to bring a claim, 28 U.S.C. § 1346(a)(1),[9] but not until this credit has been claimed, and denied, on their 2020 tax return.

Moreover, even if Section 6428 did qualify as a money-mandating provision, 28 U.S.C. § 1346(a)(2) is inapplicable because by creating a tax credit and implicating the Tax Code, Section 6428 contains its "own self-executing remedial scheme." *Bormes*, 568 U.S. at 11. In such a case, the "self-executing remedial scheme supersedes the gap-filling role of the Tucker Act." *Id.* at 13; *Maine Cmty. Health*, 140 S. Ct. at 1329 ("the Tucker Act 'is displaced'" when 'a law assertedly imposing monetary liability on the United States contains its own judicial remedies.'") (*quoting Bormes*, 568 U.S. at 12). Here, by designing the CARES Act credit as a "credit against the tax imposed by subtitle A for the first

---

9 This subsection provides for civil actions for "the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." Plaintiffs allege that their claim falls within 28 U.S.C. § 1346(a)(2), which provides for "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount." As discussed below, there are prerequisites to bringing a tax refund claim under subsection 1346(a)(1).

1   taxable year beginning in 2020," providing for limitations based on "adjusted gross income" in the "case

2   of a joint return," etc., Congress made it abundantly clear that the CARES Act credit is a tax credit to be

3   claimed or reconciled on a 2020 tax return.  As such, like with any income, credit, or deduction that a

4   taxpayer claims on a tax return, there is a "self-executing remedial scheme" that Congress has already

5   set up if the taxpayer seeks to challenge the IRS's treatment of that income, credit, or deduction.

6   Namely, after exhausting their administrative remedies with the IRS, taxpayers "may bring an action

7   against the Government either in United States district court or in the United States Court of Federal

8   Claims," provided they "comply with the tax refund scheme established in the Code."  *United States v.*

9   *Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4-5 (2008) (referencing 28 U.S.C. § 1346(a)(1), 26 U.S.C. §

10  7422, and the jurisdictional prerequisites to bring such a suit).

11                    **4.      There is no waiver of sovereign immunity under the APA**

12          Plaintiffs seek injunctive and declaratory relief under the APA, but the APA does not apply, and

13  sovereign immunity is not waived, if the decision under review does not constitute a "final agency

14  action for which there is no other adequate remedy in a court…." 5 U.S.C. § 704; *Gallo Cattle Co. v.*

15  *U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998).  "The requirement of finality is interpreted

16  pragmatically."  *Cal. Dep't of Educ. v. Bennett*, 833 F.2d 827, 833 (9th Cir. 1987).

17                    **a.      The IRS's answer to FAQ 14 is not final agency action for which there
                              is no adequate remedy because Plaintiffs have an adequate remedy, provided
18                            by Section 6428 itself**

19          In order for an agency action to be final it "must mark the consummation of the agency's

20  decision-making process."  *Gallo*, 159 F.3d at 1198–99 (internal quotation omitted); *Bennett v. Spear*,

21  520 U.S. 154, 177-78 (1997) (overruled on other grounds) (citations omitted).  "[C]ertain factors provide

22  an indicia of finality, such as whether the action amounts to a definitive statement of the agency's

23  position, whether the action has a direct and immediate effect on the day-to-day operations of the party

24  seeking review, and whether immediate compliance with the terms is expected."  *Indus. Customers of*

25  *Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) (internal quotations

26  omitted).  As the Supreme Court has stated, "[t]he core question is whether the agency has completed its

27  decisionmaking process, and whether the result of that process is one that will directly affect the

28

parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

"Even if final, agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court."  *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1815 (2016); 5 U.S.C. § 704.  Here, as discussed above, the CARES Act credit is a tax credit, the eligibility for which, and the amount of which, is to be determined on a 2020 tax return.  By designing the CARES Act credit in this way through Section 6428, Congress also provided the mechanism for judicial review for a taxpayer's challenge to the IRS's answer to FAQ 14 regarding eligibility for a CARES Act credit, or denial of a claimed CARES Act credit.  To wit, taxpayers "may bring an action against the Government either in United States district court or in the United States Court of Federal Claims," provided they "comply with the tax refund scheme established in the Code."  *Clintwood*, 553 U.S. at 4-5 (referencing 28 U.S.C. § 1346(a)(1), 26 U.S.C. § 7422, and the jurisdictional prerequisites to bring such a suit).

Because Plaintiffs may bring a refund claim if they disagree with the IRS's answer to FAQ 14 or are ultimately denied a CARES Act credit, if they otherwise meet the jurisdictional requirements for such claims, their claims do not fall within the APA's immunity waiver.  *Clintwood*, 553 U.S. at 8-12; *Bowen v. Mass.*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").

### B.   Plaintiffs have not suffered irreparable harm

Plaintiffs cite a number of cases for the principle that irreparable harm occurs when "the government wrongfully withholds benefits that are intended to provide critical assistance to vulnerable populations."  (Motion, p. 16).  First, it should be noted that all of the Ninth Circuit cases Plaintiffs cite in support of this principle either do not cite the standard for preliminary injunctions, or use a prior standard of the "possibility" of irreparable harm.  This standard was overturned by the Supreme Court as "too lenient."  *Winter*, 555 U.S. at 22 ("We agree … that the Ninth Circuit's 'possibility' standard is too lenient.  Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (emphasis in original).  More importantly, however, the CARES Act does not establish any right to receive an immediate advance

payment, but only provides for a credit to be claimed on eligible individuals' 2020 returns, one that, could be received as an advance refund payment before December 31, 2020, but that ultimately may still be claimed on an eligible individual's 2020 return, as discussed above.[10]  Thus, the government has not wrongfully withheld anything from Plaintiffs.  Finally, none of the cases cited by Plaintiffs involve prisoners, whose basic needs such as food, shelter, and health care are already being provided for by the state.[11]  Rather, these cases involve vulnerable families for whom the loss of government benefits can mean going without food, shelter, and health care, not only for the adult individuals who receive these benefits, but for their children as well.

Moreover, even if Plaintiffs were clearly entitled by law to have received the advance refund payment of the CARES Act credit by now, such monetary harm does not equate to irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended are not enough."); *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 851 (9th Cir. 1985) ("economic injury alone is not considered irreparable"); *Hughes v. United States*, 953 F.2d 531, 536 (9th Cir. 1992) (taxpayers' allegations of financial harm and due process violations do not constitute irreparable harm justifying injunctive relief); *Bentz v. Ghosh*, 718 F. App'x 413, 420 (7th Cir. 2017) ("Irreparable harm means an injury that money cannot repair.").

10 For this reason, besides applying the incorrect standard (one that required only a "colorable" showing of irreparable harm), Plaintiffs' citation to *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir. 1989), is inapt.  If Plaintiffs were to receive the advance refund payment of the CARES Act credit either before the end of the year or after claiming it on their 2020 tax return, it would not be a "retroactive payment," but one in line with the scheme provided for by 26 U.S.C. § 6428.

11 This is perhaps one reason why Congress has historically excluded inmates from certain benefits.  For example, inmates are not entitled to Social Security old-age benefits, *see* 42 U.S.C. § 402(x)(1); Social Security Disability, *see* 42 U.S.C. § 423(j), 402(x)(1); and Social Security Supplemental Security Income, *see* 42 U.S.C. § 1382(e).  As another example, income an inmate earns "for services provided by an individual while the individual is an inmate in a penal institution" is excluded from earned income for purposes of the Earned Income Tax Credit (EITC), *see* 26 USC 32(c)(2)(B)(iv), partly because the "EITC is designed to alleviate poverty and to provide work incentives to low-income individuals," according to the legislative history.  H.R. REP. 103-826, 182 (also noting that "[b]ecause of the compulsory nature of much of the work performed by prison inmates, it does not further the objectives of the EITC to include in earned income for EITC calculations any amounts paid for inmates' services.").  Additionally, work performed by inmates also is excluded from employment for benefits eligibility purposes, *see* 42 §§ U.S.C. 410(a), 410(p), 418(c)(6)(B), and credits for payment of health insurance premiums are unavailable during periods of incarceration, *see* section 35(b)(1)(iv) of the Code.

1    The general principle that economic harm does not amount to irreparable harm applies with at least

2    equal – if not greater – force in the case of prisoners, whose basic needs are being provided for by the

3    state and taxpayers, and for whom a $1,200 CARES Act credit would be equivalent to well over a year's

4    worth of typical income in Mr. Scholl's case.  (Scholl Decl., Dkt. 13, ¶ 5).[12]

5            Plaintiffs also claim that their family and friends would be irreparably harmed if the Court does

6    not order the IRS to issue them and other prisoners the advance refund payments of the CARES Act

7    credit within 14 days, citing as support *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

8    (Motion, 17:4-6; 18:1-16).  In *Hernandez*, the Ninth Circuit found a likelihood of irreparable harm to the

9    family members of those undocumented individuals who were being unconstitutionally detained by

10   being deprived of physical liberty without due process, for indeterminate periods of time.  Without

11   diminishing the unique difficulties faced by friends and family of the incarcerated, the temporary and

12   economic harm to them that comes from the incarcerated not yet having received an advance monetary

13   payment is not equivalent to the harm faced by the families of those individuals who are being

14   unconstitutionally and indefinitely detained.  More importantly, however, is the fact that, just as

15   prisoners are not having any benefit wrongfully withheld from them, nor are their friends and family

16   members.  Under the CARES Act, there are individuals eligible for the credit on their 2020 tax return

17   who will not receive the advance refund, as discussed above.  Plaintiffs are no more harmed than any

18   other individual eligible for the credit who must wait until 2021 to file their 2020 tax returns to claim the

19   credit, nor are their friends and family members.

20           Although Plaintiffs would likely benefit from receiving an advance payment of the CARES Act

21   credit, the economic harm that comes from not yet having received this payment does not constitute

22   irreparable harm.

23           **C.      The balance of equities and public interest do not support a preliminary injunction**

24           At the highest level, "the protection of the public fisc is a matter that is of interest to every

25

26           _____

             12 The United States acknowledges that at least one court has found irreparable harm in a

27   CARES Act case, even when the harm is only economic.  *See, e.g.*, *State of Washington v. Betsy DeVos*,
     2020 WL 4922256, at *10 (W.D. Wash. Aug. 21, 2020) (in case where it found that the Department of

28   Education was attempting to shift funds from more needy students to less needy students).

1   citizen." *Brock v. Pierce Cty.*, 476 U.S. 253, 262, 265 (1986) (citing this, along with the "authority to

2   protect the integrity of [a government] program," as important interests that justified allowing the Labor

3   Department to recover misused grant funds outside of the statutory window for determining whether

4   such funds were misspent); *see also*, *e.g.*, *Clintwood*, 553 U.S. at 12 (referencing the "tax authorities' …

5   exceedingly strong interest in financial stability") (internal quotation omitted).  Additionally, the

6   "general public [has an] interest in the efficient allocation of the government's fiscal resources."

7   *Hernandez*, 872 F.3d at 996.

8           The CARES Act tasked the IRS with administering the largest aid package in history, at a time

9   when its own resources are being strained by the COVID-19 pandemic.  Preserving the IRS' ability to

10  efficiently allocate its resources to continue to administer the advance refund payments of the CARES

11  Act credit and issue those payments as rapidly as possible serves the public interest, particularly as the

12  IRS faces the logistical challenges presented by the possibility of being tasked with administering a

13  second round of advance refund payments.  It should also be noted that there is pending legislation that

14  could specify retroactively that prisoners are not eligible for CARES Act credits, although it is

15  speculative as to what, if any legislation should pass.[13]  But should such legislation pass after an

16  injunction issued, the IRS would expend resources issuing CARES Act credits to prisoners nationwide,

17  only to expend more resources trying to recover those payments.  Finally, particularly in light of the

18  IRS's concern over fraud and identify theft, as discussed above, preserving the IRS's ability to protect

19

20          13 On July 27, 2020, Senate Republicans unveiled legislation (https://perma.cc/T7SM-CDJK),
    titled the "HEALS Act," that includes Senate bill S.4318 (https://perma.cc/RL6V-9WGS) which

21  provides for a second round of advance refund payments.  This second round of payments would be
    governed by a new code section, 26 U.S.C. § 6428A, which spells out specifically that the advance

22  refund payments to prisoners are not allowed.  In addition, however, this bill also makes a number of
    modifications to the CARES Act credits provided for by the already existing Section 6428.  Most

23  significantly for this case, this bill amends 26 U.S.C. § 6428 to clarify that advance refund payments to
    prisoners of the first round of CARES Act credits are not allowed either.  *See* Sec. 202(b) of S.4318

24  (https://perma.cc/2963-GCYQ).  The House version (https://perma.cc/3PFJ-5653) of a new pandemic
    response bill, the "HEROES Act," H.R. 6800, does not contain a similar provision.  It is admittedly

25  speculative as to what, if any, legislation will pass.  There is some historic precedent for excluding
    prisoners, however.  The Economic Stimulus Act of 2008, Pub. L. 110–185, 122 Stat. 613, contained a

26  similar credit.  However, the 2008 Act required that a recipient of the credit have a minimum income of
    $3,000 or a net tax liability greater than zero.  26 U.S.C.A. § 6428 (Effective February 13, 2008 to

27  December 18, 2014).  Qualifying income for the $3,000 threshold was defined in such a way, however,
    that it excluded "amounts received for services provided by an individual while the individual is an

28  inmate in a penal institution."  *Id.* (referencing 26 U.S.C. § 32(c)(2)).

the public fisc serves the public interest.  A nationwide preliminary injunction that would force the IRS to divert its resources to begin issuing advance refund payments of CARES Act credits to prisoners in light of the above concerns does not further the purpose of the CARES Act, and would not be in the public interest.

Although prisoners' basic needs are already being paid for by taxpayers, the government does not dispute that prisoners' welfare in general would likely benefit from better funding, whether the increased funding were to go to prisons,[14] or directly to prisoners themselves in the form of increased work salaries or a one-time payment like the CARES Act credit.  However, the CARES Act's primary goal was to stabilize the economy by putting money, as rapidly as possible, into the hands of those workers whose livelihood was being threatened by the COVID-19 pandemic, to allow these workers to continue to provide their families with food, shelter, and other basic necessities.

## IV. CONCLUSION

For the above reasons, Plaintiffs' motion for a preliminary injunction and class certification should be denied.  They have not carried their burden of persuasion with the clear showing that would entitle them to the drastic and extraordinary remedy they seek.  The government should be allowed the time to respond more fully to Plaintiffs' complaint by filing a response within the time period allowed by the Federal Rules of Civil Procedure.

//

//

//

---

14 The CARES Act did provide some funding and support to the prison system.  *See*, *e.g.*, Prison Fellowship, "How Will the Cares Act Impact Prison and Jails" (https://perma.cc/C8P5-Y354).

Dated this 1st day of September, 2020.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

/s/ Landon M. Yost
LANDON M. YOST
Trial Attorney, Tax Division
U.S. Department of Justice

DAVID L. ANDERSON
United States Attorney
Northern District of California

*Attorneys for United States of America*

1

## <u>CERTIFICATE OF SERVICE</u>

2

IT IS HEREBY CERTIFIED that service of the foregoing has been made this 1st day of

3

September, 2020, via the Court's ECF system to all users.

4

5

*/s/ Landon M. Yost*
LANDON M. YOST
Trial Attorney, Tax Division
U.S. Department of Justice

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28