Kelly M. Dermody (SBN 171716)
Yaman Salahi (SBN 288752)
Jallé Dafa (SBN 290637)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008
kdermody@lchb.com
ysalahi@lchb.com
jdafa@lchb.com

Eva Paterson (SBN 67081)
Mona Tawatao (SBN 128779)
Christina Alvernaz (SBN 329768)
EQUAL JUSTICE SOCIETY
1939 Harrison St., Suite 818
Oakland, CA  94612
Telephone: 415-288-8703
Facsimile:  510-338-3030
epaterson@equaljusticesociety.org
mtawatao@equaljusticesociety.org
calvernaz@equaljusticesociety.org

[Additional counsel listed on signature page]

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COLIN SCHOLL and LISA STRAWN, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>STEVEN MNUCHIN, in his official capacity as the Secretary of the U.S. Department of Treasury; CHARLES RETTIG, in his official capacity as U.S. Commissioner of Internal Revenue; U.S. DEPARTMENT OF THE TREASURY; the U.S. INTERNAL REVENUE SERVICE; and, the UNITED STATES OF AMERICA.<br><br>            Defendants. | Case No.  4:20-cv-5309-PJH<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR (1) PRELIMINARY INJUNCTION; (2) CLASS CERTIFICATION; AND (3) APPOINTMENT OF CLASS COUNSEL** |

1

# TABLE OF CONTENTS

2

                                                                                       Page

3   I.      INTRODUCTION .......................................................................................... 1

4   II.     ARGUMENT ................................................................................................ 2

        A.      Class Certification Should Be Granted .................................................. 2

5       B.      Plaintiffs Have Satisfied the Standard for Preliminary Injunction........................ 4

6               1.      Defendants' Statutory Interpretation Contradicts the Statute's Text,
                        Structure, and Purpose, as well as the Legislative History ........................ 5

7               2.      Plaintiffs' Claims Are Ripe for Review ..................................................... 8

8               3.      Sovereign Immunity Is Waived by the APA ........................................... 10

9               4.      Sovereign Immunity Is Also Waived by the Little Tucker Act ............... 11

        C.      Plaintiffs and the Proposed Class Are Suffering Irreparable Harm ..................... 13

10      D.      The Balance of the Equities and Public Interest Support an Injunction .............. 14

11      E.      Alternatively, the Court Should Convert This Motion to a Summary
                Judgment Motion and Set An Expedited Case Schedule ..................................... 15

12  III.    CONCLUSION ........................................................................................... 15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*,
  277 F.R.D. 572 (N.D. Cal. 2011) ................................................................................. 3

*Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.*,
  898 F.2d 1393 (9th Cir. 1990) ................................................................................... 15

*Alaska v. Fed. Subsistence Bd.*,
  544 F.3d 1089 (9th Cir. 2008) ..................................................................................... 5

*Amador v. Mnuchin*,
  No. ELH-20-1102, 2020 WL 4547950 (D. Md. Aug. 5, 2020) .................................... 8

*Bishop Paiute Tribe v. Inyo Cty.*,
  863 F.3d 1144 (9th Cir. 2017) ..................................................................................... 8

*Brock v. Pierce County*,
  476 U.S. 253 (1986) ................................................................................................... 15

*City of Arcadia v. U.S. Env'tl Protection Agency*,
  265 F. Supp. 2d 1142 (N.D. Cal. 2003)........................................................................ 3

*Clinton v. Acequia, Inc.*,
  94 F.3d 568 (9th Cir. 1996) ....................................................................................... 10

*Coon v. Wood*,
  160 F. Supp. 3d 246 (D.D.C. 2016) ............................................................................. 9

*Czyzewski v. Jevic Holding Corp.*,
  137 S. Ct. 973 (2017) ................................................................................................... 8

*Doe v. Trump*,
  8:20-cv-00858-SVW-JEM, 2020 WL 5076999 (C.D. Cal. July 8, 2020) ............... 8, 12

*East Bay Sanctuary Covenant v. Trump*,
  950 F.3d 1242 (9th Cir. 2020) ..................................................................................... 8

*Glacier Park Foundation v. Watt*,
  663 F.2d 882 (9th Cir. 1981) ..................................................................................... 15

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ............................................................................... 14, 15

*Hernandez v. Williams, Zinman & Parham PC*,
  829 F.3d 1068 (9th Cir. 2016) ..................................................................................... 5

*In re Coleman*,
  560 F.3d 1000 (9th Cir. 2009) ..................................................................................... 9

*J.L. v. Cissna*,
  No. 18-cv-04914-NC, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019)............................. 3

*Jiahao Kuang v. U.S. Dep't of Defense*,
  340 F. Supp. 3d 873 (N.D. Cal. 2019).......................................................................... 3

*John-Charles v. California*,
  646 F.3d 12434 (9th Cir. 2011) .................................................................................... 3

*King v. Burwell*,
  759 F.3d 358 (4th Cir. 2014), *aff'd*, 576 U.S. 473 (2015)....................................... 11

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*Maine Community Heath Options v. United States*,
   140 S.Ct. 1308 (2020) .................................................................................. 12

4

*Massimo v. Saul*,
5
   No. 19-16663, 2020 WL 3265172 (9th Cir. June 17, 2020) ......................... 3

*Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*,
6
   345 F. App'x. 244 (9th Cir. 2009) ................................................................ 3

7

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ................................................................................... 10

8

*Norsworthy v. Beard*,
   87 F. Supp. 3d 1164 (N.D. Cal. 2015) ...................................................... 14

9

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
10
   523 U.S. 726 (1998) ................................................................................... 10

*Padilla v. Immigration & Customs Enforcement*,
11
   953 F.3d 1134 (9th Cir. 2020) ..................................................................... 4

12

*R.V. v. Mnuchin*,
   No. 20-cv-1148, 2020 WL 3402300 (D. Md. June 19, 2020) ....................... 8, 10, 12

13

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) ....................................................................... 3

14

*Sweet v. DeVos*,
15
   No. 13-03674, 2019 WL 5595171 (N.D. Cal. Oct. 30, 2019) ....................... 3

16

*U.S. Army Corps of Engineers v. Hawkes Co., Inc.*,
   136 S. Ct. 1807 (2016) .............................................................................. 11

17

*U.S. v. Bormes*,
   568 U.S. 6 (2012) ...................................................................................... 11

18

*United States v. AbleTime, Inc.*,
   545 F.3d 824 (9th Cir. 2008) ....................................................................... 5

19

*United States v. Clintwood Elkhorn Mining Co.*,
20
   553 U.S. 1 (2008) ................................................................................... 13, 15

*United States v. Navajo Nation*,
21
   556 U.S. 287 (2009) ................................................................................... 12

22

*United States v. Trident Seafoods Corp.*,
   60 F.3d 556 (9th Cir. 1995) ......................................................................... 5

23

*United States v. White Mountain Apache Tribe*,
   537 U.S. 465 (2003) ................................................................................... 12

24

*Van v. LLR, Inc.*,
25
   962 F.3d 1161 (9th Cir. 2020) ..................................................................... 8

*Wise v. MAXIMUS Fed. Servs., Inc.*,
26
   445 F. Supp. 3d 170 (N.D. Cal. 2020) ......................................................... 3

**Statutes**
27

26 U.S.C. § 6428 ............................................................................................. 4

28

26 U.S.C. § 6428(a) .................................................................................... 6, 12

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3   26 U.S.C. § 6428(d) ............................................................................................... 6

4   26 U.S.C. § 6428(e)(1) ........................................................................................ 6, 7

5   26 U.S.C. § 6428(f)(1) ............................................................................................ 6

    26 U.S.C. § 6428(f)(2) ............................................................................................ 6

6   26 U.S.C. § 6428(f)(3)(A).............................................................................. passim

7   26 U.S.C. § 7422 ................................................................................................... 10

    26 U.S.C. § 7422(a) ........................................................................................ 10, 12

8   28 U.S.C. § 1346(a)(1) .......................................................................................... 10

9   28 U.S.C. § 1391(a)(1) .......................................................................................... 11

10  **Rules**

    Fed. R. Civ. P. 23(b)(2)............................................................................................ 3

11  **Treatises**

12  *Precertification Discovery,* Manual for Complex Litigation § 21.14 (4th ed.) ............................. 3

13  *When certification-related discovery is necessary*, 3 Newberg on Class Actions § 7:15 (5th ed.) 3

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLFS.' REPLY ISO MTN. CLASS CERT &
PRELIMINARY INJUNCTION
CASE NO. 4:20-CV-5309-PJH

1

I.    **INTRODUCTION**

2       Defendants' opposition confirms that they withheld economic assistance from Plaintiffs

3  and members of the proposed Class based solely on their status as incarcerated people.  Michael

4  Desmond, Chief Counsel for the Internal Revenue Service (IRS), submitted a declaration stating

5  that "individuals who were deemed to be incarcerated . . . as of April 30, 2020, were deemed not

6  to qualify for the advance payments" under the CARES Act.  Dkt. 44-1 ¶ 7.  Neither Mr.

7  Desmond nor Defendants attempt to provide any legal basis for that decision.

8       Significantly, Defendants appear to concede that the CARES Act does not exempt

9  incarcerated people from eligibility for economic relief.  Instead, Defendants assert that "there is

10  pending legislation that could specify *retroactively* that prisoners are not eligible for CARES Act

11  credits, although it is speculative as to what, if any [retroactive] legislation should pass."  Dkt. 44

12  at 18 (emphasis added).  Defendants also now assert that, despite past statements to the contrary,

13  they currently intend to allow tax credits under the CARES Act for incarcerated people who were

14  only incarcerated for a portion of the 2020 tax year.  This new position contradicts Defendants'

15  published guidance on CARES Act funding for incarcerated persons, is unenforceable if

16  Defendants change their position again before next year, and at best defers "emergency" funding

17  for many more months (while imposing unnecessary filing burdens) for a subset of the Class, still

18  denying benefits to Class members who will be incarcerated for all of 2020.

19       Unable to raise a defense on the merits, Defendants instead invoke a number of procedural

20  arguments to try to evade judicial review, but all are premised on the same misinterpretation of 26

21  U.S.C. § 6428.  To accept Defendants' interpretation of the statute (announced for the first time in

22  a legal brief), the Court would have to agree, contrary to all indications, that Congress did *not*

23  intend the CARES Act to provide immediate economic relief to millions of Americans, but rather,

24  only to provide them an opportunity to claim a tax credit in the distant future, when they file their

25  2020 tax returns in 2021.  Thus, according to the IRS, notwithstanding the explicit Congressional

26  mandate to issue economic payments to all eligible persons "as rapidly as possible," 26 U.S.C.

27  § 6428(f)(3)(A), and before the end of this year, the IRS has unbridled and unreviewable

28  discretion to decide to whom it will issue immediate economic payments, and which Americans it

1   will require to wait a year or more to receive any relief.  That is not the law Congress passed.

2   Defendants' merits arguments—related to whether the case is ripe, whether Plaintiffs have

3   standing, whether sovereign immunity is waived—all fail for this reason.

4   Defendants also argue that Plaintiffs and the proposed Class have not shown a likelihood

5   of irreparable harm.  But Defendants make no attempt to rebut or refute any of the evidence

6   submitted by Plaintiffs or proposed *Amici* showing that the funds are needed to enable proposed

7   Class members to purchase essential food, hygiene, and medical products, and to alleviate the

8   significant financial burden that the pandemic and Defendants' unlawful withholding of economic

9   assistance has had on families of incarcerated people.  Defendants also ignore the equities

10  favoring Plaintiffs given that Congress mandated issuing the economic incentive payments

11  promptly to *all* eligible persons, without excluding the incarcerated.

12  Finally, the Court should grant Plaintiffs' motion to certify a class, which Defendants

13  failed to oppose on the merits, regardless of its decision on preliminary relief.

14  **II.    ARGUMENT**

15  **A.    Class Certification Should Be Granted**

16  Defendants requested and were provided two additional weeks to brief class certification

17  issues.  Dkt. 29.  Rather than do so, they stated in a footnote that they "do[] not address Plaintiffs'

18  motion for class certification" but request they be allowed "further briefing on this and other

19  issues before a class is certified."  Dkt. 44 at 2, n.1.  Defendants cite no rule, law, or case that

20  allows them to unilaterally refuse to brief an issue in response to a properly-noticed motion at the

21  date and time they requested, as ordered by the Court.

22  In concern for the potential of further delay, Plaintiffs notified the Court immediately of

23  Defendants' failure to oppose class certification, asking the Court either to certify the class or

24  order Defendants to brief the issue in advance of the reply deadline.  Dkt. 45.  The following day,

25  Defendants responded, arguing that their opposition to class certification was "manifest" in their

26  response brief.  Dkt. 46.  However, the only reference to class certification in the brief is in

27  footnote 1, and in their subsequent filing, Defendants merely asserted for the first time that

28  certification was "premature," without explaining why, or what issues pertinent to class

1    certification could require further development.  *Id.*  Despite having four weeks to brief the issue,

2    Defendants cannot identify a single persuasive reason why a class should not be certified.  Indeed,

3    Defendants have "failed to develop any argument on [class certification], and thus have waived

4    [those arguments]."  *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011).[1]

5         Moreover, Defendants' cursory assertion that class certification is premature is

6    unsupported.  Defendants have not explained what issues require further factual development

7    under Rule 23.  There are none.  The claims here rise and fall principally on a purely legal

8    question of statutory interpretation: whether Defendants are authorized to withhold economic

9    stimulus payments from otherwise eligible people based solely on their incarcerated status.  No

10   discovery is needed to answer whether Rule 23's requirements for class treatment are satisfied, so

11   the motion is not premature.[2]  Indeed, courts in this district regularly decide class certification

12   motions in challenges to the lawfulness of a government policy or practice before discovery.[3]

13        In any case, Defendants' brief does not identify any reason to think that further discovery

14   may cast doubt on the propriety of class certification.  They do not dispute that Rule 23(a)'s

15   requirements for numerosity, typicality, adequacy, and commonality are satisfied.  *See* Dkt. 8 at

16   20-22.  Further, Defendants now confirm that they have "acted or refused to act on grounds that

17   apply generally to the class," Fed. R. Civ. P. 23(b)(2), explaining that "individuals who were

---

[1]  *See also Massimo v. Saul*, No. 19-16663, 2020 WL 3265172 (9th Cir. June 17, 2020) ("a cursory argument without substantive analysis" is waived); *Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*, 345 F. App'x. 244, 247-48 (9th Cir. 2009) ("cursory argument" is waived where party "failed to adequately brief the issue"); *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (failure to raise argument in opposition waives it); *Wise v. MAXIMUS Fed. Servs., Inc.*, 445 F. Supp. 3d 170, 199 (N.D. Cal. 2020) (same); *City of Arcadia v. U.S. Env'tl Protection Agency*, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003) (waiver for no response).

[2]  *See Precertification Discovery,* Manual for Complex Litigation § 21.14 (4th ed.) ("Discovery may not be necessary when claims for relief rest on readily available and undisputed facts or raise only issues of law (such as a challenge to the legality of a statute or regulation)."); *When certification-related discovery is necessary*, 3 Newberg on Class Actions § 7:15 (5th ed.) (same).

[3]  *See, e.g.*, *J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019) (granting motion for class certification before discovery in case challenging lawfulness of DHS rule); *Sweet v. DeVos*, No. 13-03674, 2019 WL 5595171 (N.D. Cal. Oct. 30, 2019) (same re: student borrowers' challenge to Department of Education policy); *Jiahao Kuang v. U.S. Dep't of Defense*, 340 F. Supp. 3d 873 (N.D. Cal. 2019) (same re: challenge by legal permanent residents to DoD policy), *vacated and remanded on other grounds*, 778 F. App'x 418 (9th Cir. 2019); *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, 277 F.R.D. 572 (N.D. Cal. 2011) (granting motion for class certification filed two days after complaint and before discovery in case challenging constitutionality of agency practice).

PLFS.' REPLY ISO MTN. CLASS CERT &
PRELIMINARY INJUNCTION
CASE NO. 4:20-CV-5309-PJH

1  deemed to be incarcerated . . . as of April 30, 2020, were deemed not to qualify for the advance

2  payments [under the CARES Act]."  Dkt. 44-1 ¶ 7.  Certification under Rule 23(b)(2) is thus

3  proper.  *See* Dkt. 8 at 22-23.  Finally, if the Court deems that Rule 23(b)(3) certification is also

4  necessary here to effectuate the relief requested, Rule 23(b)(3) is likewise satisfied because

5  Defendants have not identified individualized questions that would frustrate predominance or

6  manageability.  *Id*. at 23.  Plaintiffs' motion for class certification—which is not contingent on

7  obtaining preliminary relief—should be granted at this time.

8  **B.**  **Plaintiffs Have Satisfied the Standard for Preliminary Injunction**[4]

9  Defendants do not argue that the CARES Act, 26 U.S.C. § 6428, excludes incarcerated

10  people from eligibility for pandemic-related economic relief.  To the contrary, Defendants

11  represent that, absent "retroactive amendment of the statute, the IRS currently plans to allow the

12  CARES Act tax credit claimed on 2020 returns by otherwise eligible individuals who were only

13  incarcerated for a portion of tax year 2020."  Dkt. 44-1 ¶ 8.  Although even this position is

14  unsupported by the statute (which does not condition eligibility on incarceration at all, let alone

15  on the length of incarceration during 2020), Defendants' concession is significant and confirms

16  Plaintiffs' argument that incarcerated people do, in fact, qualify for economic assistance.

17  Instead of defending their exclusion of incarcerated people, Defendants construct a

18  wholly unsupported and irrelevant distinction under the statute between "advanced refunds" and

19  tax "credits."  Defendants argue that no person has a right to an "advanced refund" under the

20  statute, that Defendants' refusal to issue any person an "advanced refund" is unreviewable, and

21  that no one denied a refund has suffered a legal injury because that decision is not final and no

22  injury actually occurs unless and until a "credit" is also eventually denied in 2021.  This bold

23  argument requires the Court to accept that Congress did not pass the CARES Act to provide cash

24  assistance to Americans *now* and *during* the pandemic (contrary to every indication in the statute,

25  from legislators, from the President, and from Defendants themselves, *see* Dkt. 8 at 11), but rather

---

26  [4]  Though Defendants repeatedly characterize the relief requested as a "nationwide injunction,"
Plaintiffs actually request a class-wide injunction.  *See Padilla v. Immigration & Customs*
27  *Enforcement*, 953 F.3d 1134, 1151 (9th Cir. 2020) (affirming class-wide preliminary injunction
because "when . . . a district court has already certified a nationwide class, the concerns
28  associated with broad injunctions are minimized").

2038694.1

1    Congress intended only to provide a future opportunity (a year after passage) to claim a credit

2    when 2020 tax returns are filed.  Moreover, this argument, if accepted, would apply not just to

3    Plaintiffs and the proposed Class, but to all people from whom advanced payments have been

4    withheld for any reason.  It would mean that Congress intended the IRS to have absolute,

5    unbridled, and unreviewable discretion to pick and choose which Americans will receive an

6    advanced refund that could provide immediate assistance during the pandemic, and which shall

7    be required to wait until next year to receive a benefit of any kind.

8            That is not the law Congress passed.  Defendants' interpretation of the statute should be

9    rejected because it contradicts the statute's purpose as reflected in the statutory text and structure

10   and confirmed by the legislative history: to provide economic assistance "as rapidly as possible."

11   26 U.S.C. § 6428(f)(3)(A).  Because Defendants' interpretation is incorrect, their arguments

12   regarding standing and sovereign immunity are also wrong, as explained below.

13           **1.     Defendants' Statutory Interpretation Contradicts the Statute's Text,
                     Structure, and Purpose, as well as the Legislative History**

14

15           As a threshold matter, Defendants do not claim that the interpretation they advance in

16   their motion is entitled to special deference under the *Chevron* or *Skidmore* doctrines, conceding

17   Plaintiffs were correct that they are not at issue.  *See* Dkt. 8 at 15.  Their interpretation is thus

18   nothing more than "a litigation position" to which no deference is owed.  *United States v.*

19   *AbleTime, Inc.*, 545 F.3d 824, 836 (9th Cir. 2008).[5]  Accordingly the Court must interpret the

20   statute afresh using the traditional tools of statutory interpretation: "an examination of the plain

21   language of the statute, its structure, and purpose," and, if the meaning remains unclear, then also

22   by looking to "extrinsic indicators, such as legislative history."  *Hernandez v. Williams, Zinman*

23   *& Parham PC*, 829 F.3d 1068, 1073 (9th Cir. 2016).

24           Statutory Text.  As the titles of subsection (f)(3) ("Timing and manner of *payments*") and

25   subsection (f)(3)(B) ("Delivery of *payments*") make clear, Section 6428 is primarily concerned

26   
_____

27   [5]  *See also Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008) ("litigation
     positions unmoored from any official agency interpretations" are not entitled to deference);
     *United States v. Trident Seafoods Corp.*, 60 F.3d 556, 559 (9th Cir. 1995) ("[n]o deference is

28   owed when an agency . . . is merely advancing a litigation position").

1    with providing "payments" to eligible individuals.  The term "payment" is used synonymously

2    with the terms "advanced refund" and "credit."  The distinction is purely technical: a "credit" is

3    what is claimed on a tax return, a "refund" is provided to a tax payer if the credit is valid, and an

4    "advanced refund" is simply provided before a tax return claiming a credit is filed.  The

5    underlying eligibility criteria for both, however, is identical, as one receives a "refund" only

6    based on a "credit."  *See* 26 U.S.C. § 6428(f)(2) ("the advance refund amount is the amount that

7    would have been allowed as a credit"); *id.* § 6428(d) (definition of "eligible individual").

8    Defendants do not cite any basis in the statute for the notion that the eligibility criteria for

9    "advanced refunds" are distinct from those for "credits."  Thus, by acknowledging that at least

10   some incarcerated people are eligible for a Section 6428 *credit* on tax returns in 2021, *see* Dkt.

11   44-1 ¶ 7, they necessarily admit they are also eligible for an *advanced refund* under the statute.  In

12   fact, eligible individuals qualify for the advance refund even if they will be incarcerated for the

13   full 2020 tax year because the statute does not exclude them, either.

14        Statutory Structure.  Everything about Section 6428's structure indicates that it is

15   principally concerned with rapid provision of "advanced refunds" *this* year, not tax credits *next*

16   year.  Indeed, at the outset, it creates a new tax credit for tax year 2020 (26 U.S.C. § 6428(a)),

17   instructs the IRS to *pretend* that eligible taxpayers made an overpayment equal to the newly-

18   created credit beginning in tax year 2019 (*id.* § 6428(f)(1)), and then defines "advance refund

19   amount" as a sum equal to the fictional overpayment created by the statute (*id.* § 6428(f)(2)).  The

20   structure confirms that the statute's principal focus is to get economic assistance payments out to

21   Americans "as rapidly as possible."  26 U.S.C. § 6428(f)(3)(A).  Contrary to Defendants'

22   suggestion that the statute contemplates that entitlements will only be determined upon filing and

23   review of a 2020 tax return, the statute actually indicates the opposite: advanced refunds come

24   first, and then any necessary adjustments to the credit on a tax return are made later.  26 U.S.C.

25   § 6428(e)(1).  This provision merely prevents double dipping and provides for reconciliation of

26   entitlement amounts based on interim changes of circumstance; it does not suggest that Congress'

27   focus was simply to create a future tax benefit instead of immediate cash assistance.  Indeed, this

28   is supported by Congress's express guarantee that anybody who receives an advanced refund will

PLFS.' REPLY ISO MTN. CLASS CERT &
PRELIMINARY INJUNCTION
CASE NO. 4:20-CV-5309-PJH

1    not be required to return any money if their eligibility changes between the present and when

2    2020 tax returns are filed (due to, *e.g.*, a change in the number of qualifying children, income, or

3    marital status).  *See* 26 U.S.C. § 6428(e)(1) (amount of credit allowable on 2020 tax returns will

4    be reduced by the amount of any advanced refund provided, "but not below zero").

5            <u>Statutory Purpose</u>.  There is no credible argument that Congress intended Section 6428 to

6    do anything other than provide economic assistance to eligible individuals "as rapidly as

7    possible."  26 U.S.C. § 6428(f)(3)(A).  Defendants agree: "[t]hat the purpose of the CARES Act

8    was to provide economic assistance to counter the economic harm caused by the COVID-19

9    pandemic is supported by numerous statements."  Dkt. 44-1 at 2, n.2 (citing legislative history);

10   Dkt. 8 at 11 (same).  In short, Defendants' framing of the CARES Act as being something other

11   than an economic stimulus package intended for rapid distribution should be rejected.

12           <u>Fraud Concerns</u>.  Defendants seem to suggest that concerns about possible tax refund

13   fraud contributed to their decision to withhold stimulus payments from over 1.5 million

14   incarcerated people.  Dkt. 44-1 ¶¶ 5, 7.  This explanation does not make sense.  *First*, with respect

15   to people who can receive automatic payments based on information in their 2018 or 2019 tax

16   returns, the IRS has already identified 6,799 *confirmed* cases of fraud, Dkt. 44-1 ¶ 6, and 17,877

17   "potentially" fraudulent cases.[6]  The IRS does not explain why it could not have vindicated its

18   interest in preventing erroneous disbursement of payments by delaying or excluding the few

19   returns (less than 1.6% of class members) it suspects may have included fraudulent information,

20   rather than punishing over 1.5 million other people who are not subject to those concerns and

21   need aid.  *Second*, the IRS's explanation has no applicability to "non-filing" incarcerated people,

22   who did not file any tax return in 2018 or 2019 (and thus there is no risk of a distribution based on

23   false information in those returns), and who need to submit a claim through the IRS's online

24   portal.  Moreover, the most relevant potential for fraud is whether an individual earned *too much*

25   _____

26   [6]  The IRS has only identified 6,799 cases of confirmed fraud in 2018 (less than 0.5% of class members), and another report states the IRS has already isolated 17,877 cases in 2020 where it does not know if any misrepresentation occurred but is undertaking further investigation.  *See*

27   Dkt. 44-1 ¶ 6 and Treasury Inspector General for Tax Administration, *Interim Results of the 2020 Filing Season*, No. 2020-45-024 at 12 (Apr. 7, 2020), https://www.treasury.gov/tigta/auditreports/

28   2020reports/202045024fr.pdf (Supp. Salahi Decl., Ex. 45).

2038694.1

1    to qualify, and it defies common sense to assume that incarcerated people, among the lowest

2    earners, are somehow likely to be too rich to qualify.  Even if the IRS's proffered explanation is

3    credited, it is arbitrary and capricious insofar as it categorically punishes over 98% of class

4    members who the IRS has *not* flagged as being associated with possible tax refund fraud.  *Cf.*

5    *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1276-77 (9th Cir. 2020) (categorical

6    disqualification of unauthorized border crossers from asylum arbitrary and capricious).

### 2.    Plaintiffs' Claims Are Ripe for Review

8            Three courts have considered and rejected Defendants' argument that people who have

9    not received advanced refunds under the CARES Act do not have ripe claims until they file their

10   2020 tax returns in 2021 and are denied a tax credit.  *See Amador v. Mnuchin*, No. ELH-20-1102,

11   2020 WL 4547950, at *11 (D. Md. Aug. 5, 2020) (non-receipt of stimulus payments was

12   "pocketbook injury[,]the textbook example of injury in fact"); *R.V. v. Mnuchin*, No. 20-cv-1148,

13   2020 WL 3402300, at *2-5 (D. Md. June 19, 2020) (same); *Doe v. Trump*, 8:20-cv-00858-SVW-

14   JEM, 2020 WL 5076999, at *3-4 (C.D. Cal. July 8, 2020) (same).  The Court should join them.

15           The ripeness inquiry "contains a constitutional and a prudential component."  *Bishop*

16   *Paiute Tribe v. Inyo Cty*., 863 F.3d 1144, 1153 (9th Cir. 2017).  Both are satisfied here.

17           <u>Constitutional Ripeness and Article III Injury</u>:  Here, Plaintiffs' loss of their legally

18   protected interest in an advanced refund for which they are eligible under the statute is a concrete

19   financial injury that has already occurred.  *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983

20   (2017) ("[A] loss of even a small amount of money is ordinarily an 'injury.'"); *Bishop Paiute*,

21   863 F.3d at 1153 (constitutional ripeness "often treated under the rubric of standing because

22   'ripeness coincides squarely with standing's injury in fact prong'").  Plaintiffs do not need to wait

23   until they are *also* denied a tax credit in 2021 based on their 2020 tax returns, because even the

24   "temporary deprivation" of money gives rise to article III standing.  *Van v. LLR, Inc.*, 962 F.3d

25   1161 (9th Cir. 2020) ("The inability to have and use money to which a party is entitled is a

26   concrete injury" because "[e]very day that a sum of money is wrongfully withheld, its rightful

27   owner loses the time value of the money." (citations and quotations omitted)).  Even if the Court

28   concludes injury will accrue only upon denial of a tax credit in 2021, that injury would still be

PLFS.' REPLY ISO MTN. CLASS CERT &
PRELIMINARY INJUNCTION
CASE NO. 4:20-CV-5309-PJH

1    concrete and imminent, as Defendants confirm they will not extend the credit to people like

2    Plaintiff Scholl, who will be incarcerated for the entirety of 2020.  Dkt. 44-1 ¶ 8; Scholl Decl. ¶ 3.

3    *See In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (court could review whether debtor

4    would eventually qualify for "undue hardship" exception to discharge student loans before

5    conditions to obtain discharge were actually met).[7]

6         <u>Prudential Ripeness</u>:  "The Supreme Court has developed a two-part test for determining

7    the prudential component of ripeness in the administrative context: the fitness of the issues for

8    judicial decision' and 'the hardship to the parties of withholding court consideration.'"  *In re*

9    *Coleman*, 560 F.3d at 1006 (citation omitted).  An issue is "fit" for consideration if it involves

10   "'pure legal questions that require little factual development'" or if further factual development

11   "would do little to aid the court's decision."  *Id*. at 1009.  That is the case here: Defendants

12   confirm that Plaintiffs and members of the proposed Class were "deemed not to qualify for the

13   advance payments."  Dkt. 44-1 ¶ 7.  No further factual development is needed for the Court to

14   review that determination.  Further, the hardship to Plaintiffs and the proposed Class is evident:

15   the CARES Act payments were intended to provide immediate relief during the pandemic, so

16   delaying consideration until some indefinite point in 2021 would defeat the Act's purpose.

17        <u>Final Agency Action</u>:  Defendants also attack ripeness on the basis that "the IRS's

18   response to FAQ 14" is not "final agency action" under the APA.  Dkt. 44 at 10.  But Plaintiffs do

19   not challenge the publication of an FAQ, they challenge "Defendants' policy of withholding EIP

20   benefits from incarcerated persons based solely on their status as incarcerated people . . . ."

21   Compl. ¶ 45; *id.* ¶ 47 ("Defendants' refusal to issue EIP benefits to incarcerated persons reflects

22   Defendants' final, considered position . . . .").  Defendants acknowledge they have such a policy,

23   and they have made no suggestion their policy is tentative.  Dkt. 44-1 ¶ 7.  Defendants ignore the

24   cases cited by Plaintiffs on this topic, Dkt. 8 at 13-14, and the cases Defendants cite are

25   _____

26   [7]  The out-of-circuit case cited by Defendants is irrelevant because the IRS has already made its
     position clear here, and Plaintiffs seek an improperly withheld benefit, not damages based on a
     speculative, future tax assessment.  *Coon v. Wood*, 160 F. Supp. 3d 246, 251-52 (D.D.C. 2016)

27   (pro se plaintiff suing real estate agents for misrepresenting potential tax consequences of
     property sale did not suffer injury-in-fact where he never paid the taxes in question and his injury

28   would only occur if the IRS audited him and determined he owed taxes).

1   inapposite because they involved situations where the defendant's action had no effect on any

2   person, or it was unclear whether any wrongful act had or would ever be taken.[8]  Here, in

3   contrast, Plaintiffs and the proposed Class have already been denied the stimulus payments based

4   on Defendants' final determination regarding their eligibility.  Dkt. 44-1 ¶ 7.

5                           **3.       Sovereign Immunity Is Waived by the APA**

6           Defendants argue that no relief is available under the APA because Plaintiffs and

7   proposed Class members have an "adequate alternative remedy" through tax refund actions

8   pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422.  Dkt. 44 at 14-15.  As Defendants

9   acknowledge, this argument has already been rejected by other courts hearing CARES Act

10  stimulus payment-related challenges.[9]  There is good reason for that.

11          On its face, Section 7422(a) permits plaintiffs to file refund suits "for the recovery of any

12  internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any

13  penalty claimed to have been collected without authority, or of any sum alleged to have been

14  excessive in any manner wrongfully collected . . . ."  26 U.S.C. § 7422(a).  Here, however,

15  Plaintiffs do not allege that the IRS has wrongly assessed or collected any sums from them or

16  imposed any penalties on them.  Rather, the IRS has wrongfully denied a cash benefit to Plaintiffs

17  and the proposed Class based on an erroneous interpretation of the CARES Act.  "[T]he

18  mismatch between the plain language of § 7422 and the nature of plaintiffs' suit does not support

19  the finding that Congress intended § 7422 to replace the APA."  *Amador*, 2020 WL 4547950, at

20
_____

[8]  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 809 (2003) (agency's
interpretation of law it did not enforce or implement was "nothing more than a 'general
statement[t] of policy'" which "does not create 'adverse effects of a strictly legal kind'"); *Ohio
Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (forestry plan did not "grant,
withhold, or modify any formal legal license, power, or authority," nor "give anyone a legal right
to cut trees, nor . . . abolish anyone's legal authority to object to trees being cut"); *Clinton v.
Acequia, Inc.*, 94 F.3d 568 (9th Cir. 1996) (where obligation did not arise under contract until a
future date and there was no indication promisor would refuse, dispute was not ripe).
[9]  *Amador*, 2020 WL 4547950, at *7-10 (Section 7422 not adequate alternative remedy to APA re:
challenge to Section 6428's denial of stimulus payments to spouses of undocumented
immigrants); *Doe*, 2020 WL 5076999, at *5-6 (challenge "seek[s] a benefit that has been denied
[based on] unconstitutionally unequal treatment, rather than a refund of a tax," and "do[es] not
implicate the Government's 'exceedingly strong interest' in the orderly collection of revenue,
because no revenue is being collected by the CARES Act"); *cf. R.V.*, 2020 WL 3402300, at *5
(rejecting argument that Section 7422 was exclusive way to challenge withholding of CARES Act
benefits from U.S.-citizen children with an undocumented parent).

PLFS.' REPLY ISO MTN. CLASS CERT &
PRELIMINARY INJUNCTION
CASE NO. 4:20-CV-5309-PJH

1   *9.  *See also King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014), *aff'd*, 576 U.S. 473 (2015)

2   (distinguishing "typical tax refund action in which an individual taxpayer complains of the

3   manner in which a tax was assessed or collected and seeks reimbursement for wrongly paid

4   sums" from challenge to "the legality of a final agency action").

5         Further, Plaintiffs ask for prospective relief in the form of a declaration of their rights

6   under the CARES Act and requiring the government to apply the correct interpretation of the Act.

7   Section 7422(a), on the other hand, "does not allow for prospective relief," so it is clear that it

8   "would not afford the plaintiffs the complete relief they seek."  *King*, 759 F.3d at 367.

9         Finally, even assuming arguendo that Section 7422(a) might theoretically be capable of

10  providing an adequate alternative to an APA action in some circumstances, here it does not.

11  Requiring Plaintiffs and the proposed Class to first file a 2020 tax return, await the IRS's

12  adjudication, file an administrative claim challenging that adjudication, and then file a lawsuit at

13  some indefinite point far in the future would not only be contrary to Congress's express goal of

14  providing economic relief to Plaintiffs "as rapidly as possible," 26 U.S.C. 6428(f)(3)(A), but

15  would also be a lengthy exercise in futility.  Defendants already make clear that they do not

16  intend to provide relief to people like Plaintiff Scholl and the majority of class members, who will

17  be incarcerated for the entirety of 2020, and there is no guarantee they will deliver on their

18  current intentions with respect to Plaintiff Strawn in 2021.  Dkt. 44-1 ¶ 8.[10]

19                    **4.      Sovereign Immunity Is Also Waived by the Little Tucker Act**

20         Plaintiffs' motion for preliminary injunction is not based on their Little Tucker Act claim,

21  so the Court need not reach the issue now.  But if it does, it should conclude that the government

22  has waived sovereign immunity for the instant suit.  The Little Tucker Act permits "claim[s]

23  against the United States . . . founded . . . upon . . . any Act of Congress," 28 U.S.C. § 1391(a)(1),

24  and waives sovereign immunity for such cases.  *U.S. v. Bormes*, 568 U.S. 6, 15 (2012).  To

25  determine whether a statutory claim falls within the scope of the Little Tucker Act's sovereign

26  _____

27  [10]  *See U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1815 (2016)
    (requiring landowner "to apply for a permit and then seek judicial review in the event of an
    unfavorable decision" was inadequate alternative to APA because it would be "arduous,

28  expensive, and long," and would not "alter the finality of" decisions already made by the agency).

1   immunity waiver, courts ask whether the underlying statute includes a "so-called money-

2   mandating provision[]." *Maine Community Heath Options v. United States*, 140 S.Ct. 1308, 1328

3   (2020).  A statute qualifies "if, but only if, it can fairly be interpreted as mandating compensation

4   by the Federal Government for the damage sustained."  *Id*. (quotation omitted); *see United States*

5   *v. Navajo Nation*, 556 U.S. 287, 290 (2009); *United States v. White Mountain Apache Tribe*, 537

6   U.S. 465, 472 (2003).  This rule applies except "when the obligation-creating statute provides its

7   own detailed remedies"—specifically, "its own judicial remedies"—and "when the

8   Administrative Procedure Act, 60 Stat. 237, provides an avenue for relief."  *Id*. at 1328, 1329-30.

9          *Maine Community* confirms that the CARES Act is a money-mandating statute.  There,

10   the Supreme Court held that § 1342 of the Affordable Care Act, was a money-mandating statute

11   and that petitioners could sue the Government for damages.  140 S. Ct. at 1315.  In reaching this

12   conclusion, the Supreme Court found "[s]tatutory 'shall pay' language often reflects

13   congressional intent 'to create both a right and a remedy' under the Tucker Act."  *Id*. at 1329.

14          The same is true here.  "The CARES Act contains compulsory language for economic

15   impact payments similar to the language in § 1342 of the ACA discussed in *Maine Community*."

16   *R.V.*, 2020 WL 3402300, *7.  The Act states certain persons are deemed to have made a fictional

17   overpayment to the IRS, that "there *shall* be allowed a credit" of $1,200 for eligible individuals

18   and $500 for qualifying children for this overpayment, and that "[t]he Secretary *shall*, subject to

19   the provisions of this title, refund or credit any overpayment attributable to this section as rapidly

20   as possible."  26 U.S. Code §§ 6428(a), (f)(3)(a) (emphasis added).  Accordingly, 26 U.S. Code §

21   6428 is a money-mandating statute.

22          The Government further contends that even if Section 6428 qualifies as a money-

23   mandating provision, the Little Tucker Act does not apply because Section 6428 contains its

24   "own self-executing remedial scheme" under 26 U.S.C. § 7422(a).  Dkt. 44 at 13.  But for the

25   same reasons above, *see* Section II.B.3, *supra*, Section 7422(a) does not apply because the

26   economic impact payments were not a tax "erroneously or illegally assessed or collected" or a

27   sum that was "excessive" or "wrongfully collected."  26 U.S.C. § 7422(a).  *See also Doe*, 2020

28   WL 5076999, *5; *R.V.*, 2020 WL 3402300 at *7.  The case cited by the Government is inapposite.

1   *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4-5 (2008), concerned a refund of

2   federal taxes unlawfully levied on shipments of coal for export, not the sort of emergency relief

3   payment contemplated by the CARES Act.  The Court has subject matter jurisdiction.

4          **C.**      **Plaintiffs and the Proposed Class Are Suffering Irreparable Harm**

5         Plaintiffs explained that the withholding of emergency financial assistance from them and

6   the proposed Class has caused them and their families and friends who support them irreparable

7   harm, including through loss of essential money needed to maintain communications between

8   loved ones, purchase basic necessities (*e.g.*, hygiene products, food, and clothing), and  prepare

9   for life in a devastated economy upon release.  *See* Strawn Decl. ¶¶ 5-8 (Dkt. 14); Scholl Decl. ¶¶

10  3-6 (Dkt. 13); Johnson Decl. ¶¶ 3-5 (Dkt. 15); Cowan Decl. ¶¶ 4-6 (Dkt. 16); Boudin Decl. ¶¶ 3-7

11  (Dkt. 17).  *See also* Dkt. 40-1 (proposed amicus brief re: irreparable harm).

12        The Government's arguments to the contrary are unpersuasive.  First, the Government

13  attempts to distinguish the Ninth Circuit authority for using the abrogated "possibility" standard

14  for irreparable harm rather than the "likelihood" standard.  Dkt. 44 at 15.  However, Plaintiffs rely

15  upon those cases for the proposition that loss of financial aid in some circumstances causes

16  irreparable harm, not the "possibility" standard.  *See* Dkt. 8 at 16.  Further, the Government's

17  contention that it has not withheld anything from Plaintiffs because "the CARES Act does not

18  establish any right to receive an immediate advance," Dkt. 44 at 15-16, is contradicted by the

19  plain language of the statute itself, which provides that the Government *shall* issue the economic

20  impact payment "as rapidly as possible."  26 U.S. Code § 6428 (f)(3)(a).  The Government does

21  not dispute that Plaintiffs have not received this emergency payment due to incarcerated status.

22        Second, the Government argues withholding of a CARES Act payment "does not equate

23  to irreparable harm."  Dkt. 44 at 16.  But this case is not just about money.  The Government

24  ignores Plaintiffs' argument regarding the emotional harm to both the incarcerated individuals

25  and their families caused by being unable to stay in contact due to the expense of communication

26  and interruption of normal sources of financial support by the pandemic.  *See* Dkt. 8 at 18

27  ("timely assistance is critical to maintaining their physical and emotional health by

28  communicating with loved ones") (citing Scholl Decl. ¶¶ 3-6 (Dkt. 13); Johnson Decl. ¶¶ 3-5

1   (Dkt. 15); Cowan Decl. ¶¶ 4-6 (Dkt. 16); Boudin Decl. ¶¶ 3-7 (Dkt. 17); Dkt. 40-1 (proposed

2   amicus)).  Communication between incarcerated people and their loved ones is essential to

3   maintaining emotional well-being and relationships, and to avoid severe emotional distress such

4   as anxiety and depression caused by break down of family relationships.[11]  Lack of

5   communication with an incarcerated loved one also has a negative emotional impact upon the

6   incarcerated individual's family, especially since the worst COVID19 outbreaks have been

7   concentrated in prisons and fear and concern about the virus is high.  Under these circumstances,

8   failure to receive a timely cash benefit is not simply an economic injury that "could be remedied

9   by a damage award" down the line.  *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1192 (N.D. Cal.

10  2015), appeal dismissed and remanded, 802 F.3d 1090 (9th Cir. 2015) ("Emotional distress,

11  anxiety, depression, and other psychological problems can constitute irreparable injury.").

12        Last, the Government argues that *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)

13  is inapposite by comparing the harm the *Hernandez* families experienced with the harm the

14  families are experiencing in this case.  Dkt. 44 at 17.  The Court need not engage in such an

15  exercise.  It should simply consider whether the fear and anxiety of not being able to

16  communicate with a family member incarcerated in a prison with a disproportionately high rate of

17  the deadly COVID19 virus should factor into the preliminary injunction calculus.  As Plaintiffs

18  explained in their motion, most prisons have eliminated or severely curtailed in-person visitation

19  and therefore exorbitantly-priced phone calls—a challenge to people already struggling—are now

20  the primary way that incarcerated people can stay in timely communication with loved ones on

21  the outside.[12]  *Hernandez* allows the Court to consider the impact of Defendants' acts on families.

22  A preliminary injunction will prevent irreparable harm to Plaintiffs, the Class, and their families.

23        **D.**    **The Balance of the Equities and Public Interest Support an Injunction**

24        The Government's main contention is that "[p]reserving the IRS' ability to efficiently

---

25  [11]  *See*, *e.g.*, Dkt. 8 at 7 (citing Ex. 21 (recommending "[a] clear and consistent emphasis on . . .
26  supporting contact with the outside world . . . both to minimize the division between the norms of
    prison and those of the free world, and to discourage dysfunctional social withdrawal that is
27  difficult to reverse upon release").

    [12]  Dkt. 8 at 6-7; Ex. 11 ($3,586 in charges for phone calls with incarcerated loved one and $419
28  for emails); Ex. 19 (in California, fifteen minute call costs range from $5.70 to $17.80).

PLFS.' REPLY ISO MTN. CLASS CERT &
PRELIMINARY INJUNCTION
CASE NO. 4:20-CV-5309-PJH

1   allocate its resources to continue to administer the advance refund payments of the CARES Act

2   credit and issue those payments as rapidly as possible serves the public interest."  Dkt. 44 at 18.

3   Yet Defendants have not explained why issuing economic impact payments to incarcerated

4   individuals would lead to fiscal inefficiency.  That is not Defendants' judgment to make:

5   Congress already rendered a judgment about how to spend the government's fiscal resources

6   during the pandemic, which Defendants have no authority to override.  Defendants' cases are

7   inapposite.[13]  The Government further argues that pending legislation might change the law by

8   rending incarcerated people ineligible retroactively, but admits "it is speculative as to what, if any

9   legislation should pass."  Dkt. 44 at 18.  The Court should dismiss such theoretical and

10  conclusory assertions as "neither persuasive nor supported by any actual evidence."  *Hernandez*,

11  872 F.3d at 995.  The balance of equities and public interest favor an injunction.

### E.   Alternatively, the Court Should Convert This Motion to a Summary Judgment Motion and Set An Expedited Case Schedule

If the Court concludes that a preliminary injunction should not issue either because

Plaintiffs have not demonstrated a likelihood of irreparable harm or because the balance of the

equities and public interest do not support preliminary relief, then the Court should convert

Plaintiffs' motion to a request for summary judgment and set an expedited case schedule to

facilitate a final adjudication on the merits, including ordering Defendants to file a certified

administrative record (or certify that none exists) within 14 days, and providing both parties with

a reasonable opportunity to submit supplemental briefing on any merits issues the Court deems

are not adequately addressed by the briefing on this motion.[14]

### III.   CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court grant their motion.

---

[13]  *See Brock v. Pierce County*, 476 U.S. 253, 255 (1986) (whether Secretary of Labor could recover misused funds after complaint deadline expires); *Clintwood*, 553 U.S. at 4 (discussing "whether a taxpayer suing for a refund of taxes collected in violation of the Export Clause . . . may proceed under the Tucker Act"); *Hernandez*, 872 F.3d at 996 (affirming injunction).

[14]  *See Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1397 n.4 (9th Cir. 1990) (court may "convert a decision on a preliminary injunction into a final disposition of the merits"); *Glacier Park Foundation v. Watt*, 663 F.2d 882, 886 (9th Cir. 1981) (district courts may consolidate decision on preliminary injunction with "final adjudication on the merits" "sua sponte so long as the procedures do not result in prejudice to either party").

2038694.1

Dated: September 8, 2020                    Respectfully submitted,


By:  /s/ Kelly M. Dermody
                                                 Kelly M. Dermody

Kelly M. Dermody (SBN 171716)
Yaman Salahi (SBN 288752)
Jallé Dafa (SBN 290637)
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008
kdermody@lchb.com
ysalahi@lchb.com
jdafa@lchb.com

Eva Paterson (SBN 67081)
Mona Tawatao (SBN 128779)
Christina Alvernaz (SBN 329768)
EQUAL JUSTICE SOCIETY
1939 Harrison St., Suite 818
Oakland, CA  94612
Telephone: 415-288-8703
Facsimile:  510-338-3030
epaterson@equaljusticesociety.org
mtawatao@equaljusticesociety.org
calvernaz@equaljusticesociety.org

Lisa Holder (SBN 212628)
Law Offices of LISA HOLDER
Equal Justice Society, Of Counsel
P.O. Box 65694
Los Angeles, CA 90065
Telephone: 323-683-6610
lisaholder@yahoo.com

*Attorneys for Plaintiffs and the Proposed Class*

1

### <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on September 8, 2020, I caused the foregoing to be electronically

3  filed and served with the Clerk of the Court using the CM/ECF system to all parties of record.

4

5                                              */s/  Kelly M. Dermody*
                                                Kelly M. Dermody

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -