Kelly M. Dermody (SBN 171716)
Yaman Salahi (SBN 288752)
Jallé Dafa (SBN 290637)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008
kdermody@lchb.com
ysalahi@lchb.com
jdafa@lchb.com

Eva Paterson (SBN 67081)
Mona Tawatao (SBN 128779)
Christina Alvernaz (SBN 329768)
EQUAL JUSTICE SOCIETY
1939 Harrison St., Suite 818
Oakland, CA  94612
Telephone: 415-288-8703
Facsimile:  510-338-3030
epaterson@equaljusticesociety.org
mtawatao@equaljusticesociety.org
calvernaz@equaljusticesociety.org

[Additional counsel listed on signature page]

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| COLIN SCHOLL and LISA STRAWN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN MNUCHIN, in his official capacity as the Secretary of the U.S. Department of Treasury; CHARLES RETTIG, in his official capacity as U.S. Commissioner of Internal Revenue; U.S. DEPARTMENT OF THE TREASURY; the U.S. INTERNAL REVENUE SERVICE; and, the UNITED STATES OF AMERICA.<br><br>Defendants. | Case No.  4:20-cv-5309-PJH<br><br>**PLAINTIFFS' OPPOSITION TO EMERGENCY MOTION FOR STAY OF PRELIMINARY INJUNCTION PENDING APPEAL** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1
II. LEGAL STANDARD .......................................................................................................... 3
III. ARGUMENT ....................................................................................................................... 3
    A. The Only Parties Likely to Face Irreparable Harm Are the Plaintiffs ..................... 4
    B. It Remains True that Plaintiffs—Not Defendants—Are Likely to Prevail on the Merits ..................................................................................................................... 6
        1. This Court Correctly Read and Applied Section 6428 ................................ 7
        2. Defendants' Withholding of Stimulus Payments Is Reviewable and Unlawful Under the Administrative Procedure Act ................................. 10
    C. A Stay Would Substantially Injure Not Only Incarcerated People, but Also Their Families and Communities ............................................................................ 10
    D. Issuance of Stimulus Payments to All Eligible Individuals—Including Plaintiffs—Remains in the Public Interest ............................................................. 11
IV. CONCLUSION .................................................................................................................. 13

1

# TABLE OF AUTHORITIES

Page

**Cases**

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) .................................................................................. 4, 5, 12

*Amador v. Mnuchin*,
No. ELH-20-1102, 2020 WL 4547950 (D. Md. Aug. 5, 2020) ...................................... 8

*Amador v. Mnuchin*,
No. ELH-20-1102, 2020 WL 5849476 (D. Md. Oct. 1, 2020) ....................................... 8

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) .......................................................................................... 5

*California v. Azar*,
No. 19-CV-01184-EMC, 2019 WL 2029066 (N.D. Cal. May 8, 2019) ........................ 3

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ................................................................................ passim

*Doe v. Trump*,
8:20-cv-00858-SVW-JEM, 2020 WL 5076999 (C.D. Cal. July 8, 2020) ..................... 8

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) .................................................................................... 4, 12

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .................................................................................. 2, 3, 6

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................................................ 1, 3, 6, 11

*R.V. v. Mnuchin*,
No. 20-cv-1148, 2020 WL 3402300 (D. Md. June 19, 2020) ....................................... 8

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ....................................................................................... 4

*Sampson v. Murray*,
415 U.S. 61 (1974) ......................................................................................................... 4

*Sarmiento v. United States*,
678 F.3d 147 (2d Cir. 2012) ....................................................................................... 8, 9

*Scholl v. Mnuchin, et al.*,
No. 20-16915, Dkt. 8 at 2 (9th Cir. Oct. 5, 2020) ......................................................... 1

*Sierra Club v. Trump*,
No. 19-CV-00892-HSG, 2019 WL 2305341 (N.D. Cal. May 30, 2019) .................. 3, 6

*Sorenson v. Secretary of Treasury*,
475 U.S. 851 (1986) ....................................................................................................... 9

**Statutes**

26 U.S.C. § 6428 ................................................................................................................. 2

26 U.S.C. § 6428(e) ............................................................................................................ 5

26 U.S.C. § 6428(f)(3)(A) ................................................................................................. 12

26 U.S.C. § 7422 ................................................................................................................. 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

31 U.S.C. § 1324(b)(2) .................................................................................................................. 10

5 U.S.C. § 702 ................................................................................................................................. 2

5 U.S.C. § 706 ................................................................................................................................. 2

**Other Authorities**

166 Cong. Rec. E339, Mar. 31, 2020 .............................................................................................. 7

166 Cong. Rec. S2007, Mar. 24, 2020 ............................................................................................ 7

**I.     INTRODUCTION**

In their motion to stay, Defendants ask this Court to reach conclusions directly contrary to those it just reached in granting Plaintiffs' motion for a preliminary injunction. Where the Court just concluded that Plaintiffs are likely to suffer irreparable harm, Defendants now ask the Court to void this finding and reach the opposite conclusion instead. Where the Court just held that Plaintiffs are likely to succeed on the merits, Defendants now ask the Court to flip its reasoning and find instead that Defendants will. And where the Court just concluded that the public interest favors an injunction, Defendants now ask the Court to find instead that it does not.

Given that Defendants are asking the Court to un-do all of the analysis the Court just performed, it is perhaps unsurprising that Defendants' arguments for stay simply mirror those this Court already rejected in granting Plaintiffs' motion for a preliminary injunction. Defendants' motion is, effectively, a motion for reconsideration that cites no new facts or changes in law, and therefore provides no basis for the Court to revisit its ruling. Indeed, given the "substantial overlap" between the factors governing these motions, courts in this District routinely deny motions to stay preliminary injunctions that they just entered. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also infra* Section III (collecting cases). Further, the "pending" appeal rationale for Defendants' motion is speculative. Defendants admit that the relevant decision-makers at the Department of Justice are "still considering" whether to appeal to the Ninth Circuit. Dkt. 58 at 1, n.1 ("Mot. to Stay"). Just yesterday, they stated that their notice of appeal was "protective" and that the Acting Solicitor General has not yet made a decision whether to appeal. *See Scholl v. Mnuchin, et al.*, No. 20-16915, Dkt. 8 at 2 (9th Cir. Oct. 5, 2020). Defendants' uncertainty about whether to pursue an appeal at all is independently fatal to their request here, and further undercuts any assertions as to the public interest and irreparable harm.

As was the case when this Court considered these issues less than two weeks ago, Defendants' decision to withhold vital CARES Act stimulus payments from Plaintiffs and the Class, based solely on their status as incarcerated persons, is causing and (if left unchecked) will continue to cause irreparable harm. Every day that Defendants deny Class Members congressionally-appropriated economic relief is another day that incarcerated people are deprived

of basic necessities, including hygiene products, food, clothing, and the ability to maintain communication with loved ones. The long-term physical and emotional toll of these deprivations is well-documented, and has been recognized as such by this Court. Dkt. 50 at 28-33. Further, a stay would likely have the effect of making it impossible for Class Members to receive relief before the claims deadlines pass and the statutory deadline to make payments by the end of the year. The administrative and fiscal harms Defendants now assert, by comparison, are hypothetical and of precisely the variety that the Ninth Circuit has deemed insufficient to warrant a stay. Under Ninth Circuit precedent, the lack of irreparable harm is reason enough to deny Defendants' motion. *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (holding that a stay cannot issue where the movant fails to establish irreparable harm).

There have likewise been no factual or legal developments that would or could change this Court's analysis of the merits. As Defendants have repeatedly admitted, all of their merits-based arguments—related to whether this case is ripe, Plaintiffs have standing, or sovereign immunity is waived under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706—rise and fall with Defendants' improper interpretation of 26 U.S.C. § 6428 ("Section 6428"). The Court was correct to join all the other courts that have specifically considered this issue, and to reject Defendants' argument that the CARES Act was intended to provide anything other than immediate economic relief to all eligible individuals. Nothing in Defendants' motion counsels against any of the Court's previous findings.

Finally, a preliminary injunction remains in the public interest. While Defendants suggest, without explanation, that the injunction would require Defendants to prioritize incarcerated persons over other groups of eligible individuals, the Court's order does exactly the opposite. In fact, the injunction enjoins Defendants from treating incarcerated persons *differently* from any other member of society who is eligible to receive a CARES Act payment. In light of the acute and ongoing harm suffered by incarcerated persons in the absence of this injunction, maintaining it remains in the public interest. Further, Defendants' unlawful actions are to blame for the efforts they must now undertake to correct their misstatements about eligibility and otherwise bring themselves into compliance with the law.

Plaintiffs therefore respectfully request that the Court deny Defendants' motion to stay, so that the parties can turn instead to the important and urgent work of effectuating the Court's orders.

## II.   LEGAL STANDARD

Courts must consider four factors in deciding whether to stay a preliminary injunction pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 426.  Courts begin this analysis with the irreparable harm factor, because "if the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965.

Application of these factors "is committed to the exercise of judicial discretion," *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020), and the party seeking a stay "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34.

## III.   ARGUMENT

Given the "substantial overlap" between the factors governing each motion, courts in this District routinely deny motions to stay for the same reasons they granted the underlying motion for preliminary injunction.  *Nken*, 556 U.S. at 434; *see also, e.g.*, *Sierra Club v. Trump*, No. 19-CV-00892-HSG, 2019 WL 2305341, at *1 (N.D. Cal. May 30, 2019) (Gilliam, J.) (noting that "[w]hether to grant a stay pending appeal involves a similar inquiry as whether to issue a preliminary injunction," and denying motion to stay because "[i]n granting the preliminary injunction, the Court rejected all of the arguments Defendants now advance" in the motion to stay); *California v. Azar*, No. 19-CV-01184-EMC, 2019 WL 2029066, at *1 (N.D. Cal. May 8, 2019) (Chen, J.) ("For the same reasons [that the Court issued an injunction], the Court finds that Defendants have not satisfied their burden of showing that a stay of the Injunction Order is justified.").

As in *Sierra Club* and *Azar*, this Court should deny Defendants' motion to stay for the

same reasons that it granted Plaintiffs' motion for a preliminary injunction: Plaintiffs, not Defendants, are likely to suffer irreparable harm without Court intervention; Plaintiffs, not Defendants, are likely to succeed on the merits under the APA; a stay of the preliminary injunction would harm countless non-parties, including the families and communities of the incarcerated persons comprising the provisionally certified Class; and the preliminary injunction remains in the public interest.

### A. The Only Parties Likely to Face Irreparable Harm Are the Plaintiffs

To satisfy the irreparable harm factor, a movant "has the burden of showing that irreparable injury is likely to occur." *Doe #1*, 957 F.3d at 1059. "[S]imply showing some possibility of irreparable injury is insufficient." *Id*. at 1059-60 (internal quotation marks omitted). Here, Defendants advance two theories of irreparable harm: first, "the administrative resources that would be expended and diverted in complying with the Order," and second, that Defendants may not "be able to recover any advance refund it sends out to incarcerated individuals, should the Order be reversed on appeal." Mot. to Stay at 1. Neither qualifies as irreparable harm, particularly in light of the severe and well-documented harms already being suffered by Plaintiffs and the Class.

First, as a threshold matter, the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Second, the administrative expenses of compliance with an injunction—monetary or otherwise—do not qualify as irreparable harm. In *Al Otro Lado v. Wolf*, the Ninth Circuit held that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough." 952 F.3d 999, 1008 (9th Cir. 2020) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). There, the government argued that identifying certain asylum seekers denied entry at the border, as required by the underlying injunction, would "burden the efficiency of the asylum interview process overall," but the Ninth Circuit found that such concerns cannot constitute irreparable harm. *Id*. at 1007. Similarly, in *Hernandez v. Sessions*, the Ninth Circuit rejected the government's argument that "diversion of the agencies' time, resources, and personnel from other pressing immigration adjudication and enforcement priorities" could

1  constitute irreparable harm for the purposes of an injunction. 872 F.3d 976, 995 (9th Cir. 2017)
2  (alternations omitted). Here, Defendants' assertion that the injunction "is likely to require
3  shifting resources from the IRS's core mission, including preparations for the upcoming filing
4  season for 2020 returns," Mot. to Stay at 1, therefore fails for the same reasons that the
5  government's arguments did in *Al Otro Lado* and *Hernandez*.

Third, the government's concern that it may not recover advance payments in the event this Court is reversed fails for at least two reasons. As set forth above, money spent complying with an injunction, "however substantial," does not constitute irreparable harm. *Al Otro Lado*, 952 F.3d at 1008. Moreover, Defendants concede that this harm is entirely speculative: they argue only that "there is *uncertainty* as to whether an erroneous refund made by the IRS that did not result from a redetermination of tax liability can be assessed" using the IRS's standard collection tools, and only that "there is a good *argument to be made*" that this may present a problem. Mot. to Stay at 9 (emphasis supplied).[1] The Ninth Circuit has specifically cautioned, however, that the "government cannot meet this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Doe #1*, 957 F.3d at 1059-60. Defendants' admittedly speculative concerns about collection—concerns that would only come to fruition if the government decides to pursue an appeal, and if this Court is reversed—therefore fall far short of "showing that irreparable injury is *likely* to occur." *Id.* at 1059 (emphasis supplied).[2]

Courts considering whether this threshold *Nken* factor is met also balance any harm to the movant against the irreparable harm identified for the purposes of the preliminary injunction. *Cf.*

---

[1] Defendants also argue that, even if traditional collection measures are available, "it would be a herculean task, as a logistical and administrative matter, to attempt to recover all the advance refunds sent to prisoners." Mot. to Stay at 10. As set forth above, however, the administrative costs of compliance are insufficient to establish irreparable harm under binding Ninth Circuit precedent. *Al Otro Lado*, 952 F.3d at 1008.

[2] Because Defendants have not shown that they have no way at all to recover erroneous payments, their reliance on *California v. Azar*, 911 F.3d 558 (9th Cir. 2018), is mis-placed. There, the court affirmed a preliminary injunction in part because the plaintiff States had no adequate alternative damages remedy to their APA challenge. *Id.* at 581. Further, it is worth noting that the CARES Act does *not* require taxpayers who receive an advance refund but whose eligibility status changes before the 2020 tax season to repay the excess. 26 U.S.C. § 6428(e).

*Doe #1*, 957 F.3d at 1061 (finding that "the government has failed to sustain its burden of establishing that it would suffer irreparable harm absent a stay of the preliminary injunction," including because the "record supports the district court's conclusion that the Plaintiffs would suffer irreparable harm absent a preliminary injunction"). Here, that balancing unquestionably favors Plaintiffs, who are seeking to stop the government's illegal acts and have provided evidence of substantial irreparable harm that is already occurring and will continue if the Court's preliminary injunction is not enforced. *See* Dkt. 8 ("Mot. for PI") at 5-10, 16-18 (collecting evidence of the emotional and physical toll of Defendants' withholding of benefits). As this Court held in granting Plaintiffs' motion for a preliminary injunction, this "evidence demonstrates that plaintiffs and those similarly situated are being deprived basic necessities such as communication with loved ones, food, and hygiene products" and that the resulting harms "cannot be adequately remedied with later monetary relief." Dkt. 50 ("PI Order") at 33. Moreover, a stay pending appeal will likely mean that Plaintiffs and the Class will not obtain relief at all before the claims deadlines pass or before the statutory deadline to pay out advance refunds at the end of the year.

Defendants therefore fail to meet their burden of establishing that they will suffer irreparable harm, which means that "a stay may not issue, regardless of [Defendants'] proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965.

### B. It Remains True that Plaintiffs—Not Defendants—Are Likely to Prevail on the Merits

Should the Court nevertheless proceed to a re-assessment of the merits, then Defendants' motion to stay must also be denied because Defendants fail to make a "strong showing" that they are likely to succeed on the merits. *Nken*, 556 U.S. at 426. Indeed, the merits-based arguments in Defendants' motion to stay bear a striking resemblance to those in Defendants' opposition to the preliminary injunction, which the Court already considered and rejected in granting that injunction. Given the overlap in the standards for the two motions, the Court need not revisit this analysis at all. *Cf. Sierra Club*, 2019 WL 2305341, at *1 ("In granting the preliminary injunction, the Court rejected all of the arguments Defendants now advance . . . and found that Plaintiffs, not

Defendants, were likely to succeed on the merits of their respective arguments. The Court incorporates that reasoning here.").

As this issue has already been fully briefed and decided by this Court, Plaintiffs do not repeat their arguments at length again here. But briefly, as set forth below, this Court was correct in both its interpretation of Section 6428 and how that interpretation bears upon the APA claims Plaintiffs bring in this matter.

### 1. This Court Correctly Read and Applied Section 6428

The parties and Court agree that all of Defendants' merit-based arguments turn entirely on whether the Court adopts Defendants' reading of Section 6428.[3] Yet Defendants now make the same arguments—advancing the same unsupported construction of Section 6428—that this Court already rejected in granting the preliminary injunction. The Court should reject them again here.

Defendants continue to insist upon a non-existent distinction within Section 6428 between an "advance refund" and a "credit claimed on the 2020 tax return." Mot. to Stay at 5. As they argued in opposition to the preliminary injunction, Defendants argue again now that *no eligible individual* has a "right to an advance refund" under the statute, because the IRS has unwritten (but unbridled and unreviewable) discretion to decide which eligible individuals will get an advance refund (*i.e.*, cash today) and which individuals must wait to file their 2020 tax returns to enjoy the coronavirus relief (*i.e.*, cash sometime in 2021, maybe). *Id*. at 2; *see also id.* at 5 ("Section 6428 does not give individuals the right to choose how they will receive the credit.").

As this Court already and correctly observed, however, Defendants' reading of Section 6428 contradicts the text of the statute itself. *See* PI Order at 24 ("In sum, the language of the statute unambiguously mandates disbursement of the advance refund and requires the Secretary to do so expeditiously."). Defendants' reading also contradicts the statute's legislative history, as well as contemporaneous comments by the President and Defendants. *See, e.g.*, Mot. for PI at 10-12 (collecting authorities); Dkt. 47 at 5-7 (same); Dkt. 11 at Ex. 39 (166 Cong. Rec. S2007, Mar.

---

[3] *See* Mot. for Stay at 2 ("[I]ndeed, at the core of Defendants' arguments was an interpretation of section 6428 in which Congress created a refundable tax credit for eligible individuals for the 2020 tax year, and provided conditions under which an advance refund of that credit might be made, but did not create a right to an advance refund of the credit."); *id*. at 3-7 (making the same arguments in the present motion).

24, 2020) (statement of Sen. McConnell) (stating that purpose of Act was to "rush financial assistance to Americans through *direct checks to households* from the middle class on down") (emphasis supplied); Dkt. 11 at Ex. 40 (166 Cong. Rec. E339, Mar. 31, 2020) (statement of Rep. Jayapal) (stating the CARES Act provides "relief to the vast majority of everyday people to *immediately help put cash in people's pockets* to pay those mounting bills") (emphasis supplied). Defendants continue to ignore this additional evidence that belies the error in their interpretation of Section 6428.

Tellingly, Defendants also continue to ignore the three other instances where courts have considered and rejected precisely the interpretation of Section 6428 that Defendants advance again here. *See Amador v. Mnuchin*, No. ELH-20-1102, 2020 WL 4547950, at *11 (D. Md. Aug. 5, 2020) (non-receipt of stimulus payments was "pocketbook injury[,] the textbook example of injury in fact"), amended and superseded by *Amador v. Mnuchin*, No. ELH-20-1102, 2020 WL 5849476 (D. Md. Oct. 1, 2020) (denying government's motion to dismiss, and confirming plaintiffs have Article III standing and that Section 7422 is not an adequate alternative remedy to the APA); *R.V. v. Mnuchin*, No. 20-cv-1148, 2020 WL 3402300, at *2-5 (D. Md. June 19, 2020) (same); *Doe v. Trump*, 8:20-cv-00858-SVW-JEM, 2020 WL 5076999, at *3-4 (C.D. Cal. July 8, 2020) (same). To date, Defendants' only reference to these cases came in a footnoted string citation, wherein Defendants admitted that these are "CARES Act credit cases under Section 6428 rejecting similar arguments." Dkt. 44 ("PI Opp'n") at 9 n.8.

Given that Defendants have not found any authority adopting (or even supporting) their interpretation of Section 6428, Defendants rely instead on *Sarmiento v. United States*, 678 F.3d 147 (2d Cir. 2012), a case this Court specifically considered as supportive of Plaintiffs' interpretation of the statute. *See* PI Order at 22-23 (discussing *Sarmiento*). As an initial matter, *Sarmiento* addressed a narrower question than the one raised here: whether the IRS could withhold an economic stimulus payment under the terms of an Offer-in-Compromise ("OIC") made to settle outstanding tax liability for certain individuals. 678 F.3d at 148. But *Sarmiento*'s discussion of the ways Congress can "create the legal fiction" of a tax overpayment as the vehicle

1   for a stimulus payment remains instructive. *Id*. at 152.[4] Contrary to Defendants' arguments, it is
2   irrelevant in which year that fictional overpayment is deemed to have occurred. The effect is the
3   same either way: the legal fiction of an "overpayment" operates as the vehicle for a "refund." *Id*.
4   This is precisely how the CARES Act advance payments were designed to work.

5   Defendants also note that *Sarmiento* involved a refund suit brought under 26 U.S.C. §
6   7422. Mot. to Stay at 3 n.2. The reason Section 7422 applied in *Sarmiento* is simple: the dispute
7   did not arise until *after* the plaintiffs filed their tax returns and were denied a refund, and so were
8   *already in* the Section 7422 refund process. 678 F.3d at 151. This case, in contrast, involves the
9   denial of an *advance* refund. The Section 7422 process is thus an inadequate alternative remedy
10  for Plaintiffs and the Class because "they are not seeking to recover tax imposed or collected by
11  the IRS," "section 7422 does not permit prospective injunctive and declaratory relief," and it
12  "would entail years of delay to file a tax return, file administrative claims, exhaust those claims,
13  and then file in court," all while Plaintiffs continue to suffer irreparably. PI Order at 18.

14  Defendants also cite in passing *Sorenson v. Secretary of Treasury*, 475 U.S. 851 (1986), in
15  which the Supreme Court held that the IRS could intercept refunds of the Earned Income Tax
16  Credit to apply them to overdue child support. *Sorenson* is inapposite, however, as it concerned a
17  different statute that did not involve (let alone require) an immediate, advance refund. Moreover,
18  *Sorenson* does not discuss the key issue here, whether Section 7422 is an adequate alternative
19  remedy to the APA in these circumstances.

20  In a final attempt to upend the Court's reasoned interpretation of Section 6428,
21  Defendants argue that the Court's preliminary injunction Order somehow "creates a right for
22  prisoners to an advance refund that these other individuals do not have under the plain language
23  of section 6428." Mot. to Stay at 6. The Court's Order does no such thing. As stated above, the
24  Order specifically prohibits Defendants from treating incarcerated persons *differently* from any
25  other eligible member of society. *See* PI Order at 44 ("Defendants . . . are hereby enjoined from

---

[4] In several places, Defendants apparently misunderstand the Court's holding and *Sarmiento*, which both characterize the *overpayment* as fictional, not the credit or refund. *Compare* Mot. to Stay at 4 (referring to "a legally fictional credit"); *id*. at 5 n.4 (describing "the actual tax credit being merely a legal fiction").

1   withholding benefits pursuant to 26 U.S.C. § 6428 from plaintiffs or any class member on the sole

2   basis of their incarcerated status."). Defendants' assertion that an advance payment for an

3   *eligible incarcerated person* is somehow different from an advance payment for *any eligible*

4   *person* is mere circular reasoning to avoid conceding what is clear, that Section 6428 plainly

5   creates a right to an advance payment for *all eligible people,* incarcerated or not.

6   The Court thoroughly and correctly analyzed Section 6428, and Defendants offer no basis

7   for reconsidering or disturbing that analysis now.[5]

### 2. Defendants' Withholding of Stimulus Payments Is Reviewable and Unlawful Under the Administrative Procedure Act

10  Defendants similarly rehash the arguments the Court already rejected with respect to the

11  merits of Plaintiffs' APA claims, including that there was "no final agency action for which there

12  is no adequate remedy," and that Defendants' conduct cannot have been contrary to law or

13  arbitrary and capricious if Section 6428 never provided for advance payments *to anyone*. Mot. to

14  Stay at 8.

15  But here, again, Defendants cite no new facts or authority in support of these arguments.

16  Indeed, Defendants' motion contains less than a page of text on these issues, which in turn

17  contains not a single legal or record citation. *Id*. Defendants therefore provide no reason for this

18  Court to alter its conclusion that Plaintiffs are likely to succeed on these claims. *See* Mot. for PI

19  at 12-15 (arguing that Plaintiffs are likely to establish that Defendants' withholding of payments

20  from incarcerated persons is contrary to law, exceeds statutory authority, and is arbitrary and

21  capricious); PI Order at 14-16, 17, 20-28 (agreeing with Plaintiffs on each of these issues).

### C. A Stay Would Substantially Injure Not Only Incarcerated People, but Also Their Families and Communities

24  Where, as here, an applicant "fail[s] to satisfy the two most important *Nken* factors," a

---

[5] Defendants also confusingly claim that the CARES Act's amendment to 31 U.S.C. Section 1324(b) supports their interpretation, but they do not explain why. *See* Mot. at 5 n.5. That amendment authorizes the IRS to use congressionally-appropriated funds to send out stimulus checks under the CARES Act. See 31 U.S.C. Section 1324(b)(2) ("Disbursements may be made from the appropriation made by this section only for . . . refunds due from . . . [Section] 6248 . . . ."). It has no bearing on the merits here.

1 court need not even address the third—"whether a stay will substantially injure other parties."
2 *Doe #1*, 957 F.3d at 1068. If the Court does reach this factor, however, it too strongly favors
3 Plaintiffs. In addition to Plaintiffs and the Class, the families and communities of incarcerated
4 people all over the country will continue to suffer if the Court grants Defendants' motion to stay.

5       First, as set forth above, Plaintiffs have adequately established that incarcerated people
6 will be irreparably harmed if the Court stays its preliminary injunction. *See supra* Section III.A;
7 *see also Doe #1*, 957 F.3d at 1068 (noting, in assessing this factor, that "[w]e have already
8 explained that the plaintiffs have established irreparable injury").

9       Second, *Nken* also invites courts to consider the impact of a stay on non-parties who may
10 benefit from the injunction. In *Doe #1*, for example, the Ninth Circuit credited evidence,
11 including non-party amicus briefing, that "implementation of the Proclamation [suspending
12 immigration] will interrupt family reunification, detrimentally affect job sectors that
13 disproportionately employ immigrants, and increase the number of underinsured immigrants who
14 will be prohibited from purchasing subsidized ACA insurance plans." 957 F.3d at 1068. Here, as
15 in *Doe #1*, Plaintiffs offered substantial evidence that Defendants' unlawful conduct is causing
16 harm to the families and communities who support or are supported by incarcerated persons. *See*
17 Mot. for PI at 5-10 (citing research, testimonials, and amicus briefing demonstrating the
18 emotional and physical toll of Defendants' withholding of benefits, particularly among the Black
19 and Latinx communities that are both dramatically overrepresented among prison populations and
20 among those most severely affected by COVID-19). *See also* Dkt. 40-1 (amicus brief discussing
21 irreparable harm).

22       Accordingly, as in *Doe #1*, this factor favors the Plaintiffs.

23 **D.   Issuance of Stimulus Payments to All Eligible Individuals—Including**
24 **Plaintiffs—Remains in the Public Interest**

25       The fourth and final *Nken* factor, considering "where the public interest lies," also favors
26 Plaintiffs and the injunction. 556 U.S. at 426. As with the prior factors, the Court already
27 considered the parties' arguments and determined that "the public interest tips in plaintiffs' favor
28 and a preliminary injunction would be in the public interest." PI Order at 36; *see also id.* at 34-36

1  (weighing the "acute and ongoing" harm suffered by incarcerated persons against, among other
2  things, Defendants' concerns regarding the "significant logistical challenges" associated with an
3  injunction and the degree of "fraud and identity theft" that may result, and agreeing with
4  Plaintiffs).  Again, Defendants provide no reason to upset this ruling.

5  Defendants argue only that the injunction is not in the public interest because it "would
6  have the effect of prioritizing prisoners over other groups of individuals who have not yet
7  received advance refunds and would require the IRS to divert resources from its attempts to issues
8  such payments to those groups of individuals."  Mot. to Stay at 11.  As set forth above, however:
9  (i) the Court's preliminary injunction does not require Defendants to treat incarcerated persons
10 differently from any other eligible member of society, and in fact prohibits them from doing so,
11 *see supra* Section III.B.1; and (ii) any administrative hardships associated with compliance,
12 including the diversion of resources, is not a cognizable harm for the purposes of a stay analysis,
13 *see supra* Section III.A (citing *Al Otro Lado*, 952 F.3d at 1008; *Hernandez*, 872 F.3d at 995).  To
14 the extent that Defendants have *also* been unlawfully denying or delaying advance payments to
15 eligible individuals who are not incarcerated, and have created a backlog in the process, then this
16 is a problem of Defendants' own making and does not counsel against an injunction.  As the
17 Ninth Circuit explained in *Al Otro Lado*, any harm that is "largely the result of the government's
18 own failure . . . is largely self-inflicted [and] 'severely undermines' its claim for equitable relief."
19 952 F.3d at 1008.  Indeed, had Defendants not unlawfully excluded incarcerated people from
20 eligibility from the outset, they would not find themselves in this situation now.

21 Moreover, to the extent Defendants actually believe that *no eligible individual* has a right
22 to advance payments under Section 6428, and have been delaying funds on this basis, then the
23 preliminary injunction favors the public interest because it corrects this misinterpretation of the
24 law.  There is nothing in the record, however, to suggest that Defendants actually misunderstood
25 Congress' directive that they distribute the advance payments "as rapidly as possible."  26 U.S.C.
26 § 6428(f)(3)(A).  By Defendants' own admission, the IRS began issuing advance payments on
27 April 10, 2020, and had issued payments totaling more than $264 billion by May 21, 2020.  PI
28 Opp'n at 5.  By issuing the preliminary injunction, this Court ordered only that Defendants

include incarcerated people in this effort, along with other eligible members of society. Doing so remains in the public interest.

## IV. CONCLUSION

For the reasons set forth above and those set forth in the Court's September 24, 2020 Order, Plaintiffs respectfully request that the Court deny Defendants' motion to stay and maintain the preliminary injunction entered in this matter.

Dated: October 6, 2020            Respectfully submitted,


By: */s/ Kelly M. Dermody*
       Kelly M. Dermody

Kelly M. Dermody (SBN 171716)
Yaman Salahi (SBN 288752)
Jallé Dafa (SBN 290637)
LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008
kdermody@lchb.com
ysalahi@lchb.com
jdafa@lchb.com

Eva Paterson (SBN 67081)
Mona Tawatao (SBN 128779)
Christina Alvernaz (SBN 329768)
EQUAL JUSTICE SOCIETY
1939 Harrison St., Suite 818
Oakland, CA  94612
Telephone: 415-288-8703
Facsimile:  510-338-3030
epaterson@equaljusticesociety.org
mtawatao@equaljusticesociety.org
calvernaz@equaljusticesociety.org

Lisa Holder (SBN 212628)
EQUAL JUSTICE SOCIETY
P.O. Box 65694
Los Angeles, CA 90065
Telephone: 323-683-6610
lisaholder@yahoo.com

*Co-Lead Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2020, I caused the foregoing to be electronically filed and served with the Clerk of the Court using the CM/ECF system to all parties of record.

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on October 6, 2020, at San Francisco, California.

*/s/ Kelly M. Dermody*
Kelly M. Dermody