1   Kelly M. Dermody (SBN 171716)
    Yaman Salahi (SBN 288752)
2   Jallé Dafa (SBN 290637)
    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
3   275 Battery Street, 29th Floor
    San Francisco, CA  94111-3339
4   Telephone:  415.956.1000
    Facsimile:  415.956.1008
5   kdermody@lchb.com
    ysalahi@lchb.com
6   jdafa@lchb.com

7   Eva Paterson (SBN 67081)
    Mona Tawatao (SBN 128779)
8   Christina Alvernaz (SBN 329768)
    EQUAL JUSTICE SOCIETY
9   1939 Harrison St., Suite 818
    Oakland, CA  94612
10  Telephone: 415-288-8703
    Facsimile:  510-338-3030
11  epaterson@equaljusticesociety.org
    mtawatao@equaljusticesociety.org
12  calvernaz@equaljusticesociety.org

13  [Additional counsel listed on signature page]

14  *Co-Lead Class Counsel*

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17                   OAKLAND DIVISION

18

19  COLIN SCHOLL and LISA STRAWN, on          Case No.  4:20-cv-5309-PJH
    behalf of themselves and all others
20  similarly situated,                        **PLAINTIFFS' RESPONSE TO
                                               DEFENDANTS' EMERGENCY MOTION
21              Plaintiffs,                     FOR STAY OF ORDER RE: NOTICE TO
                                               CLASS MEMBERS**
22  v.

23  STEVEN MNUCHIN, in his official
    capacity as the Secretary of the U.S.
24  Department of Treasury; CHARLES
    RETTIG, in his official capacity as U.S.
25  Commissioner of Internal Revenue; U.S.
    DEPARTMENT OF THE TREASURY;
26  the U.S. INTERNAL REVENUE
    SERVICE; and, the UNITED STATES OF
27  AMERICA.

28              Defendants.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND ON MEET-AND-CONFER.................................................... 3

III.    ARGUMENT ..................................................................................................... 7

    A.      The Court Should Suspend the October 15 Deadline, Modify the Direct
            Mail Notice Program, and Order the IRS to Immediately Propose a
            Timetable for Effectuating It and a Solution for the Postmark Deadline ............... 7

    B.      A Stay Is Not Warranted Because Defendants Have Not Shown A
            Likelihood of Success on the Merits.................................................................. 11

    C.      A Stay Is Not Warranted Because Harm to Plaintiffs and the Class Will
            Outweigh Harm to Defendants........................................................................... 13

IV.     CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*American Hospital Association v. Price*,
  867 F.3d 160 (D.C. Cir. 2017) .............................................................................................. 12

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) .............................................................................................................. 11

*Nken v. Holder*,
  556 U.S. 418 (2009) .............................................................................................................. 11

**Statutes**

26 U.S.C. § 6116 ............................................................................................................................ 5

**Other Authorities**

Instructions for Power of Attorney and Declaration of Representative
  https://www.irs.gov/pub/irs-pdf/i2848.pdf .................................................................................. 6

**Regulations**

Treasury Regulation 6012-1(a)(5) ................................................................................................... 6

PLAINTIFFS' RESPONSE TO DEFENDANTS'
EMERGENCY MOTION FOR STAY OF ORDER
CASE NO. 4:20-CV-5309-PJH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     **INTRODUCTION**

For over five months, the IRS deterred Class Members from seeking stimulus relief payments, based on its policy that incarcerated individuals were per se ineligible.  Once the Court entered a preliminary injunction holding that the policy was likely unlawful, it took two additional Court orders and two weeks for the IRS to finally update its website to reflect that development, to direct its own hotline personnel to stop misinforming the public about the eligibility of incarcerated people, and to advise prison administrators that they should stop intercepting claim forms or refunds from Class Members.

At every juncture, Plaintiffs and the Court have worked expeditiously, under challenging timelines and over weekends, to find practical solutions that will effectively and adequately appraise Class Members of the Court's class certification order and preliminary injunction and provide them a reasonable opportunity to submit an application for a stimulus check to receive promptly the emergency relief to which they are entitled.  Unfortunately, while Plaintiffs and the Court have worked quickly to move this case forward, the IRS repeatedly has been slow to respond, and then has offered incomplete or poorly-researched positions, arguing thereafter that the ever-diminishing time left by the IRS's conduct is now a basis for why the IRS cannot possibly effectuate the relief ordered by the Court.  The IRS's efforts to run the clock frustrate the Court's case management efforts, threaten to render the preliminary injunction a nullity, and prejudice Class Members.

The IRS's failure to seriously engage with these issues in a timely manner is evident from the background to the instant motion.  Plaintiffs first requested notice to the Class on September 27.  The IRS opposed notice to the Class, but on October 2 the Court determined it would be necessary.  When ordered to meet and confer with Plaintiffs on a notice plan, the IRS was unprepared to discuss the deadlines attached to Plaintiffs' proposed plan or to offer any alternative individualized notice plan.  Instead, the IRS merely offered to email prison administrators in the hope they might voluntarily take it upon themselves to advise Class Members of their rights and print out claim forms and instructions for them, notwithstanding the IRS's admission that the third party correctional professionals are under no obligation to do this

2050180.1

1   IRS work.

2   When it submitted its notice proposal to the Court on October 5, rather than address the

3   issue of direct notice to the Class, the IRS asked in passing for yet more briefing, though it had

4   already had an opportunity to file two briefs on the matter.  It did not assert in its October 5 brief

5   that individualized notice would be impossible, nor could it, nor did it propose an alternate

6   schedule for effectuating such notice.  As a result, based on the information before it at the time,

7   the Court did not credit the IRS's assertions of burden, relying on the IRS's recent

8   implementation of a similar notice program involving 9 million letters to order a far narrower

9   program reaching 1 to 1.5 million Class Members here.

10   Now, the IRS asks for a redo of the whole briefing and meet-and-confer process,

11   submitting new information that it should have provided earlier—*before* the parties and the Court

12   invested substantial time in developing the first notice program.  This means that at least 11

13   valuable days have gone to waste between the Court's October 2 order to meet and confer, and

14   the instant motion for reconsideration, while the clock continues to tick at the expense of Class

15   Members' rights.  The Court should not allow the IRS to use its own avoidable and time-

16   consuming errors to shirk compliance with Court orders, including the preliminary injunction and

17   order to provide class notice.

18   The Court's October 7 order regarding individual notice was not an abuse of discretion.

19   The Court properly considered the information before it at the time, and ordered the IRS to

20   provide necessary notice.  Based on a thorough review of the record, the Court appropriately

21   concluded that the IRS did not make a credible showing of impossibility.  The IRS's emergency

22   motion is based on entirely new information that was not previously shared with the Court (or

23   Plaintiffs), causing needless inefficiencies and delays.  Nevertheless, although this emergency is

24   of Defendants' own making, and although the Court's October 7 order was justified based on the

25   record at the time, in the interest of finding a workable solution that will not prejudice the Class

26   as soon as possible, Plaintiffs respectfully suggest that the Court vacate the existing October 15

27   deadline for notice to the Class and modify the direct mail notice program in accordance with the

28   parties' negotiations, discussed below.  Despite broadly agreeing to several of these

1  modifications, the IRS is unable to provide a concrete timetable for delivering notice, and has not

2  agreed to an extension to the postmark deadline to compensate for delays in the notice program.

3  Thus, Plaintiffs request the Court's assistance in bringing this process to a prompt end by

4  ordering Defendants to be prepared to address these issues concretely, with specific solutions, at

5  the October 15 hearing on this matter.

6  **II.      BACKGROUND ON MEET-AND-CONFER**

7          The background of this case is familiar to the Court and the parties, so Plaintiffs now

8  summarize only the pertinent background related to the need for notice and the parties' meet-and-

9  confer efforts on that issue.

10          Upon reviewing the Court's September 24, 2020 order granting class certification and

11  preliminary injunction, Class Counsel immediately turned their attention to corrective notice.

12  Plaintiffs were concerned that Class Members had been misled about their eligibility by the IRS's

13  May 6, 2020 guidance.  Dkt. No. 51.  For months, the IRS had informed prisons that incarcerated

14  people were ineligible for Economic Impact Payments ("EIPs"), and prisons around the country

15  had returned IRS checks and even disciplined Class Members for attempting to make claims on

16  the erroneous understanding that such claims were fraudulent and/or illegitimate.  Dkt. No. 68.

17  As a result, the vast majority of Class Members, who needed to submit claims for EIPs (because

18  they are indigent and therefore exempt from tax filing requirements), were deterred or prevented

19  from doing so.  *Id*.  By the time of the Court's order, Class Members had only three weeks left

20  before the IRS's self-selected October 15, 2020 claims deadline, with no access to information

21  about the change in eligibility, much less to paper claim forms or instructions.

22          On Sunday, September 27, 2020, Plaintiffs thus moved to compel the IRS to issue notice

23  to the Class.   Dkt. No. 51.  After expedited briefing, the Court granted Plaintiffs' motion, holding

24  that "notice to class members is appropriate and the court exercises its discretion to find that

25  defendants should complete the necessary tasks to issue notice and bear the cost of both the tasks

26  leading up to notice and notice itself."  Dkt. No. 62 at 8.  The Court ordered the parties to confer

27  and submit either a joint notice plan on October 5, or Defendants' proposal on October 5 and

28  Plaintiffs' response on October 6.  *Id*.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
EMERGENCY MOTION FOR STAY OF ORDER
CASE NO. 4:20-CV-5309-PJH

1   During their meet-and-confers at that time, Plaintiffs and Defendants reached general

2   agreement about the need for the IRS to correct its (still) inaccurate website guidance and staff

3   misunderstandings.  Declaration of Kelly M. Dermody ("Dermody Decl.") ¶ 3.  The IRS also

4   agreed that it should advise prison administrators of the agency's change in position, because

5   prisons had relied on the IRS's May 2020 memo and website announcements to prevent people in

6   their custody from filing claims.  Defendants also acknowledged that they had no authority to

7   require state facilities to advise Class Members of Defendants' errors or the claims process.  Dkt.

8   No. 68 ¶ 5.  However, Defendants would not agree to an individualized notice plan.  Dermody

9   Decl. ¶ 4.  Defendants also would not agree to Plaintiffs' request that, if incarcerated people were

10  to be required to submit paper claims, the deadline for those claims be extended in order to ensure

11  Class Members had a reasonable opportunity after receiving notice to submit a claim.  *Id.*  Thus,

12  Defendants filed their notice proposal on October 5, and Plaintiffs submitted their response—

13  including a renewed request for individualized notices and an extension of the paper deadline—

14  on October 6.  Dkt Nos. 65 and 67.

15  After reviewing the proposed notice plans, on October 7, 2020, the Court ordered

16  Defendants to: (1) update the IRS website to state incarcerated individuals are eligible for an EIP

17  if they otherwise meet the statutory requirements; (2) distribute to all state and federal

18  correctional facilities, through existing channels of communication, a cover letter regarding the

19  Court's preliminary injunction and class certification order, a printable copy of the EIP claim

20  form, and a legal notice; (3) mail individualized notice to Class Members for which the IRS has a

21  mailing address by October 15; and (4) extend the postmark deadline for paper claim forms from

22  October 15 to October 30.  Dkt. No. 69.  Defendants assert that they have substantially complied

23  with items 1, 2, and 4, and now take issue only with item 3, individualized notice.  Dkt. No. 78.

24  Prior to filing this motion, Defendants made no reasonable attempt to communicate

25  concerns about the Court-ordered deadline for mail notice to Plaintiffs.  Dermody Decl.

26  ¶ 5.  Instead, at 8:24pm Pacific Standard Time ("PST"), on Friday, October 9, counsel for

27  Defendants e-mailed Plaintiffs, advising them that the government intended to file an emergency

28  motion to stay the Court's October 7, 2020 order regarding individual notice in the Ninth Circuit

PLAINTIFFS' RESPONSE TO DEFENDANTS' EMERGENCY MOTION FOR STAY OF ORDER CASE NO. 4:20-CV-5309-PJH
2050180.1

1   pending appeal.  *Id.* ¶ 6.  At 11:32 pm the same night, Defendants filed a motion to stay the order

2   in this Court.  Dkt. No. 78.  Giving this Court less than 20 minutes on a Friday night to consider

3   their motion, at 11:50pm, the IRS also filed its emergency motion in the Ninth Circuit.  Ninth

4   Circuit Case No. 20-16963, Dkt. No. 6.  On Tuesday afternoon, October 13, after reviewing

5   Plaintiffs' opposition and before even receiving Defendants' Reply, the Ninth Circuit denied

6   Defendants' motion as premature, stating that "[t]o the extent it may be necessary, we remand this

7   matter to the district court for the limited purpose of allowing it to modify the terms of the

8   October 7, 2020 order in response to the evidence presented by appellants in support of their stay

9   motion or any requests by the parties."  *Id.*, Dkt. No. 10.

10          The IRS's sole argument in its motions to stay is that it is logistically impossible for it to

11   meet the court-ordered October 15 deadline to send individualized notice.  Dkt. No. 78.  The

12   primary burden asserted by the IRS relates to processing and preparing information in a database

13   it admits it already has in its possession of incarcerated individuals, collected pursuant to 26

14   U.S.C. § 6116.  *Id.* at 9.  Secondary burdens relate to having sufficient time to print the letters and

15   mail them.  *Id.* at 8.  The IRS still makes no attempt in its motion to estimate how much

16   additional time it would need to comply.  *Id.* at 9.

17          After reviewing the IRS's motions, on Saturday morning, October 10, Plaintiffs' counsel

18   contacted defense counsel to assess whether any modification to the mail notice plan might

19   address Defendants' concerns.  Dermody Decl. ¶ 9, Ex. A.  Defendants did not respond.  *Id.*  On

20   Sunday morning, October 11, the Ninth Circuit ordered Plaintiffs to submit a response to

21   Defendants' motion by Monday October 12.  Shortly thereafter, Plaintiffs renewed their request

22   to defense counsel to meet and confer, and the parties subsequently conferred for approximately

23   90 minutes over multiple calls on Sunday afternoon.  *Id.* ¶¶ 10-11, Ex. B.  During these meetings,

24   Defendants stated that, even then, they did not know how long the notice ordered on October 7

25   would take to effectuate and did not propose any alternate dates for compliance.  *Id.*  Plaintiffs

26   explained that they did not object in principle to an extension of the IRS's deadline to send notice

27   to Class Members, so long as Class Members' deadline to postmark mailed claims was also

28   extended to ensure a sufficient time for claim forms to reach every individual, and for those

1   individuals to complete and return them.  *Id*.  Plaintiffs also suggested that one way to

2   substantially reduce any data or mail sorting burden on both Defendants and the prison mail

3   rooms to which mail would be sent would be to create a generic packet, and not one personally

4   addressed to each Class Member.  Specifically, Plaintiffs suggested that Defendants use the

5   headcount for each facility, as reflected in the data already in Defendants' possession, to generate

6   a packet of generic letters and blank claim forms that could be distributed in each person's prison

7   mail.[1]  *Id*. ¶ 12.  That alternative would obviate the need for any data processing, preparing

8   individually-addressed letters, and other steps the IRS had asserted as a basis for inability to meet

9   the October 15 deadline.  *Id*.  Defendants indicated this proposal would likely be feasible, but

10  stated they were unable to determine the amount of time they would need to effectuate that plan

11  during the parties' call.  *Id*.  To the extent that the printing and mailing required third-party

12  assistance, Plaintiffs proposed that the parties ask the Court to appoint a notice administrator, as is

13  common in class action litigation, through which rapid notice could be effectuated.  *Id*. ¶ 13.

14          Based on the parties' discussions on Sunday, Plaintiffs proposed that the IRS withdraw its

15  emergency motion and appeal, in exchange for the following stipulated agreement to be

16  submitted promptly to this Court:  Defendants would (1) prepare a sufficient number of copies of

17  generic notice documents for each state and federal prison, without need for individually-

18  addressing them, based on information they already have about headcount at each facility; (2)

19  send packages of these forms to each facility with a cover letter requesting distribution to people

20  housed at the institution; and (3) complete this program by a date certain and, if later than

21  October 15, also extend the claims postmark deadline by the same number of days.  Dermody

22  Decl. ¶ 16, Ex. C.  As of 6:19 p.m. on Sunday, Defendants stated that they could agree to the first

---

23  [1]  Both Plaintiffs and the IRS would prefer that Class Members utilize the online claim process
    rather than paper forms.  However, the vast majority of Class Members are not authorized to use
24  the Internet or personal e-mail while in custody, both of which are required to utilize the online
    claim form.  Plaintiffs suggested to the IRS that it consider authorizing attorneys, or others with
25  power of attorney, to submit online claims on behalf of Class Members, to mitigate the need for
    paper forms to be mailed, or reduce the number of mailings.  The IRS has declined to do so
26  despite having the authority to grant such request.  *See* Treasury Regulation 6012-1(a)(5)
    (permitting representative with power of attorney to execute claim upon IRS permission); *see also*
27  https://www.irs.gov/pub/irs-pdf/i2848.pdf  (Instructions for Power of Attorney and Declaration of
    Representative).  Thus, the need for paper claims also stems from the IRS's inflexibility with
28  respect to alternative claim procedures.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
EMERGENCY MOTION FOR STAY OF ORDER
CASE NO. 4:20-CV-5309-PJH

1   two items of Plaintiffs' proposal, and that agreement on the third item "is still a possibility," but

2   that they needed more time to come back with a counter-proposal, nevertheless affirming "it

3   would be beneficial for all sides to continue to discuss how to provide a realistic, effective

4   notice." *Id*. ¶ 17, Ex. D.

5     On Monday morning, October 12, Plaintiffs asked Defendants to advise them of any

6   updates regarding the IRS's consideration of the alternate notice plan.  Dermody Decl. ¶ 18, Ex.

7   E.  At 6:06pm on Monday, October 12, Defendants responded to Plaintiffs'' proposal, stating that

8   they could not agree to extending the October 30 postmark deadline and were still "not in the

9   position to guarantee a date certain when notice could be sent." *Id.* ¶ 19, Ex. F.  Less than thirty

10  minutes later, Plaintiffs responded asking for more specific information about the IRS's estimated

11  timeline for sending out notice pursuant to Plaintiffs' proposal, and when Defendants would have

12  a precise answer to that question. *Id.* ¶ 20, Ex. G.  Plaintiffs also renewed their request for the

13  IRS to investigate whether a means existed to permit Class Members to file online claims with the

14  assistance of people on the outside. *Id.*  As of this filing, on the evening of October 13, the IRS

15  has not responded. *Id.*  It appears IRS is content to never answer this question, assuming that by

16  ignoring it they can force Class Members to miss their opportunity to claim this urgent EIP relief.

17  **III.** **ARGUMENT**

18    As explained below, the Court did not abuse its discretion in issuing its October 7 order,

19  based on the information that had been presented to it at the time.  Nevertheless, because

20  Plaintiffs' top priority is finding a workable solution to Class Notice that will not prejudice their

21  rights, Plaintiffs first address the steps that can be taken immediately to move this issue along.

22     **A.** **The Court Should Suspend the October 15 Deadline, Modify the Direct Mail Notice Program, and Order the IRS to Immediately Propose a Timetable for Effectuating It and a Solution for the Postmark Deadline**

23

24    Although, as explained below, the Court's October 7, 2020 order was proper, Plaintiffs

25  propose that the Court suspend the October 15 deadline, modify the direct mail notice program in

26  line with Plaintiffs' proposal to Defendants to eliminate certain burdensome aspects, and order

27  the IRS to propose a timetable for effectuating the modified notice program at or before the

28  October 15 hearing, as well as a solution for the postmark deadline.

- 7 -

1    Alternative to Personalized Notice.  Plaintiffs request that the Court modify its notice

2    program by relieving Defendants of the obligation to personalize each notice package with

3    individual addresses and names.  Defendants' newly-submitted declarations aver that processing

4    the database containing that information is the most burdensome and time-consuming issue which

5    makes their compliance with the Court's deadline impossible.  *See* Second Corbin Decl. ¶¶ 12-33;

6    Drake Decl. ¶¶ 11-12.  Although more detailed than earlier filings, even these declarations fail to

7    estimate the amount of time that would be necessary to process the data to generate individualized

8    notices, and to generate those notices.  Moreover, in many respects, they are exaggerated and lack

9    credibility.  For example, Mr. Corbin makes much of the fact that different types of information

10   are located in different files, that prison institutions in one file are identified only with codes that

11   have to be cross-referenced with information in other files, and so on.  Second Corbin Decl. ¶¶

12   14-16.  But virtually every database in every case involves multiple sources of information (e.g.,

13   database tables) that have to be cross-referenced to be useful; that is precisely what relational

14   databases are designed to accomplish, and to do so efficiently.[2]  And frankly, it is hard to credit

15   Defendants' argument that these prison data tables are too complex for the sophisticated analysts

16   at the IRS to decipher.

17       Nevertheless, Plaintiffs propose that this entire data processing step can be avoided by

18   instead sending generic notices to each prison facility mailroom, and requesting that the prisons

19   distribute that material to their populations just like they would handle other types of flyers.  The

20   number of copies can be based on the IRS's most recently-available data regarding the headcount

21   at each facility, even if that number is an imperfect estimate due to changes since October 2019.[3]

22

23   [2]  *See*, *e.g.*, The Sedona Conference, *Database Principles: Addressing the Preservation & Production of Databases and Database Information in Civil Litigation*, 15 Sedona Conf. J. 171, 177-80 (2014), https://thesedonaconference.org/sites/default/files/publications/171-216%20Database%20Principles_0.pdf (explaining basics of electronic databases).

24

25   [3]  It is trivial to pull headcount data from a database.  For example, for an SQL database, a count can be accomplished with a single command that would be run for each prison through an automated computer script.  *See* SQL Tutorial, *SQL Count*, https://www.sqltutorial.org/sql-aggregate-functions/sql-count/ ("You can use the COUNT function in the SELECT statement to get the number of employees, the number of employees in each department, the number of employees who hold a specific job, etc.").  Here, the query run against the 26 U.S.C. § 6116 database would likely require less than a page of code, and any competent engineer familiar with the system could create it in less than a single business day.

26

27

28

PLAINTIFFS' RESPONSE TO DEFENDANTS'
EMERGENCY MOTION FOR STAY OF ORDER
CASE NO. 4:20-CV-5309-PJH

1    *See* 26 U.S.C. § 6116(b).  This method would be expected to reduce burden on both the IRS as

2    well as prison mail rooms, which will be able to distribute the mail without need to first sort it to

3    a particular individual.  It would also relieve the pressure on prisons to print out hundreds or

4    thousands of claim forms upon individual request and staffing ability, a process which is playing

5    out to extraordinarily uneven effect (or sometimes dead end) all across the county now.  More

6    importantly, it means that the IRS does not need to engage in any processing of Class Member

7    name or address data.  The IRS has already advised Plaintiffs that this alternative method is likely

8    workable, although they have yet to provide a concrete timeline for effectuating it.  Dermody

9    Decl., ¶¶ 17-19, Exs. F and H.

10           Plaintiffs also note that the IRS's analysis of burden related to notice appears to be

11   overbroad.  For example, the IRS refers to data for 921,000 incarcerated individuals contained in

12   its Individual Master File, which is based on information extracted from tax returns.  Second

13   Corbin Decl. ¶¶ 3-6; Drake Decl. ¶ 4.  If these individuals filed 2018 or 2019 tax returns,

14   however, then they should receive automatic EIPs under the preliminary injunction and the IRS

15   does not need to send them notice or claim forms.  The Court's preliminary injunction provides

16   for them to automatically receive a payment.  It is only individuals who are both currently

17   incarcerated and who also must take affirmative steps to make requests for payments as "Non-

18   Filers" that need to receive direct notice to avoid prejudice related to failing to file a timely

19   claim.[4]

20           Notice Package.  The Court required each notice package to include "a copy of the

21   finalized legal notice, a paper Form 1040 (or 1040-SR as applicable), and instructions on

22   completing the Form 1040."  Dkt. 69 at 5-6.  In subsequent discussions, the IRS has confirmed

23   that the Form 1040-SR is redundant because anyone 65 or older who is permitted to file the 1040-

24   SR is also permitted to file the Form 1040, and would not be unduly burdened by doing so

---

25   [4]  The need for individual notice is less pressing for individuals who have been released, because
26   they can more readily file claims online, can access information and assistance through the
     Internet, and have until November 21, 2020 to do so; further, this case has received widespread
27   news coverage and attention from reentry support organizations, enhancing the likelihood that no
     direct notice is needed for those individuals to apprise them of their rights in time to prevent
28   undue prejudice, particularly given the exigencies.

1    because the Form 1040 for EIPs is simplified.  Dermody Decl. ¶ 14.  Thus, the Court can reduce

2    the burden on the IRS by removing the requirement to include 1040-SR forms.  However, the

3    Court-ordered notice and instructions are necessary because otherwise Class Members will not

4    understand the idiosyncratic requirements for completing the Form 1040 for purposes of

5    obtaining an EIP.[5]  With these modifications, the notice kit should include only 2 double-sided

6    pieces of paper per person: the Court-ordered notice and instructions can fit on one double-sided

7    sheet of paper, and the Form 1040 is a 2-page document that can also fit on one double-sided

8    sheet of paper.  Further, because the Form 1040 is a standard tax document, it is likely that the

9    IRS already has significant copies in its possession and does not need to print new ones, as

10   suggested during a meet-and-confer.  *Id.*  Defendants have indicated that they are agreeable to

11   these modifications, but they have not provided a concrete timeline to complete these tasks.  *Id.*

12        Deadline for Defendants to Comply.  As explained above, Plaintiffs have worked

13   diligently to propose practical solutions to the problems identified by the IRS, essentially

14   eliminating the most burdensome aspects of the process by suggesting the use of generalized

15   notices rather than customized ones, and recommending that they be mailed en masse to prisons

16   for distribution rather than in individually-addressed envelopes.  However, Plaintiffs' efforts have

17   been stymied by the fact that, even more than 2 weeks after Plaintiffs originally moved for Class

18   Notice, and after the IRS filed for emergency relief in two courts asserting impossibility, the IRS

19   still has not provided an alternative timetable or any estimate whatsoever of a date certain by

20   which it could effectuate any of the various types of notice proposed.  Thus, Plaintiffs respectfully

21   request that the Court order Defendants to be prepared to provide that information at the October

22   15 hearing.  This is necessary to avoid further foot-dragging and prejudice to the Class.

23        Effect on Postmark Deadline.  As discussed, Plaintiffs proposed to the IRS that it extend

24   the deadline for postmarking paper claims by any additional amount of time necessary to send out

25   notice.  As of Monday evening, the IRS was unable to agree to this, but had not definitively ruled

26   it out.  Dermody Decl. ¶ 19.  Whether an extension to the deadline is necessary and how much

27   [5]  For example, Class Members are required to write "EIP 2020" at the top of the 1040, to enter
     $1 on lines 2b, 7b, and 8b on the form regardless of actual income, and $0 on 11b.  *See*
28   https://www.irs.gov/newsroom/file-a-simplified-paper-tax-return.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
EMERGENCY MOTION FOR STAY OF ORDER
CASE NO. 4:20-CV-5309-PJH

2050180.1

1    time is required depends in large part on whether the IRS thinks it needs one or two additional

2    days to comply, or an additional one or two weeks, in which case, as the Court already observed,

3    the purpose of mail notice will be defeated.  *See* Dkt. 62 at 9.  Thus, as part of its response

4    regarding a deadline for compliance, the IRS should explain its proposal for how the postmark

5    deadline should be adjusted to deal with delays caused by postponing the notice date.  Plaintiffs

6    have already twice briefed the issue, as well as the Court's authority for issuing such an order.

7    *See* Dkt. Nos. 60 & 66.

8         If the Court adopts Plaintiffs' revised proposal above, Defendants' emergency motion will

9    be mooted and the parties can focus on problem-solving with the Court's guidance.  In that case,

10   the Court need not reach the issues below. Plaintiffs address them regardless in the event the

11   Court reaches these further issues.

12        **B.    A Stay Is Not Warranted Because Defendants Have Not Shown A Likelihood
               of Success on the Merits**

13

14        "A stay is an intrusion into the ordinary processes of administration and judicial review,

15   and accordingly is not a matter of right, even if irreparable injury might otherwise result to the

16   appellant."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citations

17   omitted).  "The party requesting a stay bears the burden of showing that the circumstances justify

18   an exercise of that discretion."  *Id*. at 433-34.  This analysis is guided by four factors:

19             (1) whether the stay applicant has made a strong showing that he is
               likely to succeed on the merits; (2) whether the applicant will be
20             irreparably injured absent a stay; (3) whether issuance of the stay
               will substantially injure the other parties interested in the
21             proceeding; and (4) where the public interest lies.

22   *Id*. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  "The first two factors are the

23   most critical, and the mere possibility of success or irreparable injury is insufficient to satisfy

24   them."  *Id*. at 434 .

25        The IRS challenges only the deadline by which it must comply with the Court's order, not

26   the substance of the order.  But the IRS fails to provide a date certain by which it can actually

27   send mailed notice, despite being aware of Plaintiffs' request for mail notice since September 27,

28   and of the Court's intent to order a notice plan since October 2.  This Court should not reward

- 11 -

1   such inattention by granting the IRS's improper emergency motion.

2          The IRS cites a single case from the D.C. Circuit in support of its argument that the Court

3   abused its discretion: *American Hospital Association v. Price*, 867 F.3d 160 (D.C. Cir. 2017).

4   Yet in *Price* the government moved for reconsideration of the court-ordered deadline, not a stay,

5   as here.  *Id*. at 165.  Further, unlike *Price*, the basis for the IRS's emergency motion is new

6   information that it did not provide the Court until twenty minutes before seeking relief in the

7   Ninth Circuit.  When this Court *was* considering the notice plans, the IRS filed only one

8   declaration in support of its opposition to Plaintiffs' request for Class Notice from Kenneth C.

9   Corbin.  Dkt. No. 56-1.  Mr. Corbin at that time explained the IRS had mailed notice regarding

10  the EIP benefit to nine million Americans in September 2020, a statement that the Court relied

11  upon in its order granting individualized mail notice to the Class.  *See* Dkt. Nos. 56-1 and 69.  Mr.

12  Corbin made only a conclusory and unexplained assertion that, as of September 30, 2020, it

13  would not be possible to issue mail notice within 7 days, by October 6.  Dkt. No. 56-1 ¶ 16.  He

14  made no claim that it would be impossible for the IRS to comply as much as 15 days later, by the

15  October 15 deadline ultimately adopted by the Court.

16         In its October 2 order, the Court ordered the parties to meet and confer and Defendants to

17  file a proposed notice plan by October 5.  In its October 5 filing regarding a concrete notice plan,

18  the IRS did *not* claim that a mail notice program would be impossible.  It included only one line

19  about the issue in its brief, claiming that such notice would be "impractical, ineffective,

20  inefficient, and burdensome."  Dkt. 65 at 2.  It did not even cite Mr. Corbin's declaration except

21  in connection with a possible extension to the claim filing deadline.  *See* Dkt. 65 at 7, n. 8.  And it

22  proposed no alternative, individual notice program or timetable for such.

23         Consistent with the requirements of *Price*, the Court carefully considered the IRS's

24  contentions of impossibility based on the record that was before it.  *See* Dkt. 50 at 5 ("Defendants

25  have identified significant practical hurdles to issuing individualized notice to class members and

26  the court is cognizant of the agency's monumental tasks to process and issue EIPs while also

27  conducting its normal operations.").  Having only been provided a limited amount of information

28  by the IRS, the Court had no basis to conclude that the mail notice program was *impossible* to

2050180.1

1   effectuate by October 15.  Weighed against Mr. Corbin's earlier, superficial claim of

2   impossibility (which the government did not discuss in its October 5 filing), the Court found more

3   persuasive the fact that the IRS, weeks earlier, had mounted a much more significant

4   individualized mailing campaign reaching over 9 million members of the public.  *Id.* ("However,

5   the court notes that in September, the IRS mailed millions of individualized notices to American

6   taxpayers encouraging them to file for an EIP.").  In contrast, now the IRS relies almost

7   exclusively upon two new declarations, the second declaration of Kenneth C. Corbin (Dkt. No.

8   78-1) and the declaration of Donald C. Drake (Dkt. No. 78-2), which contain new information

9   that the Court did not have the opportunity to review and consider before its October 7 order.

10       Accordingly, the IRS has not met its burden to show that it is likely to succeed in

11  demonstrating that the Court abused its discretion.  The emergency is of Defendants' own making

12  based on their failure to adequately raise these issues to the Court at the appropriate time.

13  Although the request to stay will be mooted if Plaintiffs' proposal is adopted, if the Court reaches

14  the merits, the motion for a stay should be denied in its entirety.

15       **C.**     **A Stay Is Not Warranted Because Harm to Plaintiffs and the Class Will
            Outweigh Harm to Defendants**

16

17       A stay of the Court's order requiring the IRS to issue mail notice to the class members

18  will severely injure Plaintiffs, Class Members, and the public.  Prompt mail notice is essential

19  given all the confusion the IRS has caused and the need for prompt, clear notice to Class

20  Members, and a means to file claims, in advance of the current claim deadline of October 30.

21       Misleading IRS Website and Customer Service Guidance.  On May 4, 2020, the IRS

22  announced on its website its unlawful and arbitrary decision to exclude Class Members from the

23  EIP benefit.  IRS staff rely on that website to reflect official IRS policy.

24       On September 24, 2020, the Court granted Plaintiffs' preliminary injunction and motion

25  for class certification.  Thereafter, the IRS took *two weeks* to update its website regarding the

26  eligibility of incarcerated persons, and only corrected its web guidance after the Court ordered the

27  IRS to do so.   Dkt. No. 68 ¶ 2; Dermody Decl. ¶ 21.  During this time period, IRS customer

28  service staff continued to mislead callers about Class Member eligibility.  Dkt. No. 68 ¶ 2.  This

1   significant delay created mass confusion among the public and correctional authorities as to

2   whether the Court's ruling was real.  Dkt. No. 68 ¶ 2; Dermody Decl. ¶¶ 21-22.  The

3   misstatements in Defendants' official communications prompted ad hoc and uneven outreach

4   efforts by Class Members, families, provider groups, and correctional professionals to fill the

5   information void that still exists.  *Id.* ¶ 22.  The need for consistent information across the Class

6   has been evidenced by the more than 230,000 unique visits to Plaintiffs' counsel's CARES Act

7   webpage since September 24, and the more than 3,600 individual requests for assistance from

8   community members and advocates.  *Id.*

9          <u>Failure to Notify Correctional Facilities</u>.  The IRS also failed to notify correctional

10   authorities until 13 days after the Court's order granting Plaintiffs' motion for a preliminary

11   injunction, and only because the Court ordered it to do so.  *Id.* ¶ 23.  This resulted in Class

12   Counsel learning up to two weeks later that many state authorities have not received word of the

13   change in IRS policy and were still spreading misinformation among the incarcerated population

14   and actively interfering with Class Members' ability to submit timely claims.  *Id.*

15          The great confusion caused by the IRS's own unlawful decision to deny Plaintiffs and the

16   Class the EIP benefit, compounded by the IRS's delay in correcting the misinformation it has

17   spread over the last five months, underscores the critical need for prompt mail notice to class

18   members, particularly since most incarcerated individuals do not have access to the Internet and

19   cannot utilize the online EIP claim tool.  Permitting a stay will potentially delay mailed notice for

20   weeks, at a time when such notice is critically needed in order to timely advise Class Members of

21   their rights and provide them a reasonable opportunity to submit a claim before the current

22   October 30 deadline.

23   **IV.    <u>CONCLUSION</u>**

24          For the reasons set forth above, this Court should decline to grant a stay and, instead,

25   should suspend the October 15 notice deadline, order Defendants to adopt Plaintiffs' alternative

26   and less burdensome revised plan and to be prepared at the October 15 hearing to identify a

27   concrete timetable for compliance and to address the related issue of the EIP claim postmark

28   deadline.

2050180.1

1

2
Dated: October 13, 2020                    Respectfully submitted,

3

4
By:  /s/ Kelly M. Dermody
Kelly M. Dermody

5
Kelly M. Dermody (SBN 171716)

6
Yaman Salahi (SBN 288752)
Jallé Dafa (SBN 290637)

7
LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP

8
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

9
Telephone:  415.956.1000
Facsimile:  415.956.1008

10
kdermody@lchb.com
ysalahi@lchb.com

11
jdafa@lchb.com

12
Eva Paterson (SBN 67081)
Mona Tawatao (SBN 128779)

13
Christina Alvernaz (SBN 329768)
EQUAL JUSTICE SOCIETY

14
1939 Harrison St., Suite 818
Oakland, CA  94612

15
Telephone: 415-288-8703
Facsimile:  510-338-3030

16
epaterson@equaljusticesociety.org
mtawatao@equaljusticesociety.org

17
calvernaz@equaljusticesociety.org

18
Lisa Holder (SBN 212628)
Law Offices of LISA HOLDER

19
Equal Justice Society, Of Counsel
P.O. Box 65694

20
Los Angeles, CA 90065
Telephone: 323-683-6610

21
lisaholder@yahoo.com

22
*Co-Lead Class Counsel*

23

24

25

26

27

28

2050180.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2020, I caused the foregoing to be electronically filed and served with the Clerk of the Court using the CM/ECF system to all parties of record.

*/s/  Kelly M. Dermody*
Kelly M. Dermody

PLAINTIFFS' RESPONSE TO DEFENDANTS'
EMERGENCY MOTION FOR STAY OF ORDER
CASE NO. 4:20-CV-5309-PJH

2050180.1