Edward M. Robbins, Jr.
HOCHMAN SALKIN TOSCHER PEREZ, PC
9150 Wilshire Blvd., Suite 300
Beverly Hills, California 90212
310.281.3247 (O)
310.859.5129 (F)
edr@taxlitigator.com

Joseph A. DiRuzzo, III (pro hac vice forthcoming)
DiRUZZO & COMPANY
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
954.615.1676 (O)
954.827.0340 (F)
jd@diruzzolaw.com

*Counsel for Jamal A. Morton and Araclis N. Ayala, individually and on behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

-----------------------------------------------------------------x

COLIN SCHOLL, *et al.*,                :

     Plaintiff,                            :

            v.                              :

STEVEN MNUCHIN, *et al.*,             :

     Defendants.                           :

-----------------------------------------------------------------x

Case No. 4:20-cv-5309-PJH

NOTICE OF MOTION &
MOTION TO INTERVENE

Hr'g Date:    TBD
Hr'g Time:    TBD
Judge:  Hon. Phyllis J. Hamilton

### NOTICE OF MOTION, MOTION FOR LEAVE TO INTERVENE &
### DECLARATION OF JOSEPH A. DiRUZZO, III IN SUPPORT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Pursuant to Local Rule 7-1(b), JAMAL A. MORTON and ARACLIS N. AYALA, individually and on behalf of all others similarly situated, respectfully move to intervene as Plaintiffs in the above-captioned litigation without oral argument. Alternatively, MORTON and AYALA notice that on Jan. 20, 2021, at 9:00 a.m., before the Hon. Chief District Judge Phyllis J. Hamilton, Oakland Courthouse, Courtroom 3 – 3rd Floor, 1301 Clay Street, Oakland, CA 94612, or as soon thereafter as the Court may order, MORTON and AYALA will and do hereby move for the same relief.

This motion is brought pursuant to Federal Rule of Civil Procedure 24. As more fully set forth in the accompanying memorandum, the grounds for the motion are: (1) the motion is timely; (2) MORTON, AYALA, and the incarcerated individuals located in the U.S. Territories & Possessions have significant protectable interests in the outcome of this case; (3) the disposition of this action could impede MORTON's, AYALA's, and the incarcerated individuals located in the U.S. Territories & Possessions' ability to protect those interests; (4) the current parties do not adequately represent the interests of MORTON, AYALA and the incarcerated individuals located in the U.S. Territories & Possessions; and (5) MORTON's, AYALA's, and the incarcerated individuals located in the U.S. Territories & Possessions' position regarding the CARES Act and the Economic Impact Payments ("EIP") plainly involves common questions of law and fact with this action, and their direct opposition to Defendants' position satisfies the "common question" requirement for permissive intervention. This motion is based on the supporting memorandum below; the accompanying Affidavit of United States Virgin Islands Bureau of Internal Revenue Director Joel A. Lee, CPA, the position taken by the United States Virgin Islands (the "USVI") in *Morton v. USVI, et al.*, case no. 3:20-cv-109 (D.V.I.), and any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

1

**NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION**

1    **PLEASE TAKE FURTHER NOTICE** that counsel for MORTON and AYALA spoke to

2    counsel for the Defendants, who has indicated that the Defendants object to intervention.

3    **PLEASE TAKE FURTHER NOTICE** that counsel for MORTON and AYALA spoke to

4
     counsel for the Plaintiffs, who has indicated that the Plaintiffs oppose the motion.
5

6    **PLEASE TAKE FURTHER NOTICE** that MORTON's and AYALA's proposed complaint

7    in intervention (without exhibits) is attached.

8    **PLEASE TAKE FURTHER NOTICE** that MORTON's and AYALA's proposed motion for

9    civil contempt (without exhibits) is attached.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION**

1

2

<u>MEMORANDUM IN SUPPORT</u>

BACKGROUND

3

## I.   THE INSTANT CASE

4

5

6

7

8

9

On August 8, 2020, a class action complaint was filed against the Federal Government contesting the IRS's position that incarcerated individuals are not eligible for the EIP under the CARES Act.  Indeed, IRS Chief Counsel Michael J. Desmond provided a declaration in this case, docket no. 44-1, stating that: "incarcerated individuals do not qualify for the advance payments."  *Id.* at ¶5.

10

11

12

13

14

15

16

17

On September 24, 2020, this Court granted the *Scholl* plaintiffs a preliminary injunction and class certification.  *Scholl v. Mnuchin*, 2020 WL 5702129 (N.D. Cal. Sept. 24, 2020) ("*Scholl I*").  On October 14, 2020, this Court entered an order granting in part and denying in part the *Scholl* plaintiffs' motion for summary judgement, entered a permanent injunction against the Federal Government, and certified the class for all purposes.  *Scholl v. Mnuchin*, 2020 WL 6065059, at *22 (N.D. Cal. Oct. 14, 2020) ("*Scholl II*").

18

19

20

21

22

23

The Federal Government appealed this case to the Ninth Circuit, and moved the Ninth Circuit for an order staying the District Court's decision pending appeal. *See* Ninth Cir. case no. 20-17077. The Ninth Circuit denied the motion to stay, concluding that the Federal Government had not "demonstrated a sufficient likelihood of success on appeal to warrant a stay."  *Scholl, et al. v. Mnuchin, et al.*, case no. 20-17077 at ECF No. 9.

24

25

26

Consequently, the injunction remains in place and is fully operative against the Federal Government and its agents, servants, and persons in active concert with the named defendants.  *See* Fed. R. Civ. P. 65(d) (detailing persons to be bound by injunction order).

27

28

**NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION**

II.     TAXATION IN THE UNITED STATES TERRITORIES & POSSESSIONS

    A.     The Internal Revenue Code

The Internal Revenue Code has specific provisions addressing United States taxpayers who reside and have income "sourced" in the Territories and Possessions.  For example, 26 U.S.C. § 937 addresses residency and sourcing rules regarding the Territories and Possessions.  26 U.S.C. § 932(c) requires that USVI residents file their income tax return with, and pay their tax liability to the USVI. 26 U.S.C. § 933 addresses bona fide residents of Puerto Rico, requiring the filing of an income tax return with the Puerto Rican tax authority for U.S. citizens residing in Puerto Rico who only received income from sources within Puerto Rico.  *See generally,* IRS Pub. 1321.  *Available at* https://www.irs.gov/pub/irs-pdf/p1321.pdf (last accessed 11/21/20).

    B.     Taxation in the U.S. Territories & Possessions

        1.     The USVI

The Naval Service Appropriations Act of 1921, codified at 48 U.S.C. § 1397, provides: "[t]he income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands."  "This statutory scheme is known as the 'mirror code,' under which the Internal Revenue Code is applied to the Virgin Islands merely by substituting 'Virgin Islands' for 'United States' throughout."  *Vento v. Dir. of Virgin Islands Bureau of Internal Revenue*, 715 F.3d 455, 465 (3d Cir. 2013).  Thus, a USVI taxpayer may "not be required to pay taxes to the federal government, so long as she files a territorial tax return that fully reports her income and then fully pays her territorial taxes to the [USVI]."  *Cooper v. Comm'r*, 718 F.3d 216, 219 (3d Cir. 2013).

        2.     Guam & the Commonwealth of the Northern Mariana Islands ("CNMI")

Similar to the USVI,

4

the Internal Revenue Code applies in both Guam and the Marianas through a "mirror image" system under which each jurisdiction administers and collects its own taxes. Citizens or residents of either jurisdiction are required to file only one income tax return. Under these "mirroring" provisions, either Guam or CNMI is to be substituted wherever "United States" appears in the Internal Revenue Code, unless such substitution would be "manifestly incompatible" with the Code or Covenant.

*Holmes v. Dir. of the Dep't of Revenue & Taxation, Gov't of Guam*, 937 F.2d 481, 483–84 (9th Cir. 1991) (cleaned up).  *See also Sayre & Co. v. Riddell*, 395 F.2d 407, 412 (9th Cir. 1968) ("The general conclusion that we draw ... is that Congress intended that Guam should apply the Internal Revenue Code ... just as the United States applies the Code to persons and income within its territory."). Consequently, "Guam residents do not pay any income tax to the U.S. federal government; instead, they pay a territorial income tax to the government of Guam."  *Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F.3d 1077, 1079 (9th Cir. 2001).

### 3.    Puerto Rico

While Puerto Ricans pay most of their income taxes to the local tax authority, *see* 26 U.S.C. § 933, *supra*, the still pay their federal income taxes to the IRS "on income from sources outside Puerto Rico for which they are liable under the Internal Revenue Code, the regular payment of federal income taxes by all federal employees in Puerto Rico, as well as the full Social Security, Medicare, and Unemployment Compensation taxes[.]" *United States v. Vaello-Madero* (1st Cir. 2020) (cleaned up).

## III.   THE CARES ACT IN THE TERRITORIES & POSSESSIONS

### A.    Section 2201 of the CARES Act

Section 2201(c)(1) addresses the payments to U.S. Possessions, and states:

(A) MIRROR CODE POSSESSION.—The Secretary of the Treasury shall pay to each possession of the United States which has a mirror code tax system amounts equal to the loss (if any) to that possession by reason of the amendments made by this section. Such amounts shall be determined by the Secretary of the Treasury based on information provided by the government of the respective possession.

(B)  OTHER POSSESSIONS.—The Secretary of the Treasury shall pay to each possession of the United States which does not have a mirror code tax system amounts estimated by the Secretary of the Treasury as being equal to the aggregate benefits (if any) that would have been provided to residents of such possession by reason of the amendments made by this section if a mirror

code tax system had been in effect in such possession. The preceding sentence shall not apply unless the respective possession has a plan, which has been approved by the Secretary of the Treasury, under which such possession will promptly distribute such payments to its residents.

CARES Act, § 2201(c)(1)(A)-(B).

**B.     The IRS's Position on the CARES Act in the Territories & Possessions**

Per the IRS website:

> Q A3. If I live in Puerto Rico, the U.S. Virgin Islands, American Samoa, Guam, or the Commonwealth of the Northern Mariana Islands, will I get a payment if I'm eligible? (Updated October 26, 2020)
> A3. In many cases, the answer is yes. But special rules in the law apply to these five U.S. territories (possessions). *In general, the tax authorities in each territory will make Payments to eligible residents. If you are a resident of one of these territories with questions about a payment, you should contact your local tax authority.*
> Resident of a U.S Territory: If you receive a Payment from the IRS and a U.S territory tax agency and you are a resident of a U.S. territory for the 2020 tax year, please consult with your U.S. territory tax agency concerning information about an incorrect or duplicate Payment.
> Not a resident of a U.S. Territory: If you have received a Payment from more than one jurisdiction and you are a not a resident of a U.S. territory for the 2020 tax year, you should return any incorrect or duplicate Payment received from the U.S. territory tax agency to the IRS following the instructions about repayments. Go to Topic I: Returning the Economic Impact Payment for instructions.

https://www.irs.gov/newsroom/economic-impact-payment-information-center-topic-a-eip-eligibility

(last accessed Nov. 21, 2020) (emphasis added), (attached hereto as Exhibit 1 to the Declaration of Joseph A. DiRuzzo, III ("JAD Dec.")).

**IV.     THE USVI CLASS ACTION LITIGATION**

On October 27, 2020, counsel for Morton sent the Director of the Virgin Islands Bureau of Internal Revenue ("BIR") correspondence seeking clarification as to whether the BIR shared the same view as the IRS regarding whether the CARES Act in general, and the EIP in particular, applied to incarcerated individuals. Attached hereto as Exhibit 2 to JAD Dec.. Counsel for Morton expressed that time was of the essence because the EIP must be issued "as rapidly as possible," 26 U.S.C. § 6428(f)(3), and that "[n]o refund or credit shall be made or allowed under this subsection after December 31, 2020[,]" *id.* JAD Dec. Exhibit 2 at p. 2.

Counsel for Morton received no response to his October 27th correspondence and concluded

that the USVI government took the same position as the Federal Government as to the EIP for incarcerated individuals, i.e., that they are not eligible.

Consequently, Morton filed suit, *Morton v. USVI, et al.,* case no. 3:20-cv-109 (D.V.I.), attempting to obtain his EIP. Morton moved for a preliminary injunction, *id.* at docket no. 5, moved to expedite, *id.* at docket no. 8, and moved for summary judgment, *id.* at docket no. 18. The District Court of the Virgin Islands set a hearing on Morton's preliminary injunction motion for November 24th. *See id.* at docket nos. 30 & 32.

On November 20th, the USVI filed its opposition (a copy of which is attached hereto as Exhibit 3 to JAD Dec.), and attached the affidavit of Director Joel A. Lee, CPA, in support of the opposition (a copy of which is attached hereto as Exhibit 4 to JAD Dec.). *Id.* at docket nos. 37 & 37-1.

Importantly, in the *Morton* case, the USVI avers that it "merely serve[s] as an intermediary between eligible Virgin Islands taxpayers on the one hand, and U.S. Treasury on the other. [The USVI] take[s] no position on the eligibility of incarcerated persons. [The USVI] merely distribute[s] the federal funds we have been provided in accordance with the conditions that are provided by the U.S. Treasury." JAD Dec. Ex. 3 at p. 2.

V.    TREASURY'S "PLAN" WITH THE USVI

As detailed in the sworn statement by Director Lee, "the United States Treasury Department has advanced federal funds to the USVI BIR to be used to pay the advanced EIPs pursuant to an EIP Implementation Plan (the "Plan"). Treasury considers the Plan confidential and prohibits its disclosure." Lee Aff. at ¶6.[1] The USVI "holds these federal CARES Act funds in trust, pursuant to the Plan authorized by the United States Treasury Department." *Id.* at ¶7. "[T]he Plan imposes restrictions upon the USVI BIR's use of the CARES Act Trust Fund monies." *Id.* at ¶8. "[O]ne of

---

[1] Morton has moved to unseal the Plan. *See Morton v. USVI, et al.,* case no. 3:20-cv-109 (D.V.I.) at docket no. 49.

NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION

the Plan restrictions is that *CARES Act Trust Fund monies cannot be used to pay EIPs to incarcerated persons*." *Id.* at ¶9 (emphasis added). "[T]he Plan also restricts the USVI BIR's expenditures of CARES Act Trust Fund monies insofar as no EIPs can be remitted from the CARES Act Trust Fund unless it is are [sic] based on a tax return filed by the taxpayer." *Id.* at ¶10. "[T]he USVI BIR has not interpreted the CARES Act with respect to eligibility. Instead, EIPs are remitted *solely in conformance with the limitations placed on the funds provided by the United States Treasury Department.*" *Id.* at ¶12 (emphasis added).

## APPLICABLE LAW

With respect to intervention as of right,

> [o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

> An applicant seeking to intervene as of right under Rule 24 must demonstrate that four requirements are met: (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "[T]he requirements are broadly interpreted in favor of intervention." *Id.*

With respect to permissive intervention, "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Thus, "permissive intervention requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).

**NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION**

1

DISCUSSION

2

I. **INTERVENTION AS OF RIGHT**

3

    A.    **The Motion is Timely**

4

    "Timeliness is determined by the totality of the circumstances facing would-be intervenors[,]"

5

6

*Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016), which is a "nuanced,

pragmatic approach[.]" *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir.

7

8

1997). *See also United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (listing the three timeliness

9

factors: (1) the stage of the proceeding; (2) the prejudice to other parties, and (3) the reason for and

10

length of the delay; and finding district court abused its discretion in denying intervention in fifteen-

11

12

year-old litigation where litigant's actions and court order implicated changed circumstances); *see also*

*United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1182-83 (3d Cir. 1994) (finding intervention in

13

14

four-year-old litigation timely where intervention was sought 43 days after intervenor became aware

15

its interests were imperiled).

16

17

    Here, the stage of the proceeding is a mere five weeks since the Court permanently enjoined

the Federal Government. "[I]n analyzing the 'stage of the proceedings' factor, the mere lapse of time

18

19

alone is not determinative." *Smith*, 830 F.3d at 854 (cleaned up). Rather, "[w]here a change of

20

circumstances occurs, and that change is the 'major reason' for the motion to intervene, the stage of

21

proceedings factor should be analyzed by reference to the change in circumstances, and not the

22

commencement of the litigation." *Id.* (citation omitted). The change in circumstance, and sole reason

23

24

to intervene, is that Morton has just learned of the existence of the Plan, which is the purported

justification for the Federal Government's position that territorial incarcerated individuals are not

25

26

entitled to the EIP.

27

    There is no prejudice to the other parties as Morton and Ayala seek the following four

28

remedies from this Court.

9

**NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION**

*First*, to enforce compliance of this Court's injunction on the Federal Government, its agents, servants, and others acting in concert therewith, and to clarify (to the extent needed, though we contend that a reading to the contrary is unsupportable) that the Court's ruling applies to the Federal Government's treatment of the CARES Act to the U.S. Territories & Possessions.  Morton, Ayala, and, indeed, all incarcerated individuals in the U.S. Territories & Possessions had no reason to know/believe that their interests were not being adequately represented, and that the Federal Government would apparently carve out those individuals from the relief that this Court provided (i.e., the permanent injunction).  *Cf. Smith*, 830 F.3d at 857 ("prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented").  At bottom, there is no prejudice to the Federal Government with complying with the law and this Court's orders.

*Second*, to have this Court declare that Defendants' policy of conditioning/restricting funding under Section 2201(c)(1) of the CARES Act (and, in turn, requiring the respective U.S. Territories & Possessions to withhold EIP benefits from territorial incarcerated persons based solely on their incarcerated status) exceeds Defendants' statutory authority under Section 2201(c)(1) of the CARES Act, the Uniformity Clause, *viz.* U.S. Const. Art. I, § 8, cl. 1, and the Due Process Clause of the Fifth Amendment, and to correspondingly set aside all inconsistent actions that have been or are subsequently taken as void *ab initio*.

*Third,* to have this Court declare that (1) the statutory authority of the CARES Act, under which the respective Plans were purportedly entered into between the Federal Government and the respective U.S. Territories & Possessions, does not allow for delegation; (2) if delegation was authorized, no delegation order existed; and/or (3) because the USVI Plan was not actually signed, it is a legal nullity with no force and effect.

**NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION**

1    *Fourth,* to have this Court declare that Defendants' policy of conditioning/restricting funding

2    under Section 2201(c)(1) of the CARES Act on the execution of a Plan under Section 2201(c)(1)(B)

3    to mirror code jurisdictions (for which there is no requirement of a Plan under Section 2201(c)(1)(A))

4

5    exceeds Defendants' statutory authority under the Section 2201(c)(1) of the CARES Act (i.e., there is

6    no statutory authority to enter into a Plan), and to correspondingly set aside all inconsistent actions

7    that have been or are subsequently taken as void *ab initio.*

8        As to the reason and length of delay, Morton and Ayala have moved to intervene just days

9    after the existence of the Plan was disclosed and it became apparent that the Federal Defendants have,

10   and continue to, prohibit payment of the EIP to incarcerated individuals in violation of this Court's

11   injunction.  In all events, the instant motion is timely.

12

13   **B.      Incarcerated Individuals Located in the U.S. Territories & Possessions Have**
             **Significant Protectable Interests.**

14

15       "To demonstrate a significant protectable interest, an applicant must establish that the interest

16   is protectable under some law and that there is a relationship between the legally protected interest

17   and the claims at issue." *Citizens for Balanced Use,* 647 F.3d at 897.

18       Morton, Ayala, and, indeed, all incarcerated individuals in the U.S. Territories & Possessions

19   have protectable interests in obtaining their EIP (*see* 26 U.SC. § 6428(a)) and having the Federal

20   Government comply with Section 2201(c) of the CARES Act, through which Congress mandated

21   funding the respective Territories so that they, in turn, can issue the EIP.  *See* CARES Act, Section

22

23   2201(c)(1)(A)-(B) ("*shall pay to each possession*").  Thus, Intervenors have a practical interest in this case,

24   while intervention will obviate needless litigation around the country and will allow a voice to be given

25   to the incarcerated individuals in the U.S. Territories & Possessions.  *Accord Forest Conservation Council*

26   *v. U.S. Forest Serv.,* 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (abrogated on other grounds) ("By allowing

27   parties with a practical interest in the outcome of a particular case to intervene, we often prevent or

28

simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.").

### C.  The Disposition of this Action Could Impede Morton's and Ayala's Ability to Protect their (and the Class's and Sub-Class's) Interests.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810, 822 (9th Cir. 2001).  The Ninth Circuit has stated:  "[h]aving found that appellants have a significant protectable interest, [the Circuit had] little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect it." *California ex rel. Lockyer v. United States,* 450 F.3d 436, 442 (9th Cir. 2006).  Morton and Ayala are affected in a very real sense insofar as the Federal Government apparently has carved out incarcerated individuals in the U.S. Territories & Possessions from its response to this Court's injunction and effectively denied Morton and Ayala the benefits of their EIP.

### D.  The Parties Do Not Adequately Represent the Interests of the Incarcerated Individuals Located in the U.S. Territories & Possessions.

As a threshold matter, the fourth element of Rule 24(a) intervention requires only a "minimal" showing that existing parties' representation "may be" inadequate." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10 (1972).  In evaluating adequacy of representation, courts examine three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use,* 647 F.3d at 898.  Here, all three factors militate towards finding inadequacy of representation.

*First,* Morton, Ayala, and the incarcerated individuals in the U.S. Territories & Possessions have arguments that are unique under the CARES Act that have not been made by the class that this

12

**NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION**

Court certified (i.e., under Section 2201(c)(1)).  *Second*, Morton and Ayala believe that the as-certified class may be precluded from raising facts and arguments in that they lack Article III standing and/or may have waived such arguments by failing to bring such to the Court's attention in the first instance. *Third*, Morton and Ayala contend that they bring a necessary element and/or injury to this case as they are litigants with Article III standing (which is also ripe), for the Court's consideration.  To that end, Plaintiffs have appeared to neglect to make the arguments that Morton and Ayala are now advancing regarding the U.S. Territories & Possessions.

## II.   ALTERNATIVELY, THE COURT SHOULD PERMIT PERMISSIVE INTERVENTION UNDER RULE 24(b).

Even if this Court does not grant intervention as of right, the Court should permit Morton and Ayala, the Class, and the Sub-Class leave to intervene permissively pursuant Rule 24(b).  "A party seeking permissive intervention ... must establish a basis for federal subject matter jurisdiction independent of the court's jurisdiction over the underlying action." *EEOC v. Nevada Resort Assoc.*, 792 F.2d 882, 886 (9th Cir. 1986).  As demonstrated in the accompanying complaint in intervention, this Court has independent federal question jurisdiction regarding each of Morton's and Ayala's APA claims, CARES Act claims, and constitutional claims.

As to timeliness, *see Freedom from Religion Found*, 644 F.3d at 843, for the same reasons that this motion was timely under a Rule 24(a) analysis, it is likewise timely under Rule 24(b).

As to common questions of fact and law, *see Freedom from Religion Found*, 644 F.3d at 843, such is clearly present.  Morton's and Ayala's claim that the Federal Government's position vis-à-vis the CARES Act, in general, and the EIP, in particular, is (similar to the claim of incarcerated individuals located in the Several States) unlawful.

In sum, all three factors for permissive intervention have been met.

13

**NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION**

1    Finally, in addition to the three prerequisites for permissive intervention outlined, *supra*,

2    practical and equitable considerations play a large role in a court's decision to grant or deny permissive

3    intervention. *See Spangler v. Pasadena City Bd. Of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).  As such,

4    whether an intervenor's presence would prejudice the parties or delay the litigation, and whether the

5    intervenor would contribute to the development of the facts and the equitable adjudication of the

6    legal questions, are important considerations. *Spangler*, 552 F.2d at 1329 (citation omitted).

7    Ultimately, "the requirements for intervention are broadly interpreted in favor of intervention."

8    *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (cleaned up).

9

10    As stated above, there is no undue delay and intervention will not prejudice any existing party.

11    Importantly, Morton and Ayala submit that they will contribute to the development of the facts and

12    equitable adjudication as to the Federal Government's position regarding incarcerated individuals in

13    the U.S. Territories & Possessions.  This Court should exercise its considerable discretion to permit

14    intervention, which will, in turn, facilitate the orderly resolution of the unique issues Morton's and

15    Ayala's facts present as applied to the CARES Act and the EIP.

16    //

17    //

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28    //

**NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION**

CONCLUSION

**WHERFORE,** based on the foregoing, Morton and Ayala respectfully move this Court to grant the motion in full.

Respectfully Submitted,

By: /s/ Edward M. Robbins, Jr.                          Dated Dec. 11, 2020
Edward M. Robbins, Jr.
California Bar No. 82696
HOCHMAN SALKIN TOSCHER PEREZ, PC
9150 Wilshire Blvd., Suite 300
Beverly Hills, California 90212
310.281.3247 (O)
310.859.5129 (F)
edr@taxlitigator.com

By: /s/Joseph A. DiRuzzo, III                          Dated Dec. 11, 2020
Joseph A. DiRuzzo, III
Fla. Bar No. 0619175
DIRUZZO & COMPANY
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
954.615.1676 (O)
954.827.0340 (F)
jd@diruzzolaw.com

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Notice of with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

By: /s/ Edward M. Robbins, Jr.                          Dated Dec. 11, 2020
Edward M. Robbins, Jr.

15

NOTICE OF MOTION. MOTION FOR LEAVE TO INTERVENE & DECLARATION

1   Edward M. Robbins, Jr.
    HOCHMAN SALKIN TOSCHER PEREZ, PC
2   9150 Wilshire Blvd., Suite 300
    Beverly Hills, California 90212
3   310.281.3247 (O)
    310.859.5129 (F)
4   edr@taxlitigator.com

5   Joseph A. DiRuzzo, III (pro hac vice forthcoming)
    DIRUZZO & COMPANY
6   401 East Las Olas Blvd., Suite 1400
    Ft. Lauderdale, Florida 33301
7   954.615.1676 (O)
    954.827.0340 (F)
8   jd@diruzzolaw.com

9   *Counsel for Jamal A. Morton and Araclis N. Ayala, individually and on behalf of all others similarly situated*

10

11              **IN THE UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**

12   ----------------------------------------------------x
13   COLIN SCHOLL, *et al.*,                    :     Case No. 4:20-cv-5309-PJH
                    Plaintiff,                  :
                                                :     CLASS ACTION COMPLAINT
14                                              :     IN INTERVENTION
     JAMAL A. MORTON and ARACLIS N. AYALA,      :
15   on behalf of themselves and all others     :
     similarly situated,                        :
16                    Intervenors,              :
17            v.                                :
                                                :
18   STEVEN MNUCHIN, *et al.*,                  :
                    Defendants.                 :
19   ----------------------------------------------------x

20           <u>**CLASS ACTION COMPLAINT IN INTERVENTION**</u>

21

22

23

24

25

26

27

28

INTERVENORS, JAMAL A. MORTON and ARACLIS N. AYALA, by and through their undersigned attorneys, allege as follows:

## NATURE OF THE CASE & INTRODUCTION

1.      This case is brought on behalf of persons who have been incarcerated under the custody of the U.S. Territories & Possessions (i.e., the United States Virgin Islands ("USVI"), Guam, the Commonwealth of the Northern Mariana Islands ("CNMI"), Puerto Rico, and American Samoa) at any time from March 27, 2020 to the present ("territorial incarcerated persons" or "territorial incarcerated people") to challenge Defendants' (A) unauthorized and unlawful withholding of funding under Section 2201(c)(1) of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act and (B) imposition of blanket restrictions on all of the U.S. Territories & Possessions restricting CARES Act Trust Fund monies from being used to pay Economic Impact Payments ("EIP"), *see* 26 U.S.C. § 6428, to incarcerated people.

## JURISDICTION, VENUE, & STANDING

2.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702, 28 U.S.C. §§ 1331, 2201, and 2202.

3.      Venue is proper under 28 U.S.C. § 1391 in this Court as at least one of the Defendants resides in this venue.

4.      MORTON has Article III standing as he is being deprived of the EIP that he is statutorily eligible for under 26 U.S.C. § 6428.

5.      AYALA has Article III standing as she is being deprived of the EIP that she is statutorily eligible for under 26 U.S.C. § 6428.

CLASS ACTION COMPLAINT IN INTERVENTION

**THE PARTIES**

6.      MORTON is an American citizen, a USVI resident under 26 U.S.C. §§ 932(c) and 937, and is not claimed as a dependent on anyone else's tax return.  MORTON has been continuously under the custody of the USVI since 2009, and is being held in custody at the Golden Grove Correctional Facility on St. Croix, USVI.  MORTON has yet to receive his EIP from the USVI.

7.      AYALA is an American citizen, a Puerto Rican resident under 26 U.S.C. §§ 933 and 937, and is not claimed as a dependent on anyone else's tax return.  AYALA has been continuously under the custody of the federal government since 2016, and is being held in federal custody by the Bureau of Prisons at MDC Guaynabo on Puerto Rico.  AYALA has yet to receive her EIP from Puerto Rico.

8.      Defendant Steven T. Mnuchin is the Secretary of the Treasury. As such, Defendant Mnuchin exercises full authority to administer and enforce the internal revenue laws and has the power to create an agency to enforce these laws. He is responsible for distributing the EIPs under the CARES Act and, in his official capacity, has unlawfully withheld EIP benefits from incarcerated individuals.

9.      Defendant Charles Rettig is the United States Commissioner of Internal Revenue Service. In that capacity, he administers the application of the internal revenue laws. Defendant Rettig reports to Defendant Mnuchin and, as part of his duties, oversees the issuance of EIP benefits under the CARES Act. In his official capacity, he has unlawfully withheld EIP benefits from incarcerated individuals.

10.     Defendant U.S. Department of the Treasury is an agency of the United States government. The Department of the Treasury is responsible for, among other things, the disbursement of payments to the American public, including under the CARES Act. The U.S. Department of the Treasury has unlawfully withheld EIP benefits from incarcerated individuals.

11.     Defendant U.S. Internal Revenue Service ("IRS") is a bureau of the U.S. Department of the Treasury organized to carry out the responsibilities of the Secretary of the Treasury under 26 U.S.C. § 7801. It was created based on the legislative grant of authority to the Secretary of the Treasury to

CLASS ACTION COMPLAINT IN INTERVENTION

enforce the internal revenue laws. The IRS calculates and sends recovery payments to eligible persons under the CARES Act.

12.     Defendant United States of America is sued through its agencies, the U.S. Department of the Treasury, and U.S. Internal Revenue Service.

**BACKGROUND**

**THE CARES ACT**

13.     Beginning in early 2020, the novel coronavirus pandemic created a severe economic hardship on millions of Americans. To address this economic crisis, Congress passed and President Trump signed into law the CARES Act. *See* Pub. L. 116-136, 134 Stat. 281 (Mar. 27, 2020).

14.     Under the CARES Act, eligible individuals may receive an EIP – a payment of up to $1,200 (or $2,400 in the case of eligible individuals filing a joint return), plus $500 for each qualifying child. 26 U.S.C. § 6428(a). The amount of the credit may be adjusted based on an individual's adjusted gross income. *Id.* § 6428(c).

15.     The CARES Act defines eligibility for an EIP broadly. The statute defines "eligible individual" to include "any individual other than—(1) any non-resident alien individual, (2) any individual with respect to whom a deduction under section 151 is allowable to another taxpayer . . ., and (3) an estate or trust." 26 U.S.C. § 6428(d). Congress did not impose any other status-based limitations on the definition of "eligible individual" under 26 U.S.C. § 6428(d).

16.     The CARES Act applies to the U.S. Territories & Possessions.

17.     Pursuant to the CARES Act, Defendants are required to issue EIP benefits "as rapidly as possible." 26 U.S.C. § 6428(f)(3)(A).

18.     Section 2201(c)(1) of the CARES Act addresses the payments to U.S. Territories & Possessions, and states:

CLASS ACTION COMPLAINT IN INTERVENTION

(A) MIRROR CODE POSSESSION.—The Secretary of the Treasury shall pay to each possession of the United States which has a mirror code tax system amounts equal to the loss (if any) to that possession by reason of the amendments made by this section. Such amounts shall be determined by the Secretary of the Treasury based on information provided by the government of the respective possession.

(B) OTHER POSSESSIONS.—The Secretary of the Treasury shall pay to each possession of the United States which does not have a mirror code tax system amounts estimated by the Secretary of the Treasury as being equal to the aggregate benefits (if any) that would have been provided to residents of such possession by reason of the amendments made by this section if a mirror code tax system had been in effect in such possession. The preceding sentence shall not apply unless the respective possession has a plan, which has been approved by the Secretary of the Treasury, under which such possession will promptly distribute such payments to its residents.

CARES Act, § 2201(c)(1)(A)-(B).

THE IRS'S POSITION ON THE CARES ACT IN THE TERRITORIES & POSSESSION

19.     Per the IRS website, a copy of which is attached hereto as Exhibit 1:

Q A3. If I live in Puerto Rico, the U.S. Virgin Islands, American Samoa, Guam, or the Commonwealth of the Northern Mariana Islands, will I get a payment if I'm eligible? (Updated October 26, 2020)

A3. In many cases, the answer is yes. But special rules in the law apply to these five U.S. territories (possessions). *In general, the tax authorities in each territory will make Payments to eligible residents. If you are a resident of one of these territories with questions about a payment, you should contact your local tax authority.*

Resident of a U.S Territory: If you receive a Payment from the IRS and a U.S territory tax agency and you are a resident of a U.S. territory for the 2020 tax year, please consult with your U.S. territory tax agency concerning information about an incorrect or duplicate Payment.

Not a resident of a U.S. Territory: If you have received a Payment from more than one jurisdiction and you are a not a resident of a U.S. territory for the 2020 tax year, you should return any incorrect or duplicate Payment received from the U.S. territory tax agency to the IRS following the instructions about repayments. Go to Topic I: Returning the Economic Impact Payment for instructions.

https://www.irs.gov/newsroom/economic-impact-payment-information-center-topic-a-eip-eligibility

(last accessed Nov. 21, 2020) (emphasis added).

THE INSTANT CLASS ACTION LITIGATION

20.     On August 8, 2020, a class action complaint was filed against the Federal Government contesting the IRS's position that incarcerated individuals are not eligible for the EIP under the CARES Act.  Docket no. 1.

4

21. Indeed, IRS Chief Counsel Michael J. Desmond provided a declaration in this case, docket no. 44-1 stating that: "incarcerated individuals do not qualify for the advance payments." *Id.* at ¶5.

22. On September 24, 2020, this Court granted the *Scholl* plaintiffs a preliminary injunction and class certification. *Scholl v. Mnuchin*, 2020 WL 5702129 (N.D. Cal. Sept. 24, 2020) ("*Scholl I*"). The *Scholl* class was provisionally certified as:

> All United States citizens and legal permanent residents who:
>
> (a) are or were incarcerated (i.e., confined in a jail, prison, or other penal institution or correctional facility pursuant to their conviction of a criminal offense) in the United States, or have been held to have violated a condition of parole or probation imposed under federal or state law, at any time from March 27, 2020 to the present;
>
> (b) filed a tax return in 2018 or 2019, or were exempt from a filing obligation because they earned an income below $12,000 (or $24,400 if filing jointly) in the respective tax year;
>
> (c) were not claimed as a dependent on another person's tax return; and
>
> (d) filed their taxes with a valid Social Security Number, and, if they claimed qualifying children or filed jointly with another person, those individuals also held a valid Social Security Number.
>
> Excluded from the class are estates and trusts; defendants; the officers, directors, or employees of any defendant agency; and, any judicial officer presiding over this action and his/her immediate family and judicial staff.

*Id.* at *25.

23. On October 14, 2020, this Court entered an order granting in party and denying in part the *Scholl* plaintiffs' motion for summary judgement, denied the Federal Government motion to stay, entered a permanent injunction against the Federal Government, and certified the class for all purposes. *Scholl v. Mnuchin*, 2020 WL 6065059, at *22 (N.D. Cal. Oct. 14, 2020) ("*Scholl II*").

24. The Defendants in this case take the position that the permanent injunction neither applies to the U.S. Territories & Possessions, nor applies to the respective Plans the Defendants have with the U.S. Territories & Possessions.

THE USVI CLASS ACTION LITIGATION

25. On October 27, 2020, counsel for MORTON sent Joel Lee, CPA (the Director of the USVI

5

Bureau of Internal Revenue ("BIR") (i.e., the USVI's version of the IRS)) correspondence seeking clarification as to whether the USVI shares the same view as the IRS regarding the CARES Act in general, and the EIP in particular, as applied to incarcerated individuals.  A copy of the October 27th correspondence is attached as Exhibit 2.

26.     Counsel for MORTON expressed that time was of the essence because the EIP must be issued "as rapidly as possible," 26 U.S.C. § 6428(f)(3), and that "[n]o refund or credit shall be made or allowed under this subsection after December 31, 2020[,]" *id.*  Exhibit 2 at p. 2.

27.     Counsel for MORTON received no response to his October 27th correspondence, and concluded that the USVI took the same position as the Federal Government as to the EIP for incarcerated individuals, i.e., that incarcerated individuals are not eligible.

28.     Consequently, Morton filed suit, *Morton v. USVI, et al.,* case no. 3:20-cv-109 (D.V.I.), attempting to obtain his EIP.  Morton moved for a preliminary injunction, *id.* at docket no. 5, moved to expedite, *id.* at docket no. 8, and moved for summary judgment, *id.* at docket no. 18.

29.     The District Court of the Virgin Islands set a hearing on Morton's preliminary injunction motion for November 24th.  *See id.* at docket nos. 30 & 32.

30.     On November 20th, the USVI filed its opposition (a copy of which is attached hereto as Exhibit 3), attaching the affidavit of Director Joel A. Lee, CPA, in support of the opposition (a copy of which is attached hereto as Exhibit 4.  *Id.* at docket nos. 37 & 37-1.

31.     Importantly, in the *Morton* case, the USVI avers that it "merely serve[s] as an intermediary between eligible Virgin Islands taxpayers on the one hand, and U.S. Treasury on the other. [The USVI] take[s] no position on the eligibility of incarcerated persons. [The USVI] merely distribute[s] the federal funds we have been provided in accordance with the conditions that are provided by the U.S. Treasury." Ex. 3 at p. 2.

32.     An evidentiary hearing was held on November 24, 2002, before the District Court of the

6

Virgin Islands.  At the November 24th hearing, the USVI took the position (and maintains the position) that it cannot pay EIP to incarcerated individuals because the Plan prevents such and that the Defendants have withheld funding from the USVI to issue EIPs to incarcerated individuals.

33.     At the November 24th hearing, Director Joel A. Lee testified that each U.S. Territory and Possession has its own respective "Plan" with the federal government.

34.     A copy of the Defendants' unsigned Plan with the USVI was provided to MORTON's counsel in open court, which the USVI acknowledges is the final plan notwithstanding the fact that it was not signed by any individual representing either the Federal Government or the USVI Government.

CLASS ALLEGATIONS

**U.S. Territories & Possessions Class**

35.     AYALA and MORTON bring this action on behalf of themselves and all others similarly situated (the "U.S. Territories & Possessions Class"), pursuant to Federal Rule of Civil Procedure 23. The U.S. Territories & Possessions Class is defined as follows:

> All residents of the U.S. Territories & Possessions who:
>
> (a) are or were incarcerated (i.e., confined in a jail, prison, or other penal institution or correctional facility pursuant to their conviction of a criminal offense) under the custody and control of the respective Territories and Possessions, or have been held to have violated a condition of parole or probation imposed under federal, state, or territorial law, at any time from March 27, 2020 to the present;
>
> (b) filed a tax return in 2018 or 2019, or were exempt from a filing obligation under applicable territorial/possession law in the respective tax year;
>
> (c) were not claimed as a dependent on another person's tax return; and
>
> (d) filed their taxes with a valid Social Security Number, and, if they claimed qualifying children or filed jointly with another person, those individuals also held a valid Social Security Number.
>
> Excluded from the class are estates and trusts; Defendants; the officers, directors, or employees of any of Defendants' agencies; and, any judicial officer presiding over this action and his/her immediate family and judicial staff.

36.     The exact size of the U.S. Territories & Possessions Class is unknown but, upon information and belief, the number of individuals incarcerated in the U.S. Territories & Possessions is well in

7

CLASS ACTION COMPLAINT IN INTERVENTION

excess of 1000 and could very well be in excess of a ten thousand.  Thus, joinder of that many people is impractical.

37.     There are multiple questions of law and fact common to the class including but not limited to: (A) whether Defendants have unlawfully withheld, delayed, or restricted delivery of Section 2201(c)(1) funding to the U.S. Territories &  Possessions; (B) whether, in turn, the Defendants unlawfully withheld, delayed, or restricted delivery of benefits to Plaintiffs  and the U.S. Territories & Possessions Class; (C) whether Defendants' policy treating incarcerated people as ineligible for EIP benefits based on their incarcerated status is *ultra vires,* contrary to law, in excess of statutory authority, and/or arbitrary and capricious; (D) whether Defendants violated the CARES Act by requiring the U.S. Territories & Possessions to withhold EIP checks from Plaintiffs and the U.S. Territories & Possessions Class based solely on their status as territorial incarcerated people; (E) whether Defendants are liable to the Plaintiffs and the U.S. Territories & Possessions Class for the sum of the EIP benefits to which they are entitled under the CARES Act; (F) whether an unsigned Plan has any legal force and effect; (G) whether the Assistant Secretary for Tax Policy has the authority to sign any Plan; and (H) the remedies to which the Plaintiffs and the U.S. Territories & Possessions Class are entitled.

38.     These and other questions of law and fact are common to the U.S. Territories & Possessions Class, and predominate over any questions affecting only individual members of the sub-Class.

39.     AYALA's and MORTON's respective claims are typical of the U.S. Territories & Possessions Class, as all Class Members challenge Defendants' authority to require the U.S. Territories and Possessions to withhold EIP checks from them on the sole basis of their status as incarcerated people. The answer to this question is the same for all members of the U.S. Territories & Possessions Class. There are no defenses of a unique nature that may be asserted against the Plaintiffs individually, as distinguished from other members of the U.S. Territories & Possessions Class, and the relief sought is common to the U.S. Territories & Possessions Class.

CLASS ACTION COMPLAINT IN INTERVENTION

40.     Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the U.S. Territories & Possessions Class, and the Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation to represent them and the U.S. Territories & Possessions Class.

41.     Certification of the class for injunctive relief is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or would, as a practical matter, be dispositive of the interests of other class members not parties to the individual adjudications, or would otherwise substantially impair or impede their ability to protect their interests. Certification for injunctive and declaratory relief is also appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the whole sub-Class.

42.     Additionally, certification of a class for monetary relief is appropriate under Fed. R. Civ. P. 23(b)(l) and/or 23(b)(2) and/or 23(c)(4) because the common questions of fact and law predominate over questions specific to individual class members. The common questions of law will determine Defendants' liability to every member of the U.S. Territories & Possessions Class. Class-wide treatment of these common issues in a single forum is a superior means of determining Defendants' liability to each U.S. Territories & Possessions Class Member than potentially hundreds if not thousands of other lawsuits. As a result, class-wide adjudication of Defendants' liability is the most efficient means of adjudication.

**Mirror Code Sub-Class**

43.     MORTON brings this action on behalf of himself and all others similarly situated (the "Mirror Code Sub-Class"), pursuant to Federal Rule of Civil Procedure 23. The Mirror Code Sub-Class is defined as follows:

All residents of the U.S. Territories & Possessions in a mirror code jurisdiction who:

CLASS ACTION COMPLAINT IN INTERVENTION

(a) are or were incarcerated (i.e., confined in a jail, prison, or other penal institution or correctional facility pursuant to their conviction of a criminal offense) under the custody and control of the respective Territories and Possessions, or have been held to have violated a condition of parole or probation imposed under federal, state, or territorial law, at any time from March 27, 2020 to the present;

(b) filed a tax return in 2018 or 2019, or were exempt from a filing obligation because they earned an income below $12,000 (or $24,400 if filing jointly) in the respective tax year;

(c) were not claimed as a dependent on another person's tax return; and

(d) filed their taxes with a valid Social Security Number, and, if they claimed qualifying children or filed jointly with another person, those individuals also held a valid Social Security Number.

Excluded from the class are estates and trusts; Defendants; the officers, directors, or employees of any of Defendants' agencies; and, any judicial officer presiding over this action and his/her immediate family and judicial staff.

44. The exact size of the Mirror Code Sub-Class is unknown but, upon information and belief, the number of individuals incarcerated in the U.S. Territories & Possessions in mirror code jurisdictions is well in excess of 250 and could very well be in excess of a five hundred. Thus, joinder of that many people is impractical.

45. There are discrete questions of law and fact common to the Mirror Code Sub-Class including but not limited to: (A) whether Defendants have lawfully imposed a Plan under Section 2201(c)(1)(B) on mirror code jurisdictions; and (B) whether the Defendants can lawfully restrict funding under Section 2201(c)(1) on the execution of a Plan under purported authority of Section 2201(c)(1)(B) to mirror code jurisdictions governed by Section 2201(c)(1)(A).

46. These and other questions of law and fact are common to the Mirror Code Sub-Class and predominate over any questions affecting only individual members of the Mirror Code Sub-Class.

47. MORTON's claims are typical of the Mirror Code Sub-Class, as all Mirror Code Sub-Class Members challenge Defendants' authority to impose a Plan under Section 2201(c)(1)(B) on mirror code jurisdictions and whether the purported Plan has any legal force and effect. There are no defenses of a unique nature that may be asserted against MORTON individually, as distinguished from other

members of the Mirror Code Sub-Class, and the relief sought is common to the Mirror Code Sub-Class.

48.     MORTON will fairly and adequately protect the interests of the members of the Mirror Code Sub-Class.   MORTON's interests are aligned with, and not antagonistic to, those of the other members of the Mirror Code Sub-Class, and MORTON has retained counsel competent and experienced in the prosecution of class action tax litigation to represent himself and the Mirror Code Sub-Class.

49.     Certification of the class for injunctive relief is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or would, as a practical matter, be dispositive of the interests of other class members not parties to the individual adjudications, or would otherwise substantially impair or impede their ability to protect their interests. Certification for injunctive and declaratory relief is also appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the whole sub-Class.

50.     Additionally, certification of a class for monetary relief is appropriate under Fed. R. Civ. P. 23(b)(l) and/or 23(b)(2) and/or 23(c)(4) because the common questions of fact and law predominate over questions specific to individual class members. The common questions of law will determine Defendants' liability to every member of the Mirror Code Sub-Class. Class-wide treatment of these common issues in a single forum is a superior means of determining Defendants' liability to each Mirror Code Sub-Class Member than potentially hundreds of other lawsuits. As a result, class-wide adjudication of Defendants' liability is the most efficient means of adjudication.

CLASS ACTION COMPLAINT IN INTERVENTION

# CLAIMS FOR RELIEF

## COUNT 1
**Defendants' Policy of Conditioning Funding of Section 2201(c)(1) of the CARES Act on Incarcerated Status is *Ultra Vires,* Contrary to Law, in Excess of Statutory Authority, and is Arbitrary & Capricious (Administrative Procedure Act ("APA") violation, 5 U.S.C. §§ 702 & 706(2))**

51.     Paragraphs 1 through 50 are realleged and incorporated herein.

52.     MORTON, AYALA, and the U.S. Territories & Possessions Class are all eligible for EIP benefits pursuant to the CARES Act because they meet the statutory requirements.

53.     Defendants' policy of conditioning/restricting funding under Section 2201(c)(1) of the CARES Act (and, in turn, requiring the respective U.S. Territories & Possessions to withhold EIP benefits from territorial incarcerated persons based solely on their incarcerated status) exceeds Defendants' statutory authority under the Section 2201(c)(1) of the CARES Act, which is *ultra vires,* contrary to law, arbitrary and capricious, or otherwise unlawful within the meaning of the APA, 5 U.S.C. § 706(2).

54.     Defendants' policy of treating territorial incarcerated people differently from incarcerated people in the Several States violates the Uniformity Clause, *viz.* U.S. Const. Art. I, § 8, cl. 1, and is *ultra vires,* contrary to law, arbitrary and capricious, or otherwise unlawful within the meaning of the APA, 5 U.S.C. § 706(2).

55.     Defendants' policy of treating territorial incarcerated people differently from incarcerated people in the Several States violates the Due Process Clause of the Fifth Amendment, *see Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *U.S. Dep't of Agric. v. Moreno,* 413 U.S. 528, 533 (1973), and is *ultra vires,* contrary to law, arbitrary and capricious, or otherwise unlawful within the meaning of the APA, 5 U.S.C. § 706(2).

56.     Defendants' policy of conditioning/restricting funding under Section 2201(c)(1) of the CARES Act (and, in turn, requiring the respective U.S. Territories & Possessions to withhold EIP

CLASS ACTION COMPLAINT IN INTERVENTION

benefits from territorial incarcerated persons based solely on their incarcerated status) must be held to be unlawful and set aside under 5 U.S.C. § 706(2).

57.     MORTON, AYALA, and the U.S. Territories & Possessions Class have been aggrieved by Defendants' policy of conditioning/restricting funding under Section 2201(c)(1) of the CARES Act (and requiring the respective U.S. Territories & Possessions to withhold EIP benefits from territorial incarcerated persons based solely on their incarcerated status) because they have been denied a statutory benefit to which they are otherwise entitled.

58.     Defendants' refusal to authorize EIP benefits under the terms of the respective "Plans" to territorial incarcerated persons reflects Defendants' final, considered position, as evidenced by, among other things, the attached affidavit of Joel Lee.  Ex. 4.  This policy embodied in the respective Plans constitutes final administrative action under 5 U.S.C. § 704.

59.     Based on the foregoing allegations, MORTON, AYALA, and the U.S. Territories & Possessions Class seek monetary relief in an amount equal to each U.S. Territories & Possessions Class Member's benefit under the CARES Act and an order compelling Defendants to cause their agents to issue EIP benefits to MORTON, AYALA, and U.S. Territories & Possessions Class.

60.     In the alternative, based on the foregoing violations, MORTON, AYALA, and the U.S. Territories & Possessions Class request injunctive relief ordering Defendants to (1) remove any condition from the respective "Plans" that condition funding under Section 2201(c)(1) of the CARES Act based on incarcerated status, and (2) withdraw any statements/directives/orders, etc. (including but not limited to statements/directives/orders made to the respective U.S. Territories & Possession) which direct that incarcerated individuals are not entitled to CARES Act funds.

**COUNT 2**
**Declaration that Defendants' Actions Violate the Due Process Clause and the Uniformity Clause of the U.S. Constitution (as applied challenge)**

61.     Paragraphs 1 through 50 are realleged and incorporated herein.

13

62.     MORTON, AYALA, and the U.S. Territories & Possessions Class are eligible for EIP benefits pursuant to the CARES Act because they meet the statutory requirements.

63.     Defendants' policy of conditioning/restricting funding under Section 2201(c)(1) of the CARES Act (and, in turn, requiring the respective U.S. Territories & Possessions to withhold EIP benefits from territorial incarcerated persons based solely on their incarcerated status) exceeds Defendants' statutory authority under both Section 2201(c)(1) of the CARES Act, which deprives MORTON, AYALA, and the U.S. Territories & Possessions Class of due process of law (and specifically of equal protection) by creating a *de facto* legislative classification that the Defendants lacked the authority to create, i.e., which is *ultra vires.*

64.     Defendants' policy of conditioning/restricting funding under Section 2201(c)(1) of the CARES Act and, in turn, requiring the respective U.S. Territories & Possessions to withhold EIP benefits from territorial incarcerated persons based solely on their incarcerated status exceeds Defendants' statutory authority under the Section 2201(c)(1) of the CARES Act, which deprives MORTON, AYALA, and U.S. Territories & Possessions Class of their rights under the U.S. Constitution and is prohibited by the Uniformity Clause by causing taxes (i.e. Section 2201 of the CARES Act) to apply in a non-uniform manner throughout the United States of America.

65.     Based on the foregoing allegations, MORTON, AYALA, and the U.S. Territories & Possessions Class seek a declaration that  (1) Defendants' policy of conditioning/restricting funding under Section 2201(c)(1) of the CARES Act and, in turn, requiring the respective U.S. Territories & Possessions to withhold EIP benefits from territorial incarcerated persons based solely on their incarcerated status exceeds Defendants' statutory authority under the Section 2201(c)(1) of the CARES Act; (2) Defendants' policy violates the Uniformity Clause; (3) Defendants' policy violates the Due Process Clause.

CLASS ACTION COMPLAINT IN INTERVENTION

**COUNT 3**
**Declaration that Respective Plans Have No Legal Force & Effect**

66.     Paragraphs 1 through 50 are realleged and incorporated herein.

67.     Assuming that Section 2201(c)(1)(B) of the CARES Act applies in the first instance to the respective U.S. Territory & Possessions (a point MORTON, AYALA, and the U.S. Territories & Possessions Class contest regarding the USVI, Guam, and CNMI, i.e. mirror code jurisdictions, *see* Count 4 *infra*), Section 2201(c)(1)(B) does not allow for the delegation of authority from the Secretary of the Treasury.

68.     Accordingly, absent a statutory grant of authority by Congress to the Secretary of the Treasury to delegate the Secretary of the Treasury's authority, the only person that could enter into the Plan is the Secretary of the Treasury, at all times relevant, Steven Mnuchin.

69.     A cursory review of the Plan purportedly entered into with the USVI indicates that it was purportedly approved by David J. Kautter, the Assistant Secretary of Tax Policy.  Mr. Kautter is not the Secretary of the Treasury; thus, he lacked the authority under Section 2201(c)(1)(B) to enter into the Plan, and the Plan is a legal nullity.

70.     Because Kautter lacked authority under Section 2201(c)(1)(B) he cannot bind the Federal Government.

71.     Assuming one could read into Section 2201(c)(1)(B) a delegation provision (a point MORTON, AYALA, and the U.S. Territories & Possessions Class contest), 26 C.F.R. § 301.7701-9 requires the delegation to be "duly authorized by the Secretary (directly, or indirectly by one or more redelegations of authority)[.]"  Here there was no delegation.

72.     Of the publicly available Treasury Orders, *see* https://www.treasury.gov/about/role-of-treasury/orders-directives/Pages/orders-numeric.aspx, only two are to the Assistant Secretary of Tax

CLASS ACTION COMPLAINT IN INTERVENTION

Policy, to wit:  Orders 111-01 & 111-02.[1]  A copy of Order 111-01 is attached as Exhibit 5; Order 111-02 is attached as Exhibit 6.

73.   Neither Order 111-01 nor Order 111-02 address the CARES Act, nor the ability of the Assistant Secretary of Tax Policy to enter into a "Plan" with the U.S. Territories & Possessions.  Thus, there was no delegation that authorized the Assistant Secretary of Tax Policy to "sign" any Plan.

74.   Because Kautter lacked delegated authority to "sign" any Plan, he cannot bind the Federal Government.

75.   Additionally, because a governmental document must be signed by a person with sufficient legal authority to execute the document, the failure to sign the document renders it a legal nullity.

76.   Based on the foregoing allegations, MORTON, AYALA, and the U.S. Territories & Possessions Class seek a declaration that (1) any Plan entered into with a U.S. Territory or Possession that is not signed by Secretary of the Treasury Steven Mnuchin is a legal nullity that has no force and effect; (2) any Plan entered into with a U.S. Territory or Possession that is signed by David J. Kautter, the Assistant Secretary of Tax Policy, is a legal nullity that has no force and effect; and (3) any Plan entered into with a U.S. Territory or Possession that is not "signed" is a legal nullity that has no force and effect.

### COUNT 4

**Defendants' Policy of Imposing a Plan under purported authority of Section 2201(c)(1)(B) on Mirror Code Jurisdictions is *Ultra Vires,* Contrary to Law, in Excess of Statutory Authority, and Arbitrary & Capricious (APA violation, 5 U.S.C. §§ 702 & 706(2))**

77.   Paragraphs 1 through 50 are realleged and incorporated herein.

78.   MORTON and the Mirror Code Sub-Class are all eligible for EIP benefits pursuant to the CARES Act, 26 U.S.C. § 6428 (as mirrored), because they meet the statutory requirements.

79.   Defendants' policy of conditioning/restricting funding under Section 2201(c)(1) of the

---

[1] *Available at* https://www.treasury.gov/about/role-of-treasury/orders-directives/Pages/to111-01.aspx; https://www.treasury.gov/about/role-of-treasury/orders-directives/Pages/to111-02.aspx.

CLASS ACTION COMPLAINT IN INTERVENTION

CARES Act on the execution of a Plan under Section 2201(c)(1)(B) by mirror code jurisdictions (for which there is no requirement of a Plan under Section 2201(c)(1)(A)) exceeds Defendants' statutory authority under Section 2201(c)(1) of the CARES Act (i.e., there is no statutory authority to enter into a Plan), which is *ultra vires,* contrary to law, arbitrary and capricious, or otherwise unlawful within the meaning of the APA, 5 U.S.C. § 706(2).

80.     The respective Plans entered into with mirror code jurisdictions must be held to be unlawful and set aside under 5 U.S.C. § 706(2).

81.     MORTON and the Mirror Code Sub-Class have been aggrieved by Defendants' policy of conditioning funding under Section 2201(c)(1) of the CARES Act with the execution of a Plan under Section 2201(c)(1)(B) for mirror code jurisdictions, because absent a Plan there would be nothing to restrict the respective U.S. Territories & Possessions from issuing EIP benefits to territorial incarcerated persons based solely on their incarcerated status.

82.     The conditions imposed by the Defendants in the respective "Plans" constitutes final administrative action under 5 U.S.C. § 704.

83.     Based on the foregoing allegations, MORTON and the Mirror Code Sub-Class seek monetary relief in an amount equal to each Mirror Code Sub-Class Member's benefit under the CARES Act and an order compelling Defendants to cause their agents to issue EIP benefits to MORTON and the Mirror Code Sub-Class.

84.     In the alternative, based on the foregoing violations, MORTON and the Mirror Code Sub-Class request injunctive relief ordering Defendants to (a) vacate/annul any Plan with a U.S. Territory or Possession that uses a mirror code, and (b) provide funding to mirror code jurisdictions under Section 2201(c)(1)(A) without restrictions.

CLASS ACTION COMPLAINT IN INTERVENTION

1   **PRAYER FOR RELIEF**

2       **WHEREFORE**, the Plaintiffs pray that this Court:

3   A.      Certify the proposed U.S. Territories & Possessions Class, appoint AYALA and MORTON

4   as class co-representatives, and appoint their counsel to represent the U.S. Territories & Possessions

5

6   Class.

7   B.      Certify the proposed Mirror Code Sub-Class, appoint MORTON as sub-class representative,

8   and appoint his counsel to represent the Mirror Code Sub-Class.

9   C.      Award damages to AYALA and MORTON and the U.S. Territories & Possessions Class in

10  the amount of each individual's entitlement under the CARES Act and enter judgment against

11
    Defendants in favor of AYALA and MORTON and the U.S. Territories & Possessions Class.
12

13  D.      Award damages to MORTON and the Mirror Code Sub-Class in the amount of each

14  individual's entitlement under the CARES Act and enter judgment against Defendants in favor of

15  MORTON and the Mirror Code Sub-Class.

16
    E.      Order/enjoin Defendants to (1) remove any provision from the respective "Plans" that
17

18  conditions funding under Section 2201(c)(1) of the CARES Act based on incarcerated status, (2)

19  withdraw    any    statements/directives/orders,   etc.   (including   but   not   limited   to

20  statements/directives/orders made to the respective U.S. Territories & Possession) which direct that

21
    incarcerated individuals are not entitled to CARES Act funds, and (3) immediately authorize the U.S.
22
    Territories & Possessions to issue EIP benefits to all territorial incarcerated persons under the custody
23
24  of the respective U.S. Territories & Possessions without regard to their incarcerated status.

25  F.      Declare that the policy that territorial incarcerated people are not eligible to receive the EIP is

26  (1) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law;  (2)

27
    contrary to constitutional right, power, privilege, or immunity; or (3) *ultra vires,* in excess of statutory
28
    jurisdiction, authority, or limitations, or short of statutory right.

18

G.      Set aside the policy that territorial incarcerated people are not eligible to receive the EIP as being (1) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; or (3) *ultra vires*, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

H.      Declare that Defendants have violated AYALA's, MORTON's, and the U.S. Territories & Possessions Class Members' respective rights under the Due Process Clause, the Uniformity Clause, and/or the CARES Act.

I.      Declare that: (1) any Plan entered into with a U.S. Territory or Possession that is not signed by Secretary of the Treasury Steven Mnuchin is a legal nullity that has no force and effect; (2) any Plan entered into with a U.S. Territory or Possession that is signed by David J. Kautter, the Assistant Secretary of Tax Policy, is a legal nullity that has no force and effect; and (3) any Plan entered into with a U.S. Territory or Possession that is not "signed" is a legal nullity that has no force and effect.

J.      Declare that any Plan issued under the purported authority of Section 2201(c)(1)(B) by a mirror code jurisdiction is *ultra vires* and a legal nullity, which has no legal force and effect.

K.      Declare that funding under Section 2201(c)(1)(A) cannot be conditioned upon the execution of a Plan under Section 2201(c)(1)(B) and order the Defendants to provide funding to mirror code jurisdictions under Section 2201(c)(1)(A) without restrictions.

L.      Award Plaintiffs, the Class, and the Sub-Class reasonable attorneys' fees and costs of suit, as well as pre-judgment and post-judgment interest as permitted by law.  And,

M.      Grant such additional and further relief as the Court deems proper and just.

//

//

//

//

CLASS ACTION COMPLAINT IN INTERVENTION

Respectfully Submitted,

By: _____                          Dated Dec. __, 2020
Edward M. Robbins, Jr.
California Bar No. 82696
HOCHMAN SALKIN TOSCHER PEREZ, PC
9150 Wilshire Blvd., Suite 300
Beverly Hills, California 90212
310.281.3247 (O)
310.859.5129 (F)
edr@taxlitigator.com


By: _____                          Dated Dec. __, 2020
Joseph A. DiRuzzo, III
Fla. Bar No. 0619175
DIRUZZO & COMPANY
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
954.615.1676 (O)
954.827.0340 (F)
jd@diruzzolaw.com


**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Notice of with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record. Additionally, a paper copy of the foregoing is provided via USPS to:


By: _____                          Dated Dec. __, 2020
Edward M. Robbins, Jr.

CLASS ACTION COMPLAINT IN INTERVENTION

1   Edward M. Robbins, Jr.
    HOCHMAN SALKIN TOSCHER PEREZ, PC
2   9150 Wilshire Blvd., Suite 300
    Beverly Hills, California 90212
3   310.281.3247 (O)
    310.859.5129 (F)
4   edr@taxlitigator.com

5   Joseph A. DiRuzzo, III (pro hac vice forth coming)
    DIRUZZO & COMPANY
6   401 East Las Olas Blvd., Suite 1400
    Ft. Lauderdale, Florida 33301
7   954.615.1676 (O)
    954.827.0340 (F)
8   jd@diruzzolaw.com

9   *Counsel for Jamal A. Morton and Araclis N. Ayala, individually and on behalf of all others similarly situated*

10

11              **IN THE UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**

12   -------------------------------------------------------x
13   COLIN SCHOLL, *et al.*,                    :      Case No. 4:20-cv-5309-PJH
                    Plaintiff,                  :
                                                :      NOTICE OF MOTION &
14   JAMAL A. MORTON and ARACLIS N. AYALA,      :      MOTION FOR CIVIL CONTEMPT
15   on behalf of themselves and all others     :
     similarly situated,                        :
16                  Intervenors,                :
17          v.                                  :
                                                :      Hr'g Date:    TBD
18   STEVEN MNUCHIN, *et al.*,                  :      Hr'g Time:    TBD
                    Defendants.                 :      Judge:  Hon. Phyllis J. Hamilton
19   -------------------------------------------------------x

20

21              **NOTICE OF MOTION & MOTION FOR CIVIL CONTEMPT**

22

23

24

25

26

27

28

─────────────────────────────────────────────
**NOTICE OF MOTION & MOTION FOR CIVIL CONTEMPT**

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE** that Pursuant to Local Rule 7-1(b), JAMAL A. MORTON and

3  ARACLIS N. AYALA, individually and on behalf of all others similarly situated, respectfully move,

4  without oral argument, to hold the named Defendants and agents thereof (including but not limited

5  to the United States Virgin Islands (the "USVI")) in civil contempt for willfully disobeying this Court's

6  October 14, 2020 order. Alternatively, Morton and Ayala notice that on _____, 2020, at

7  9:00 a.m., before the Hon. Chief District Judge Phyllis J. Hamilton, Oakland Courthouse, Courtroom

8  3 – 3rd Floor, 1301 Clay Street, Oakland, CA 94612, or as soon thereafter as the Court may order,

9  Morton and Ayala will and do hereby move for the same relief.

10

11    This motion is based on the supporting memorandum below; the accompanying Affidavit of

12  the USVI Bureau of Internal Revenue ("BIR") Director Joel A. Lee, CPA, the position taken by the

13  USVI in *Morton v. USVI, et al.,* case no. 3:20-cv-109 (D.V.I.), any further papers filed in support of this

14  motion, the argument of counsel, and all pleadings and records on file in this matter.

15    Intervenors Jamal A. Morton and Araclis N. Ayala, individually and on behalf of all others

16  similarly situated, respectfully submit this Memorandum in support of their Motion for Civil

17  Contempt Against Defendants Steven Mnuchin, Charles Rettig, the U.S. Department of the Treasury,

18  the Internal Revenue Service, and the United States of America (collectively, the "Federal

19  Government") and agents thereof (i.e., the U.S. Territories & Possessions including, but not limited

20  to, the heads of the respective local taxation authorities that are facilitating the Federal Government's

21  willful disobedience of this Court October 14th injunction).

22

23

24

25

26

27

28

**NOTICE OF MOTION & MOTION FOR CIVIL CONTEMPT**

1

2

<u>**MEMORANDUM IN SUPPORT**</u>

**INTRODUCTION**

3

4

5

6

7

8

9

10

11

12

13

Since this Court entered its October 14th permanent injunction against the Federal Government it has appeared, from the face of the injunction order and the related moving papers of the Plaintiffs and the Defendants, that the Court's October 14th injunction applied to the United States of America (i.e., everywhere under the American flag) and not merely the "United States" as legal term of art, *see* 26 U.S.C. § 7701(a)(9) (defining that the "[t]erm 'United States' when used in a geographical sense includes only the States and the District of Columbia."). Thus, October 14th injunction applies to the Federal Government's actions including, by necessary extension under Fed. R. Civ. P. 65(d)(2), actions by the Federal Government's agents (i.e., the U.S. Territories & Possessions that are complying with their respective Plans).

14

15

16

17

18

19

If the Intervenors are correct (and they believe that the text of the October 14th order taken together with the procedural history of this case demonstrates that they are), then the Federal Government's actions in continuing to instruct the U.S. Territories & Possessions to deny the Economic Impact Payment ("EIP") to incarcerated individuals violates this Court's permanent injunction.

20

21

22

23

24

Further, the Federal Government's continued instance of imposing the condition, that funding under Section 2201(c)(1) of the CARES Act will be withheld from the U.S. Territories & Possessions if the U.S. Territories & Possessions issue the EIP to incarcerated individuals, likewise violates this Court's permanent injunction.

25

26

The Court should exercise its considerable discretion and hold the Federal Government in contempt.

27

28

**NOTICE OF MOTION & MOTION FOR CIVIL CONTEMPT**

1

BACKGROUND

2

**I.**     **THE INSTANT CASE**

3

4

On August 8, 2020, a class action complaint was filed against the Federal Government

5

contesting the IRS's position that incarcerated individuals are not eligible for the EIP under the

6

CARES Act.   Indeed, IRS Chief Counsel Michael J. Desmond provided a declaration in this case,

7

docket no. 44-1, stating that: "incarcerated individuals do not qualify for the advance payments."  *Id.*

8

at ¶5.

9

10

On September 24, 2020, this Court granted the *Scholl* plaintiffs a preliminary injunction and

11

class certification.  *Scholl v. Mnuchin*, 2020 WL 5702129 (N.D. Cal. Sept. 24, 2020) ("*Scholl I*").   On

12

October 14, 2020, this Court entered an order granting in part and denying in part the *Scholl*

13

plaintiffs' motion for summary judgement, entered a permanent injunction against the Federal

14

Government, and certified the class for all purposes.  *Scholl v. Mnuchin*, 2020 WL 6065059, at *22

15

(N.D. Cal. Oct. 14, 2020) ("*Scholl II*").

16

17

The Federal Government appealed this case to the Ninth Circuit, and moved the Ninth

18

Circuit for an order staying the District Court's decision pending appeal. *See* Ninth Cir. case no. 20-

19

17077. The Ninth Circuit denied the motion to stay, concluding that the Federal Government had

20

not "demonstrated a sufficient likelihood of success on appeal to warrant a stay."  *Scholl, et al. v.*

21

*Mnuchin, et al.*, case no. 20-17077 at ECF No. 9.

22

23

Consequently, the injunction remains in place and is fully operative against the Federal

24

Government and its agents, servants, and persons in active concert with the named defendants.  *See*

25

Fed. R. Civ. P. 65(d) (detailing persons to be bound by injunction order).

26

27

28

3

**II.       TAXATION IN THE UNITED STATES TERRITORIES & POSSESSIONS**

**A.       The Internal Revenue Code**

The Internal Revenue Code has specific provisions addressing United States taxpayers who reside and have income "sourced" in the Territories and Possessions.  For example, 26 U.S.C. § 937 addresses residency and sourcing rules regarding the Territories and Possessions.  26 U.S.C. § 932(c) requires that USVI residents file their income tax return with, and pay their tax liability to the USVI.  26 U.S.C. § 933 addresses bona fide residents of Puerto Rico, requiring the filing of an income tax return with the Puerto Rican tax authority for U.S. citizens residing in Puerto Rico who only received income from sources within Puerto Rico.  *See generally*, IRS Pub. 1321.  *Available at* https://www.irs.gov/pub/irs-pdf/p1321.pdf (last accessed 11/21/20).

**B.       Taxation in the U.S. Territories & Possessions**

**1.       The USVI**

The Naval Service Appropriations Act of 1921, codified at 48 U.S.C. § 1397, provides: "[t]he income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands."  "This statutory scheme is known as the 'mirror code,' under which the Internal Revenue Code is applied to the Virgin Islands merely by substituting 'Virgin Islands' for 'United States' throughout."  *Vento v. Dir. of Virgin Islands Bureau of Internal Revenue*, 715 F.3d 455, 465 (3d Cir. 2013).  Thus, a USVI taxpayer may "not be required to pay taxes to the federal government, so long as she files a territorial tax return that fully reports her income and then fully pays her territorial taxes to the [USVI]."  *Cooper v. Comm'r*, 718 F.3d 216, 219 (3d Cir. 2013).

**2.       Guam & the Commonwealth of the Northern Mariana Islands ("CNMI")**

Similar to the USVI,

1
2
3
4

> the Internal Revenue Code applies in both Guam and the Marianas through a "mirror image" system under which each jurisdiction administers and collects its own taxes. Citizens or residents of either jurisdiction are required to file only one income tax return. Under these "mirroring" provisions, either Guam or CNMI is to be substituted wherever "United States" appears in the Internal Revenue Code, unless such substitution would be "manifestly incompatible" with the Code or Covenant.

*Holmes v. Dir. of the Dep't of Revenue & Taxation, Gov't of Guam*, 937 F.2d 481, 483–84 (9th Cir. 1991)

5

6

(cleaned up). *See also Sayre & Co. v. Riddell*, 395 F.2d 407, 412 (9th Cir. 1968) ("The general conclusion

7

that we draw … is that Congress intended that Guam should apply the Internal Revenue Code … just

8

as the United States applies the Code to persons and income within its territory."). Consequently,

9

"Guam residents do not pay any income tax to the U.S. federal government; instead, they pay a

10

11

territorial income tax to the government of Guam." *Gumataotao v. Dir. of Dep't of Revenue & Taxation*,

12

236 F.3d 1077, 1079 (9th Cir. 2001).

13

### 3.    Puerto Rico

14

While Puerto Ricans pay most of their income taxes to the local tax authority, *see* 26 U.S.C. §

15

933, *supra*, the still pay their federal income taxes to the IRS "on income from sources outside Puerto

16

17

Rico for which they are liable under the Internal Revenue Code, the regular payment of federal

18

income taxes by all federal employees in Puerto Rico, as well as the full Social Security, Medicare, and

19

Unemployment Compensation taxes[.]" *United States v. Vaello-Madero* (1st Cir. 2020) (cleaned up).

20

## III.    THE CARES ACT IN THE TERRITORIES & POSSESSIONS

21

### A.    Section 2201 of the CARES Act

22

Section 2201(c)(1) addresses the payments to U.S. Possessions, and states:

23
24
25
26

> (A) MIRROR CODE POSSESSION.—The Secretary of the Treasury shall pay to each possession of the United States which has a mirror code tax system amounts equal to the loss (if any) to that possession by reason of the amendments made by this section. Such amounts shall be determined by the Secretary of the Treasury based on information provided by the government of the respective possession.

27
28

> (B) OTHER POSSESSIONS.—The Secretary of the Treasury shall pay to each possession of the United States which does not have a mirror code tax system amounts estimated by the Secretary of the Treasury as being equal to the aggregate benefits (if any) that would have been provided to residents of such possession by reason of the amendments made by this section if a mirror

5

1  code tax system had been in effect in such possession. The preceding sentence shall
   not apply unless the respective possession has a plan, which has been approved by the
2  Secretary of the Treasury, under which such possession will promptly distribute such
   payments to its residents.

3  CARES Act, § 2201(c)(1)(A)-(B).

4
5  **B.      The IRS's Position on the CARES Act in the Territories & Possessions**

6  Per the IRS website:

7          Q A3. If I live in Puerto Rico, the U.S. Virgin Islands, American Samoa,
   Guam, or the Commonwealth of the Northern Mariana Islands, will I get a payment
8  if I'm eligible? (Updated October 26, 2020)
           A3. In many cases, the answer is yes. But special rules in the law apply to these
9  five U.S. territories (possessions). *In general, the tax authorities in each territory will make
   Payments to eligible residents. If you are a resident of one of these territories with questions about*
10 *a payment, you should contact your local tax authority.*
           Resident of a U.S Territory: If you receive a Payment from the IRS and a U.S
11 territory tax agency and you are a resident of a U.S. territory for the 2020 tax year,
   please consult with your U.S. territory tax agency concerning information about an
12 incorrect or duplicate Payment.
           Not a resident of a U.S. Territory: If you have received a Payment from more
13 than one jurisdiction and you are a not a resident of a U.S. territory for the 2020 tax
   year, you should return any incorrect or duplicate Payment received from the U.S.
14 territory tax agency to the IRS following the instructions about repayments. Go to
   Topic I: Returning the Economic Impact Payment for instructions.

15 https://www.irs.gov/newsroom/economic-impact-payment-information-center-topic-a-eip-eligibility

16
17 (last accessed Nov. 21, 2020) (emphasis added), (attached hereto as Exhibit 1).

18 **IV.      THE USVI CLASS ACTION LITIGATION**

19         On October 27, 2020, counsel for Morton sent the Director of the USVI BIR correspondence

20 seeking clarification as to whether the BIR shared the same view as the IRS regarding whether the

21 CARES Act in general, and the EIP in particular, applied to incarcerated individuals. Attached hereto

22 as Exhibit 2.  Counsel for Morton expressed that time was of the essence because the EIP must be

23 issued "as rapidly as possible," 26 U.S.C. § 6428(f)(3), and that "[n]o refund or credit shall be made

24
25 or allowed under this subsection after December 31, 2020[,]" *id.*  Exhibit 2 at p. 2.

26         Counsel for Morton received no response to his October 27th correspondence and concluded

27 that the USVI government took the same position as the Federal Government as to the EIP for

28 incarcerated individuals, i.e., that they are not eligible.

6

1    Consequently, Morton filed suit, *Morton v. USVI, et al.*, case no. 3:20-cv-109 (D.V.I.),

2    attempting to obtain his EIP.  Morton moved for a preliminary injunction, *id.* at docket no. 5, moved

3    to expedite, *id.* at docket no. 8, and moved for summary judgment, *id.* at docket no. 18.  The District

4    Court of the Virgin Islands set a hearing on Morton's preliminary injunction motion for November

5    24th.  *See id.* at docket nos. 30 & 32.

6

7    On November 20th, the USVI filed its opposition (a copy of which is attached hereto as Exhibit

8    3), and attached the affidavit of Director Joel A. Lee, CPA, in support of the opposition (a copy of

9    which is attached hereto as Exhibit 4.  *Id.* at docket nos. 37 & 37-1.

10

11   Importantly, in the *Morton* case, the USVI avers that it "merely serve[s] as an intermediary

12   between eligible Virgin Islands taxpayers on the one hand, and U.S. Treasury on the other. [The

13   USVI] take[s] no position on the eligibility of incarcerated persons. [The USVI] merely distribute[s]

14   the federal funds we have been provided in accordance with the conditions that are provided by the

15   U.S. Treasury."  Ex. 3 at p. 2.

16

17   **V.    TREASURY'S "PLAN" WITH THE USVI**

18   As detailed in the sworn statement by Director Lee, "the United States Treasury Department

19   has advanced federal funds to the USVI BIR to be used to pay the advanced EIPs pursuant to an EIP

20   Implementation Plan (the "Plan"). Treasury considers the Plan confidential and prohibits its

21   disclosure." Lee Aff. at ¶6.[1]  The USVI "holds these federal CARES Act funds in trust, pursuant to

22   the Plan authorized by the United States Treasury Department."  *Id.* at ¶7.  "[T]he Plan imposes

23   restrictions upon the USVI BIR's use of the CARES Act Trust Fund monies."  *Id.* at ¶8.  "[O]ne of

24   the Plan restrictions is that *CARES Act Trust Fund monies cannot be used to pay EIPs to incarcerated*

25   *persons.*"  *Id.* at ¶9 (emphasis added).  "[T]he Plan also restricts the USVI BIR's expenditures of CARES

26

27

28   _____

[1] Morton has moved to unseal the Plan.  *See Morton v. USVI, et al.*, case no. 3:20-cv-109
(D.V.I.) at docket no. 49.

7

**NOTICE OF MOTION & MOTION FOR CIVIL CONTEMPT**

Act Trust Fund monies insofar as no EIPs can be remitted from the CARES Act Trust Fund unless it is are [sic] based on a tax return filed by the taxpayer." *Id.* at ¶10. "[T]he USVI BIR has not interpreted the CARES Act with respect to eligibility. Instead, EIPs are remitted *solely in conformance with the limitations placed on the funds provided by the United States Treasury Department.*" *Id.* at ¶12 (emphasis added).

APPLICABLE LAW

"[A] district court has the inherent power to enforce its orders." *Nikko Materials USA, Inc. v. R.E. Serv. Co., Inc.*, 2006 WL 1749550 at *2 (N.D. Cal. June 22, 2006); *see also Spallone v. United States*, 493 U.S. 265, 276 (1990). This power is derived "not only from statute, 18 U.S.C. § 401, but more broadly from the implied powers 'necessarily vested in courts to manage their own affairs as to achieve the orderly and expeditious disposition of cases.'" *Nikko Materials USA*, 2006 WL 1749550 at *2 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).

To that end, district courts have the inherent power to enforce their orders through civil contempt. *Spallone*, 493 U.S. at 276; *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008). "Civil contempt ... consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)); *see also In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) ("A person fails to act as ordered by the court when he fails to take all the reasonable steps within his power to insure compliance with the court's order.") (cleaned up). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video*, 10 F.3d at 695 (citing *In re Crystal Palace*, 817 F.2d at 1365).

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Civil contempt sanctions ... are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). "Generally, the minimum sanction necessary to obtain compliance is to be imposed." *Id.* (citations omitted). "Unlike the punitive nature of criminal sanctions, civil sanctions are wholly remedial." *Id.* (citation omitted). "A court has wide latitude in determining whether there has been contemptuous defiance of its order." *Gifford v. Heckler*, 741 F.2d 263, 265–66 (9th Cir. 1984) (citing *Neebars, Inc. v. Long Bar Grinding, Inc.*, 438 F.2d 47, 48 (9th Cir. 1971)). Trial courts also have power to award reasonable attorneys' fees and costs against the contemnor as a sanction for disobedience of its orders. *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985).

"It is well-settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it." *United States v. Montgomery Glob. Advisors V LLC*, 2006 WL 950102, at *2 (N.D. Cal. Mar. 2, 2006) (citing *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 506-07 (8th Cir. 2000)); *see also Inst. of Cetacean Research*, 774 F.3d at 949 ("It has long been settled law that a person with notice of an injunction may be held in contempt for aiding and abetting a party in violating it."). In the Ninth Circuit, a non-party can be liable for contempt where the non-party has notice of the order and (1) aids the party in violating the court order or (2) is legally identified with him. *Montgomery Glob. Advisors V LLC*, 2006 WL 950102, at *2 (citing *Peterson*, 140 F.3d at 1323). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *In re Dual-Deck Video*, 10 F.3d at 695 (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)).

9

The Federal Rules of Civil Procedure specifically "provide for enforcement of judgments against non-parties in limited circumstances." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998). Pursuant to Federal Rule of Civil Procedure 65(d), an injunction is "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d). This is because "[a] command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs." *N.L.R.B. v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977).

## DISCUSSION

**I.    THE COURT SHOULD HOLD THE FEDERAL GOVERNMENT IN CIVIL CONTEMPT**

Contempt is a remedy for defying a judgment.  See *SEC v. Goldfarb*, 2012 WL 2343668 (N.D. Cal. June 20, 2012). "If the party seeking civil contempt makes a *prima facie* showing that a defendant did not comply with the judgment, the burden of production shifts to the defendant to show inability to comply with the judgment." *Id.* at *4 (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). "To satisfy this burden, a defendant must show 'categorically and in detail' why it was unable to comply." *Id.* (citing *NLRB v. Trans. Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973)). "A defendant cannot avoid civil contempt if its inability to pay was self-induced." *Id.* (quoting *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980)).

As counsel for the Federal Government has made clear to counsel for the Intervenors, the Federal Government does not consider this Court's October 14th permanent injunction to apply to the U.S. Territories & Possessions nor to apply to the Federal Government's actions in respect to the U.S. Territories & Possessions.  In other words, the Federal Government believes that it can continue to enforce the conditions in the respective Plans that prohibit the U.S. Territories & Possessions from paying incarcerated individuals the EIP.  The Federal Government's actions are particularly troubling

10

1  as the Department of the Treasury is holding the sword of Damocles over the respective U.S.

2  Territories & Possessions' heads when it threats to withhold much-needed CARES Act funding.

3      Applying the contempt rubric set forth above, the Intervenors have demonstrated, *see Goldfarb,*

4  *supra,* that the Federal Government has not complied (and indeed continues to not comply) with this

5  Court's October 14th injunction.  *See* Ex. 4 (detailing the Plan's EIP restrictions vis-à-vis incarcerated

6  individuals).  The Federal Government cannot show inability to comply (indeed it has been

7  complying, but only in respect to those incarcerated individuals in the 50 States), *see id.*  At bottom,

8  the Federal Government's insistence that this Court's injunction does not apply to the U.S.

9  Territories & Possessions is purely a situation of its own making, i.e., it was absolutely self-induced,

10 *see Asay, supra.*

11      Consequently, the Federal Government's intransigence requires that this Court hold the

12 Federal Government in contempt to coerce compliance with the Court's permanent injunction.  *See*

13 *Whittaker Corp.,* 953 F.2d at 517.  The contempt order should be issued forthwith.

14 **II.     THE COURT SHOULD HOLD THE U.S. TERRITORIES & POSSESSIONS IN CIVIL CONTEMPT**

15      Sanctions for civil contempt are properly imposed against non-parties. *See, e.g., Methven &*

16 *Assocs. Prof'l Corp. v. Kelley,* 669 F. App'x 923, 924 (9th Cir. 2016) (recognizing "findings of civil

17 contempt against non-parties"); *David v. Hooker, Ltd.,* 560 F.2d 412, 416 (9th Cir. 1977 (same). Also,

18 Federal Rule of Civil Procedure 71 allows the limited enforcement of judgments against non-parties.

19 *See, e.g., Westlake North Property Owners Ass'n v. Thousand Oaks,* 915 F.2d 1301, 1304 (9th Cir. 1990)

20 ("Rule 71 was intended to assure that process be made available to enforce court orders in favor of

21 and against persons who are properly affected by them, even if they are not parties to the action.").

22      Courts have long recognized that contempt sanctions against non-party corporate officers are

23 appropriate means to address a corporation's/entity's willful disobedience of a court order.  *See*

24 *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1323 (9th Cir. 1998) (holding non-party corporate

**NOTICE OF MOTION & MOTION FOR CIVIL CONTEMPT**

president in contempt where he "flagrantly and deliberately aided and abetted [the defendants] in violating the express terms of the judgment"). As the Supreme Court recognized in 1911, those responsible for a corporation's conduct can be punished for contempt for failing to take appropriate action within their power: "A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt." *Wilson v. United States*, 221 U.S. 361, 376 (1911). *See also Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Eskay Floor Covering, Inc.*, 2010 WL 2990166, at *3 (N.D. Ohio July 29, 2010) ("A corporate officer may be held in contempt personally for the corporation's failure to follow a court order when there is knowledge of the court's order, and responsibility combined with the officer's power to take appropriate action, even though the corporate officer is not personally identified in the order."). "[T]o be held liable in contempt, it is necessary that a non-party respondent must either abet the defendant [in violating the court's order] or must be legally identified with him," and have "actual notice" of the order. *NLRB v. Sequoia District Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977).

In this case, the USVI BIR, including but not limited to its Director, Joel A. Lee, CPA, have been put on notice (by virtue of being sued by Morton in the District Court of the Virgin Islands, which extensively references the litigation in this case) that the Federal Government has been permanently enjoined. There can be no credible argument to the contrary.

Moreover, the USVI admits that it is the agent for the Federal Government. *See* Ex. 3 at p. 16 (the USVI "merely act as payment *agent* for the United States of America), and it is black letter law that an *agent* is subject to a duty to its principal not to act in the principal's affairs except in accordance with the principal's manifestation of consent. *Restat. 2d of Agency*, § 383.") (emphasis added). Thus,

12

1    under the plain text of Fed. R. Civ. P. 65(d)(2)(B) the USVI is bound to this Court's injunction in

2    the same manner as the Federal Government.

3        Additionally, there is an independent basis for the Court to hold the USVI (including but not

4    limited to Director Lee) in contempt – Rule 71.  Rule 71 succinctly states:  "[w]hen an order grants

5    relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is

6    the same as for a party."  "Rule 71 permits a district court to use the same processes for enforcing

7    obedience to the order as if he were a party, such as holding him in contempt for violating it." *Irwin*

8    *v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2004) (cleaned up).  "Rule 71 was intended to assure that

9    process be made available against persons who are properly affected by them, even if they are not

10   parties to the action." *Westlake North Property Owners Ass'n v. Thousand Oaks*, 915 F.2d 1301, 1304 (9th

11   Cir. 1990).  *See also United States v. Crookshanks*, 441 F. Supp. 268, 270 (D. Or. 1977) ("[A] court can

12   enjoin non-parties whose actions threaten to interfere with compliance with prior orders of the

13   court.").

14       This Court should, in the alternative to Rule 65(d), use Rule 71 to enforce the USVI's

15   compliance (including but not limited to Director Lee) as if they were a party to the October 14th

16   injunction and hold them in contempt.  Given the USVI's recognition that it was acting in a manner

17   consistent with the terms of the Plan, knowing full well that the provisions in the Plan addressing

18   incarcerated individuals were addressed by this Court's injunction, it should stand on equal footing

19   as the Federal Government and likewise be held in contempt.

20       In respect to the other U.S. Territories & Possessions (i.e., Puerto Rico, Guam, CNMI, and

21   American Samoa), the Intervenors believe the IRS and/or Department of the Treasury to have been

22   in contact with the other U.S. Territories & Possessions regarding the applicability of the injunction

23   entered in this case against the Federal Government.   The Intervenors further believe,

24   notwithstanding the injunction entered in this case, the IRS and/or Department of the Treasury to

13

1  have instructed the other U.S. Territories & Possessions to continue to withhold EIP to incarcerated

2  individuals.  The Intervenors admit, as they must, that they lack visibility into the communication

3  between the IRS and/or Department of the Treasury and the U.S. Territories & Possessions, but if

4  the Intervenors are correct (and indeed Occam's Razor indicates that they are), then under Rule 65(d)

5  and Rule 71 they, like the USVI, must be held in contempt.

6

7  **III.    REQUESTED RELIEF**

8  **A.    Issuance of the EIP**

9       The relief the Intervenors seek is quite simple, they request that this Court enter an order (1)

10  compelling Defendants to cause its agents to issue EIP benefits to MORTON, AYALA, and the U.S.

11  Territories & Possession Class, and (2) enter an order requiring the Federal Government to remove

12  any condition from the respective "Plans" that condition funding under Section 2201(c)(1) of the

13  CARES Act based on incarcerated status, and withdraw any statements/directives/orders, etc.

14  (including but not limited to statements/directives/orders made to the respective U.S. Territories &

15  Possessions), which direct that incarcerated individuals are not entitled to CARES Act funds.

16

17       This modest requested relief is the minimum sanction needed to obtain compliance, *see*

18  *Whittaker Corp.*, 953 F.2d at 517, under the circumstances.  The civil contempt order should be issued

19

20  forthwith.

21  **B.    Attorneys' Fees**

22       "All Federal Courts are vested with inherent powers enabling them to manage their cases and

23  courtrooms effectively and to ensure obedience to their orders.... As a function of this power, courts

24  can ... award attorney's fees and assess fines." *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964-

25  65 (9th Cir. 2004) (cleaned up).

26

27       Given the obstinate position of the Federal Government and its agents, and given the

28  Herculean efforts that Morton, Ayala, and members of the U.S. Territories & Possessions Class have

**NOTICE OF MOTION & MOTION FOR CIVIL CONTEMPT**

1  needed to exert to obtain their much needed CARES Act EIPs, this Court should award attorneys'

2  fees and costs in this case.[2]

3                                    CONCLUSION

4       **WHERFORE,** based on the foregoing, Morton and Ayala respectfully move this Court to

5

6  grant the motion in full.

7  Respectfully Submitted,

8  By: _____                          Dated Dec. __, 2020
   Edward M. Robbins, Jr.
9  California Bar No. 82696
   HOCHMAN SALKIN TOSCHER PEREZ, PC
10 9150 Wilshire Blvd., Suite 300
   Beverly Hills, California 90212
11 310.281.3247 (O)
   310.859.5129 (F)
12 edr@taxlitigator.com

13 By: _____                          Dated Dec. __, 2020
   Joseph A. DiRuzzo, III
14 Fla. Bar No. 0619175
   DIRUZZO & COMPANY
15 401 East Las Olas Blvd., Suite 1400
   Ft. Lauderdale, Florida 33301
16 954.615.1676 (O)
   954.827.0340 (F)
17 jd@diruzzolaw.com

18                               **CERTIFICATE OF SERVICE**
   I hereby certify that I electronically filed the foregoing Notice of with the Clerk of Court using the
19 CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

20

21 By: _____                          Dated Dec. __, 2020
   Edward M. Robbins, Jr

22

23

24

25

26

27 _____
        [2] Should the Court provide the Intervenors with substantive relief, counsel for the Intervenors
28 intends to broach the issue of attorneys' fees with counsel for the Federal Government.  Only if the
   Federal Government denies in whole, or in part, any request for attorneys' fees will counsel for the
   Intervenors seek relief from this Court.  A loadstar calculation will be provided at that time.

                                          15
   **NOTICE OF MOTION & MOTION FOR CIVIL CONTEMPT**